FILED - USDC -NH
2029194 5 PM12:38

## THE UNITED STATES DISTRICT COURT

### DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

v.

Town of Woleboro, Selectmen, Town Manager          Case 24-cv-00284-SM-TSM

AMENDED - A DELIBERATE INDIFFERANCE
A SUMMARY JUDGMENT          LANSUIT

JUDGMENT AS A MATTER OF LAW

No SUMMARY JUDGMENT JUST Follow The COMPLAINT Process
where The DEFENDANTS ARE "SERVED" AND MUST RESPOND.

1.    Steven McAuliffe the judge in this case  was an .....ASSISANT ATTORNEY GENERAL in

New Hampshire, and the firm  which represents the Town is directed by  former employees

of the Attorney Generals office.  Certainly there is a CONFLICT OF INTEREST.  Also,  as a

conflict of interest ,  it is to be noted that the Town of Wolfeboro in  Deliberate Indiference

hired two criminals as POLICE CHIEFS,  of the town,  they hired the FORMER  police chief

Dean  Rondeau,    and the FORMER police chief Stuart Chase,   when the Town knew that

Deam Rondeau had in the past falsely  accused me of a traffic  violation and  had contacted

the DMV to have me re-evauluated, with  the sole purpose of having my license to drive

revoked,  when  Deam Rondeau  falsely claimed to the DMV that  I was drividng erraatically

at the State Park in New hampshire,  and should  be evaluated,  when the truth was that at

the  time I was accused of driving erratically at the  Lake Wentworth State park area,  in

Woleboro,  I was able to prove to the DMV that   I was in not in  New Hampsjire at the time,

1  𝐵

·

but that I was in Massachusetts, and to prove I was in Massachusetts I could show I made a

deposit in a Bank in Maassachusetts at the same time I was suppose to be driving erratically

at the Lake Wentworth State Park area according to Rondeau. And although the Town knew

of Rondeau's criminal cnduct, they still hired him as our police chief, in DELIBERATE

INDIFFERENCE. And regarding FORMER Police Chief Stuart Chase, the Town kwew he was

forced to retire as the Danvers, Massachusetts Police Chief, before they hired

him, for his unlawfully incarcerating a woman in retaliation for her complaining to Chase

about the misconduct of his police officer. Yet the Town of Wolfeboro in Deliberate

hired Chase as our police chief.

2.     Therefore, due to all these DELIBERATE FACTS, this case is going directly before a

jury of her peers for disposition of the Plaintiffs claims, for money damages allowed under

1983 in a violation of the Federal Constitution. Directly to a jury trial as the Judge's of this

Court are proven to be bias and have in a continuing conduct have refused to rule on the

Plaintiff's claims under based on the violation of the FEDERAL CONSTITUTION under 1983.

Where instead her claims are ignored, and the Court continuously dismisses the Plaintiff's

Constitutional claims against the Town, by basing her claims under a violation of lccal

procedures , which do not override one's Constitutional claims. When the Court acts

inconsistent with Due Process. See the case of Holstein v. City of Chicago (1992) , acted in a

manner inconsistent with Due Process, People v. Wade, (1987);

3.     Evidence does NOT LIE, the Plaintiff has submitted enough exculpatory evidence

of deliberate indiffernce actions of the Town, to the Court, evidence that recognize's

a viable claim for a volation of her Civil Rights by the town of Wolfeboro, eta al.

4.      As mandated Under the law, the court will put this case directly to a jury for a trial

of my peers, where the Plaintiff's claims cannot/will not be adjudicaed by bias

2 𝐵

procedures of this Court. In defense of police misconduct.

5.      That evidence submitted to the Court of decisions by the judges of this court verifies

that the Court, the judges, in a continuing conduct, are bias and prejudice to the Plaintiffs

claims, when they ignore and refuse to adjudicate claims of FEDERAL CONSTITUTIONAL

violations, under 1983,   That this bias of the Court is a defect of jurisdiction, in a continuing

conduct, wherey the judges of the court lost ...... JURISIDICTION.... TO RULE ON THIS CASE.

..........."LOST ALL JURISDICTON".........when they denied the Plaintiff my Due Process rights,

they were committing treason. They were not acting in a  judicial function and which

their inactions conflicts with any definition of a Judicial function. In a Violation of the

Oath of Office and canons of the Judicial Code of Conduct. As a government is limited by the

Federal Constitution, where the violation of a citizens rights should never be justified .

And where the Court ....lost jurisdction.... when the judges did not folllow the law they

then lost jurisdiction to rule on this case, and any of their Oders are VOID, OF NO LEGAL

FORCE.

6.      Defense of lack of jurisdiction may be raised at any time. Basso v. Utah Power &

Light Co. 495 F.2d 906, 910. There is no discretion for this Court to ignore lack of jurisdiction.

See Joyce v. U.S. 474 2D 215.

7.      Under the law this case is going directly to a jury of her peers, therefore there is no

 NO RES JUDICATA OR COLLATERAL ESTOPPEL involved in the Plaintiff's claims in this case. As

although the Plaintiff addressed the issue of deliberate indifference by the Town officials

in past complaints,   her claims were never adjudicated on the merits of a deliberate

indifference action , under 1983, a claim in violation of her  FEDERAL CONSTITUTION ,

Rights, under the LAW OF THE LAND,   under the Fourth and Fourteenth Amendments of

.......'DUE PROCESS".

8.    And also under the SUPREMACY CLAUSE, (Article V1, Clause 2) which holds that ......all laws enacted by state government must comply with the Constitution, and that any law enacted by a state that CONFLICTS with Federal Law, the Federal Law must be applied. Res Judicata and/or Collateral Estoppel, state laws, do not override the Plaintiff's covo; rights

9.    That a Federal Constitutiomal claim cannot be ignored or overruled by local filing restrictions, as they do not override a Federal Constitutional claim.  See Article 15 of NH State Government regarding the right of the accused, which states that no person shall be deprived of their liberty but by the judgment of his peers, or the Law of the LAND, under the SUPREMACY CLAUSE. That the State has no power to impart on the defendants any immunity

from responsiblity according to the Supreme Authority of the United States which states that : "The Court cannot restrict the Plaintiff from filing a violation of her Federal Constitution, under or by applying restrictions allowed under State procedual law. That the United States Court of Appeals in the case of Pavilonis v. King (1980) stated that "Access to the court's is a.......... FUNDAMENTAL TENET OF OUR JUDICIAL SYSTEM ;  that legitimate claims must receive full and fair hearing no matter how litigious that Plaitiff may be.  "State v. Statton" , Sherar v. Cullen 481  (1973) stated "There can be NO SANCTION or penalty imposed upon one bacause of his EXERCISE OF HIS CONSTITUTIONAL RIGHTS".

Also, see .... American Express Travel v. Moskoff, (1999) which states that New Hampshire cases be decided on their merits and ...."rules of procedure"...WILL NOT BE BARRIERS OR TRAPS preventing justice.

THE SUPREMACY CLAUSE

10..    Wherefore:   where the Courts rulings in a continuing conduct are bias and where Constitutional rights are continuously ignored by the judges, this case as allowed UNDER THE LAW, is going directly to a jury of her peers for determination of her FEDERAL CIVIL RIGHTS.  As allowed under the SUPREMACY LAW.

11.    As the court's  filing restrictions are an .....ADMINISTRATIVE ....procedure that conflicts with a Constitutional violation of DUE PROCESS, the filing restriction does not

override the right to a Federal Constitutional Claim under 1983.   Carey v. Piphus.  And in the

case of Davis v. Wechsler the court stated,  "Where rights secured by the Costitution are

involved,  there can  be no ruling,  that would abrogate them. (no filing restrictions).  The

state courts may deal with what they think is proper in local matters,  but they cannot treat it

as defeating a plain assertion of a Federal  Right."  Ward v. Love County.  That if the

Constitution and laws of the  United States are to be enforced,  the Court cannot accept as

final the decision " of the STATE  TRIBUNAL.

12.       Justice Brenan's opinion in Pembaur v. Cincinnati,  475 U.S. 469, 483-84 (1986) put it:

          "A municipal liability under 1983 attaches where and only where a DELIBERATE choice
to follow a cause of action is made from among various alternatives,"  by the policymakers. See
also Oklahoma City v. Tuttle, 471 U.s. at 823. (opinion of Rehnquist, J.) "Where  a  "deliberate "
or "conscious" choice by a municipality -a "policy"  constituted a  violation of a Federal
Constitutional Right under 1983,  in a denial of her Due Process rights

13.       Deliberate Indifference is a CLEARLY ESTABLISHED legal standard under a 1983 claim

when alleging a violation of a CONSTITUTIONAL RIGHT.  It is a state of mind wher a state actor

is awre of the harm to an individual and consciously DISREGARDS that risk by failing to take

appropriate action.  In CONSCIOUS DISREGARD.  See the case of Wellman v. Faulkner  715 F.

2d 269, 272 (7th Cir. 1983) where the Court stated "DELIBERATE INDIFFERENCE" can be

evidenced by "proving there are such systemic and gross DEFICIENCIES"  of reckless disregard.

14.       For Municipal liability and supervisory liability,  see the  case of the CITY OF CANTON

Ohio v. Harris  and MONELL V. NEW YORK,  where there was an intentional refusing to

respond to complaints constituted DELIBERATE INDIFFERENCE.  Whee the elements of a

Monell claim is (1) the DEPRIVATION of a Federal Right;  (2) Government inaction that can be

traced to the DEPRIVATION in policy and or custom, (3) a policy or custom demonstragting the

government entity's  fault regarding their DELIBERATE INDIFFERNCE;  (4) Municipal INACTION

that was the moving force of the Federal Violation.  Stating that the policymakers were

DELIBERATELY INDIFFERENCE t the obvious cnsequences of the custom.  See the case of

Thomas v. Cook city v. Sheriff's  Dept. (th cir. 2006).  Not one or two mishaps but evidence of

stystemic deficiencies,  of failure to supervise .  Oozzo v. Dart (th cir. 2023) .

15.       Section 1983 liability is imposed on a government entity when the final-decision

making authority (town Selectmen,  town Manager) is directly resposible for the deprivation.

Gernetzke v. Kensosha Unified School Dist. (7th Cir. 2001).  Where Deliberate Indifference is

the  inactins to the moving force driving this deprivation.  Where there are  not just isolated

claims,  and therefore  cannot be disposed.  But a continuous conduct of the Town Officials,

year after year,  occasion after occasion of  DELIBERATE INDIFFERENCE of police misconduct.

And Plaintiff is asking that the Court  consolidate all past cases she filed against the Town

Official,  to this new cause of action,  showing the  many instances where the Town officials

denied police misconduct,  for years and did nothing to end the practice,  where the Plaintif's

complaints of misconduct were found instead to be VEXATIOUS by the town officials,  in

denial of her Federal Constitutional Rights UNDER DUE APROCESS,  under her  legal rights

allowed under Section 1983 of Title 42 of the U.s. Code, under Supervisory Liability.  Where

instead of protecting her,  an ELDERLY person,  the Town officials accused her and filed a

lawsuit against her accusing her of being a ......FRIVOLOUS LITIGATOR ......citing decisions

made by the courts,   decisons that in a continuous conduct of her Complaints,  the Coruts

never reached her claims under the  violations of the FEDERAL CONSTITUTION,  of her Civil

Rights,  but instead the Courts dismissed her claims against the Town based on local

procedures,  which DO NOT OVERRIDE  the rights  she claims under the  violation of the

FEDERAL CONSTITUTION,  the law of the land.

16.         Therefore,  where the merits of  her Civil Rights claims were never addressed

in the past lawsuits,  there is NO RES JUDICATA,  NO COLLATERAL ESTOPPEL,  and in violation

of one's civil rights under 1983 there is NO IMMUNITY.

A MONELL CLAIM

17.     Under a claim based on Monell v. Dept. of Secoial Services 430 U.s. 658 (1978), and

Pembaur v. City of Cincinnati 475 U.S. 469 (1986) the ......."UNITED STATES SUPREME COURT "

established that municipalities can be held liable even for a SINGLE DECISION that is

improperly made. Acts where a policymaking authority of the municipality "SANTIONED"

adopted a particular cause of actiom. Where the Supreme Court held that "LOCAL

GOVERNMENT IS A 'PERSON' subject to suit under Section 1983 of Title 42 of the U.s. Code.

18.     That the INACTION of the Town was he moving force behind the Federal

Constitutional Violation.   This case is under a Monell Doctrine, which allows a Plaintiff to

sue an officer's municipal employer for UNCONSTITUTIONAL policies and practices of the

officers misconduct. Under a well-established law that holds that municipalities are not

entitled to either absolute or qualified immunity in actions brought under Section 1983 of

the CIVIL RIGHTS ACT, or through the relevant law uded by Plaintiffs to seek recovery for

alleged violations of their CONSTITUTIONAL RIGHTS such as DELIBERATE INDIFFERENCE. And

even when an officer may be immune from liability under the doctrines of absolute or

qualified immunity, the Plaintiff will still be able to make a valid claim against the officer's

employer.  Section 1983 vests every person with a right to sue a local government operating

under the color of law, for constitutional violations , as a DELIBERATE link of INDIFFERENCE

to the unconstitutional acts of the defendants. To sue under 1983 for a Fourteenth

Amendment Due Process deprivation, for Deliberate Indiffernce. As DELIBERATE

INDIFFERENCE is a CLEARLY ESTABLISHED legal standard under a 1983 claim when alleging a

violation of a Constitutional right. It is a state of mind where a state actor is aware of the risk

of harm to an individual and CONSCIOUSLY DISREGARDS that risk by failing to take

7 $\beta$

APPROPRIATE ACTION.  Due to a ........'CONSCIENCE DISREGARD'......of their needs.  That they

had actual knowledge of the harm and chose to IGNORE IT.  See the case of Wellman v.

Faulkner 715 F.2d 269, 272  (7th Cir. 1983) where the Court  stated ............."DELIBERATE

INDIFFERENCE"............can be evidenced by "proving there are such systemic and gross

deficiencies"  in reckless disregard.

19.        In the case of Pembaur v. City of Cincinnati,  the Court clarified the liability of

municipalities under U.S.c. 1983,  established that Municipalities can be held LIABLE even for

a .........SINGLE DECISON......that is improperly made,  when in the violation of the Fourth and

Fourteenth Amendments.  The Supreme Court stated,  "The "official policy " (DELIBERATE

INDIFFERENCE) requirement of Monell v. New York City Department of Social Services was

intended to distinguish acts of the Municipality from acts of the Municipality employees.

And therefore made it clear that Municipal Liability is limited to actions to which the

MUNICIPALITY is actually responsible.  "Of the Municipality",  or actions that the Municipality

SANTIONED.  (DELIBERATE INDIFFERNCE).

20.        The  Plaintiff presented to the Court   evidence of a FRONT PAGE newspaper

article showing the Plaintiff demanding the Town to investigate Stuart Chase,  and the

evidence of the response of the Town Manager refusing to investigate,  evidence that shows

that it is CLEARLY ESTABLISHED,  that the Town refuses to invesigate police misconduct.  This

evidence is enough for a jury trial for damages.   As the evidence shows that the Town's

policymakers were aware of police misconduct,  but that they were deliberately indifferent.

In a depriveaion of my Federal Rights.   Where their INACTION is the MOVING  FORCE in

this case.

21.        The United States SUPREME COURT in the case of Monell v. New York City

Department of Social Services. which is what this case is based on  the court focused on

....." SOLELY".....on the CONSTITUTIONAL CONDUCT of municipal policymakers.   In 1989

in the decision of the City of Canton, Ohio v. Harris,  the Court adopted a standard based

on .......DELIBERATE INDIFFERENCE.....by city policymakers to the  constitutional  rights of

persons contacted by police officers.   Therefore this case is regarding a CLEARLY

ESTABLISHED pattern/policy of the defendants in violation of the Federal Constitutional

rights UNDER 1983.

22.        WHEREFORE: as allowed under the Law ,  where the Court lost JURISDICTION to rule
on this case,  by consistently depriving the Plaintiff of her Federal Constitutional violations by
the Town,  therefore,  under the law,  the Plaintiff's  case will go DIRECTLY to a jury of her peers
for disposition of her rights to collect money damages for the violations of her FEDERAL
CONSTITUTIONAL RIGHTS by the defendants.  WITHOUT DELAY,  as allowed under the Sixth
Amendment,  a speedy trial,  when  the Plaintiff is 86 years old.

Respectfully,

Josephine Amatucci

November 6, 2024

c.  Town of Wolfeboro

*Josephine Amatucci* (signature)

$\mu \ell$

9173

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

v.

Town of Wolfeboro, Selectmen, Town Manager

JURISDICTION

1.    This action is brought pursuant to 42 U.S.C. 1983 .

PARTIES

2.    Town of Wolfeboro

3.    Selectmen,  Murray et al

4.    Town Manager,  Pineo

COMPLAINT INTRODUCTION

5.    This case does not revisit "Filing Restrictions"  this case  is ONLY  based  on
a violation of the Plaintiff's  Civil Rights  by  the defendants, a claim that was never
adjudicated,  or ruled on,  by the court,  therefore,   there is no res judicata effect on
this claim.

6.    The Court  never ruled on  the violation of the Plaintiff's  Civil Rights Under

1  𝒜

Supervisory Liability.  A claim based on  Monell v. Dept. of Social Serrvices 436 U.s. 658

(1978),   where the  U.S. SUPREME COURT held:

    "Local government is a "person"  subject to suit under Section 1983 of Title 42

of the U.S. Code".

7.      This case is  based on and under  "Supervisory liability"  under 1983,

and..... NOT.... NOT  on a ......PREDICATED  RESPONDEAT THEORY.....  but only on

the basis of the supervisor's  acts or  omissions.  See Aponte Matos v. Toledo Davila, 135 F.3d

182, 192 (lst cir. 1998).  Supervisor's  "a prime mover's behind,  the underlying violation."

Camilo-Robles v. Zapata,  175 F. 3d 41, 43-44 (lst cir. 1999).  An affirmative link,  THROUGH

CONDUCT THAT AMOUNTS TO CONDONATION OR TACIT AUTHORIZATION.

8.      Please see the evidence submitted to the court showing,  proving,  how the town

condoned or  authorized the improper actions of the police.

9.      The evidence submitted in this lawsuit showing where the policymakers the

Town Selectmen and the Town Manager,  had actual constructive knowledge of the

misconduct of the police,  yet did nothing to end the practice.  Miller v. Kennebec County, 219

F.3d 8, 12 (lst Cir. 2000) (Bordanaro v. McLeod,  871 F.2d 1151, 1156 (lst Cir.),  Everett v.

Bordanaro,  493 U.s. 820 (1989).

10.      That the custom of the defendants,  to deny Police misconduct over the years,

was the "moving force"  behind the deprivation of my constitutional rights.

11.      That the defendants knew,  the Plaintiff made them aware of the misconduct

of the police,  and they failed to remedy the wrong,  refused to remedy the wrong.  Which

created a custom under which  UNCONSTITUTIONAL  practices occurred,  which allowed

the continuance of  such a policy/custom.  That the Plaintiff proved that the defendants

were grossly negligent in supervising  the police and in doing so committed:

2  A

"DELIBERATE INDIFFERENCE"

WHEREFORE:    With the evidence before the Court and  considering the age of the Plaintiff allowing  a speedy trial under the Sixth Amendment rights,  this Court will,  must,  is ordered under the law,  to  place this case  before a jury of her peers for damages for Supervisory Liability as allowed under 1983.

Respectfully,

Josephine Amatucci

August 30, 2024

c.   Town of Wolfeboro

3  $\mathcal{A}$

SCHOOL BUS ROUTES ON PAGE 13

# The GRANITE STATE NEWS

**THURSDAY, AUGUST 27, 2015**     **ESTABLISHED 1859**     **WOLFEBORO, N.H. GRANITESTATENEWS.COM   75¢**

## Amatucci continues on her quest to remove police chief

BY THOMAS BEELER

Editor

WOLFEBORO—Last week Wolfeboro resident Josephine Amatucci came to the meetings of both the Board of Selectmen and the Police Commission to make her case for public hearings on alleged police misconduct.

Lately the police misconduct Amatucci refers to was a series of incidents on May 7, 2014 where she first complained to Police Chief Stuart Chase about a traffic ticket given to her and, when Chase refused to take any action and asked her to leave



police" be on the agenda for the next meeting or a public forum held that would allow her to air her grievances. She also demanded that the town establish a policy on criminal acts of police that would include misdemeanors – "zero tolerance" for police misconduct.

On Aug. 11 Amatucci put her demand in writing to selectmen. "I am very serious about my right to be put on the Agenda at the August 19th meeting or in a special forum, to debate and Redress my Grievances about police misconduct in front of the Select-

peated her demand for "a Mandatory Uniform Standard of Dismissal" personnel policy for police and attached a letter she said she was sending the "the Media" dated Aug. 10 asking for coverage of the Aug. 19 meeting where she will demand a response to her requests.

No copy of this request was sent to the Granite State News. "I cannot get any coverage in my local newspaper, the Granite State News. The Editor, Mr. Beeler keeps my conversations at the Selectmen meetings from the newspa-

# UNITED STATES DISTRICT COURT

Josephine Amatucci

v.

Stuart Chase, et al.

1:17-CV-00237-JL

# UNDER SEAL
# FOR IN CAMERA REVIEW
# BY THE COURT ONLY –
# NOT FOR RELEASE TO THE PUBLIC

Documents provided by the Wolfeboro Town Manager's
Office, per Section 3(B) of Court's order dated 8/1/18

Description
of the Deliberate
Insifference

In response to Ms. Amaturcci request I want to point out.

- That Ms. Amatucci has been filing lawsuits and bringing charges against the Town and its Police Department for over a decade;

- That all of her lawsuits have been dismissed as lacking any merit (except for one recently filed suit which is still pending but subject to the Town's Motion to Dismiss);

- That she recently demanded that the New Hampshire Attorney General's Office prosecute members of the Wolfeboro Police Department and the Wakefield Police Department and that the Attorney General's Office reviewed the allegations and found that they did not create a reasonable suspicion of illegal conduct which warranted any further investigation;

- That the Selectmen have carefully considered all of the allegations and evidence submitted by Ms. Amatucci over the years, including the affidavit submitted by her on February 4, 2015, and find that there is no reasonable basis for concluding that Chief Chase or any other member of the Wolfeboro Police Department engaged in unlawful conduct; and

- That therefore the Selectmen decline to conduct any further investigation of Chief Chase or any other member of the Wolfeboro Police Department concerning Ms. Amatucci's allegations, and decline to ask an outside agency to do so.

*Description of the Deliberate Indifference*

**U.S. District Court**
**Southern District of Illinois**

of summons form. You must mail two copies of the waiver of service of summons form, a copy of the complaint, and a pre-paid means for returning the waiver form to you (i.e., a self-addressed, stamped envelope) to each defendant named in your lawsuit. If a defendant completes and returns the waiver, you will be spared the burden of personal service on that defendant.

3. **Service by a Marshal of Someone Specially Appointed:** You may ask the judge to order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court (at the government's expense). You must, however, make such a request by formal written **motion**. An example of this motion is attached in the Appendix Section.

Once a defendant has been served with a copy of the complaint, the defendant must file with the court an **answer** or some other response within a specified number of days. Under the rules governing service of process, each defendant is required to provide a copy of the response on the plaintiff.

## IV. WHAT HAPPENS NEXT?

*Please Forward this case in this Procedure*

After the complaint has been filed and served and the defendants have responded to the complaint, any one of a number of different procedures may occur.

1. **Referral to a Magistrate Judge**: If your case is initially assigned to a magistrate judge, you will be sent a form asking whether you consent to have your case decided by a magistrate judge. If all parties consent, your case will be decided by a magistrate judge. If all parties do not consent, your case will be decided by a district judge, although certain preliminary issues may still be handled by a magistrate judge.

2. **Motion Practice:** Either party (plaintiff or defendant), may request that the court take specific action related to the case. To do so, the party prepares a formal request or what is referred to as a **motion. Local Rule 5.1** provides information on the preferred form and style of motions in this court. The party then signs the motion, submits it or **files** it with the Clerk of Court and sends a copy to the opposing party. The opposing party may file with the Clerk of Court a **response** to the motion. The response sets forth the reasons why the court should deny rather than grant the motion. **Local Rule 7.1** sets forth the deadlines and page limitations that apply to motions (see box below concerning the distinction between dispositive and non-dispositive motions). After a response (and sometimes a reply) is filed, the district judge or magistrate judge may schedule a hearing to provide the parties with an opportunity to argue the motion and the objections. Or, the judge may decide a hearing is unnecessary and rule on the motion by issuing a written order that either grants or denies (in whole or in part) the relief sought in the motion.

*I Got The Report & Recommendation*
*After Nov. 22*

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
55 PLEASANT STREET, ROOM 110
CONCORD, NEW HAMPSHIRE 03301-3941

OFFICIAL BUSINESS

US POSTAGE

ZIP 03301   $ 000.6
02 4W
0000035127 NOV 22 2

**Josephine Amatucci**
**PO Box 272**
**Wolfeboro Falls, NH 03896**

CG69630272 B001

CARROLL, SS                                    SUPERIOR COURT

STATE OF NEW HAMPSHIRE

212-2003-EQ-0080-0081

Pauline Maloney

Vs

Josephine Amatucci

ORDER

Order in reference to the Respondent's Motion For Clarification (filed 7/26/11) in the Carroll County Superior Court. Upon review of the prior Orders in this matter, clarification is not deemed necessary. Specifically, the prior Orders were directed to remain "in full force and effect pending further Order of the Court" rather than for the finite term of Stalking Orders (see NHRSA 633:3-a, and NHRSA 173-B). The Orders are therefore by definition Restraining Orders in Equity, which was the intent of the Court.

DATE: 8/17/11                          _____
                                       , Hon. James D. O'Neill

NOT A STALKING ORDER - The Police HAD NO
AUTHORITY TO ARREST Civil Orders IN EQUITY

48

## THE STATE OF NEW HAMPSHIRE
### CARROLL, SS
### SUPPORTING AFFIDAVIT for Request to ISSUE ARREST WARRANT

December 02, 2003                                        WPD #03-453

her the $1000 by November 30, 2003.  BOLDUC and his wife are now in
fear of being sued by AMATUCCI for removing two outhouses that were
on his own property.

5.  MALONEY said that the order was made clear to AMATUCCI by JUDGE
O'NEIL in the courtroom.  It is apparent that AMATUCCI wrote the
letter to BOLDUC knowing full well that she had violated the court
order.

6.  AMATUCCI has violated NH RSA 173:B-9 (Violation of Protective
Order), in that she contacted Mr. BOLDUC knowing that she was
ordered by the court to cease contact with any member of the
Maloney family. *Hellooo it was not a protective Order
it was a Civil Restraining Order in Equity. Where
the Police have No No No Jurisdiction to Arrest.*

3. Based upon the foregoing information (and upon my personal knowledge) there is
probable cause to believe that the defendant did commit a crime (or offense) as above
stated.

Wherefore, I request that the court issue an arrest warrant and order a duly
authorized officer to take the defendant and bring him before the court having
jurisdiction.

*James R. O'Brien*

                                               Name

Then personally appeared the above named James O'Brien and made oath that the foregoing
affidavit by him subscribed is true.

before me this _____ 2 _____ day of *December* _____ 2003

_____
Justice of the District Court for Southern Carroll County
                  or Justice of the Peace

as MANDATED under the new decision of the Supreme Court.
Thankyou,  Josephine Amatucci

*19*

*12/5/23*

**From:** Amy Capone-Muccio
**Sent:** Tuesday, December 05, 2023 1:29 PM
**To:** rt109@metrocast.net
**Cc:** Brad Harriman ; James Pineo
**Subject:** RE: Policy

Ms. Amatucci,

I have attached a copy of the email thread where you have already asked this question and I have provided an answer. But I copied it below as well. I have also provided the link where you can find out when the Police Commission meets right on the Town website https://www.wolfeboronh.us/police-commission. The third Thursday of every month.

The Town Manager or Board of Selectmen did not forward your complaint to any of those entities you listed below. If you want to inquire if they Police Department did you need direct your questions to the Police Commissions office.

*whether they were reported to the*
*Attorney General,  or the District Attorney In Ossipee*
*or/and the Municipal Resources,  and the Police Standards and Training.*
There are no reports or inquires made to any of these entities regarding you (Josephine Amatucci) from the Town Manager/board of Selectmen office. I can not answer for the Police Commission that is a separate department.

*No Reports or Inquiries*

Amy Capone Muccio
Executive Assistant/ Welfare Admin
Town of Wolfeboro
PO Box 629
Wolfeboro NH 03894
(603) 569-8161

**From:** rt109@metrocast.net <rt109@metrocast.net>
**Sent:** Tuesday, December 5, 2023 7:27 AM
**To:** Amy Capone-Muccio <tmsecretary@wolfeboronh.us>
**Subject:** Re: Policy

Amy:
        I need answers if Rondeau and  Stuart Chase  incidents
were reported to the Atttorney General,  Municipal and
Standards and Training.   It does not have to inlvolve me
**but regarding Rondeau ordering the Sheriffs to maliciously**
**prosecute me for an asssault,  and Chase's unlawful prosecutime**
**me for speeding,  when speeding is not a crime.   I need these answers**
        **Also I have a right to know and view why they**

*[Handwritten annotation:]* Helloooo - You DONT GET PROSECUTED FOR SPEEDING IN N.H. Hellooo. The Trial Court JUDGE FOUND ME NOT GUILTY OF SPEEDING.

8b.    Denied.

8c.    Denied.

8d.    Denied.

9.    Denied. Admitted, however, that although the plaintiff was in fact exceeding the posted speed limit, the state trial court found that the prosecutor failed to prove that the excessive speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so and that she was, therefore, guilty of failing to stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response above to Paragraph 7.

10.    Denied except admitted that the plaintiff came to the Town Hall and was shouting at Anne Marble and made a disturbance. Admitted that Mr. Houseman was the Town Planner but that he was acting as Town Manager that day. Denied that Mr. Houseman called the police department. Nor did he order anyone else to call the police or even know at the time anyone was calling the police. He escorted plaintiff to an empty courtroom (without touching her) in order to try to calm down Ms. Amatucci and to protect Ms. Marble.

Admitted that when the plaintiff arrived at Town Hall she first spoke to Town employee Cathy Ferland and asked to speak to Anne Marble. Admitted Anne Marble is/was the Administrative Assistant for the Town Manager. Denied that Ms. Marble was "alone" as there were other employees around, including, for example, Cathy Ferland and Brenda LaPointe. Ms.

5/12/23

>> INVESTIGATED Rondeau.   As under the LAW the Complainant is allowed
>> an up-to-date review of her Complaint done by government.
>>            My question is,  did  MRI investigate,  was the  Police Standards and
>> Training advised of Rondeau's  resignation,  AND/OR  did the  ATTORNEY GENERAL
>> or OSSIPEE COUNTY ATTORNEY ANDRUZZI do an INVESTIGAION on Rondeau.
>>            I would like you to ....MAIL ME .....A COPY OF CHASE'S CONTRACT WITH YOU.
>> Josephine Amatucci-P.O. Box 272,  Wolfeboro Falls, NH 03896
>>
>>
>>
>> -----Original Message----- From: Steve Wood
>> Sent: Friday, May 12, 2023 10:21 PM
>> To: rt109@metrocast.net
>> Subject: Re: Internal Affairs Investigation
>>
>>
>>
>> Ms. Amatucci,
>>
>> MRI "is" conducting the inquiry. I never said there was a contract, only that the Commission made
the request to have them do it. They don't give out information to the public so if you indeed called
them, I would expect them to take the position they did in replying to you. That is fact. If you can't
accept that, I can offer nothing more.
>>
>> As for your questions in your previous reply, first, there is not going to be any internal affairs
investigation conducted on your behalf. As I stated in a letter to you on January 27, 2022, the
Commission looked into your complaint and determined that there was no basis for such an
investigation. We will not change our position on that matter. No one else can order an investigation and
without that, no agency would conduct one.
>>
>> Secondly, Chief Chase begins employment on Monday, May 22nd. We have entered into an
agreement with him in which he will return to his position of Chief of Police of the Wolfeboro Police
Department for a period of one year.
>>
>> Lastly, I am not responding any further to any correspondence from you regarding old court cases,
Chief Rondeau, or Chief Chase. You simply refuse to accept facts, rendered verdicts, or anything else
that isn't to your liking. It's time to move on.
>>
>> Commissioner Wood
>>
>> Sent from my iPad
>>
>>>> On May 12, 2023, at 9:38 PM, rt109@metrocast.net wrote:
>>> Mr. Wood:
>>>            I have been told by MRI that there is.... NO CONTRACT ....
>>> between the Town of Wolfeboro,  you  and the MRI regarding Rondeau.
>>> That there is a personnel matter before them of which
>>> YOU nor the Town  have  involvement.
>>>            I want you to explain why you told me you contacted
>>> the MRI Agency when they have no contract with the entire town.

7/24/2023

Michele Chamberlin.

Please advise me the name of the person who handles the Personnel files, his Title, his telephne number, email, and his section or department. In case I want to reach him directly in the future .
Thankyou, Josephine


**From:** Amy Capone-Muccio
**Sent:** Thursday, December 21, 2023 8:06 AM
**To:** rt109@metrocast.net
**Cc:** Michele Chamberlain ; James Pineo ; Brad Harriman ; Steve Wood
**Subject:** RE: Policy

Ms. Amatucci;                        *in their office*

The Town Manager's office does not have any files for Mr. Rondeau or Mr. Chase, and as I have said in prior emails this department also has not investigate either employee.   *Oh yes they did. The MANAGERS OFFICE Does NOT have the Files, But the Files are IN ANOTHER OFFICE*

Personnel files are managed through our Human Resources department, and you must contact Michele Chamberlin for such requests.   *IN the TOWN HALL. Money*

Amy Capone Muccio
Executive Assistant/ Welfare Admin
Town of Wolfeboro
PO Box 629
Wolfeboro NH 03894
(603) 569-8161


**From:** rt109@metrocast.net <rt109@metrocast.net>
**Sent:** Thursday, December 21, 2023 4:59 AM
**To:** Amy Capone-Muccio <tmsecretary@wolfeboronh.us>
**Subject:** Re: Policy

Dear Amy:

        Tell me when I can come inside the office and see all all all  files on Rondeau and Chase,  including  personnel files.
        Which would include any and all investigations made on them
for any reason.
Thankyou


**From:** Amy Capone-Muccio
**Sent:** Monday, December 18, 2023 4:02 PM
**To:** rt109@metrocast.net
**Cc:** James Pineo ; Brad Harriman ; Steve Wood
**Subject:** RE: Policy

Ms. Amatucci,

There seems to be some confusion, you were provided with the information on the investigation with regards to Rondeau which did not involve you and I believe Mr. Wood responded to let you know that we do not have any investigations that involve complaints made by you. I will look that information up and resend it to you tomorrow.

3

*4/18/22*

know you have been instructed that way many times in the past as you called for the termination of former Chief Chase, and now, Chief Rondeau.

Again, you don't have to like the answers or agree with them but they are based on fact. The Commission will no longer respond to court cases that have been heard and verdicts rendered, with not even a hint of police misconduct or impropriety determined by the court, nor will we entertain requests to investigate the Chief on those matters or consider termination without due process, and only once there is some valid evidence to support a claim of wrongdoing in a complaint "not" related to any prior and adjudicated court case. *Mello - Chase was twice Terminated*

*And Rondeau will Be Terminated*

Sincerely,

*(33)*

Steve Wood, Chairman
Wolfeboro Police Commission

*hello ooo I AM going
crazy.*

Sent from my iPad

> On Apr 18, 2022, at 11:35 AM,                    wrote:
> Dear Mr. Wood:
>     One more thing I forgot to address.  Don't ever tell me to
> stop demanding that the Town Manager and the Selectmen take action
> against RONDEAU.
>     The Town Manager and the Selectmen have already declared in
> writing as to their authority to investigate the police and police chief
> and have done investigations on them.  They have responded to me  in writing
> as to the result of their investigation, however, they have used the
> same tactics as you Mr. Wood, they addressed only what happened at
> the dump, and not what happened in the court, where I was
> maliciously prosecuted by Rondeau and the Belnap Sheriff Dept.
>     That said..... "READ MY LIPS".... I will continuously DEMAND
> that the  town Manager and Selectmen and the entire police department,
> including the police Commissioners, .....TERMINATE..... Dean Rondeau.....
>     "RESPECTFULLY".   Josephine Amatucci
>
> -----Original Message----- From: Steve Wood
> Sent: Wednesday, March 23, 2022 10:31 AM
> To:
> Cc:                            ; Amy Capone-Muccio ; James Pineo
> Subject: Internal Affairs Investigation of Chief Rondeau
>
> Good morning Ms.Amatucci,
>
> As I'm sure you are aware, the documents that you requested relative to the Internal Affairs
investigation of Chief Rondeau have been provided. I now wish to answer your questions about the
process and who conducted the investigation.
>
> In my letter to you dated to you on January 27, 2022, I explained in the first paragraph that the
"Wolfeboro Police Commission" began an internal affairs investigation of Chief Rondeau in response to
your complaint, received on December 3, 2021. Please understand that the Commission was "not"
compelled to do an investigation as your case in Belknap County had been heard and a verdict rendered.

*Selectmen Told Matucci Investigate
D.O. Does investigate*

*I have The Authority
I Do Not have The Authority*

*ABUSE of AN ELDERLY
Person*

From: Amy Capone-Muccio
Sent: Friday, April 07, 2023 9:58 AM
To: rt109@metrocast.net
Cc: James Pineo
Subject: RE: Policy

4/7/23

/23/

Good morning;

The Town Manager has answered your question in his letter dated March 8th as
I stated below; specifically, I refer you to the 2nd page of the letter in
part; the Town Manager lacks the authority and jurisdiction to conduct an
investigation into any member of the Police Department.

*They Already claimed They investigated
that is also the Selectmen- Not
just Town Mgr. Fraud*

Amy

Executive Assistant/ Welfare Admin
Town of Wolfeboro
PO Box 629
Wolfeboro NH 03894
(603) 569-8161

-----Original Message-----
From: rt109@metrocast.net <rt109@metrocast.net>
Sent: Thursday, April 6, 2023 6:49 PM
To: Amy Capone-Muccio <tmsecretary@wolfeboronh.us>
Subject: Re: Policy

CAUTION: This email originated from outside of the organization. Do not
click links or open attachments unless you recognize the sender and know the
content is safe.


Amy:

        Please,   as a PRIORITY respond and let me
know,  under the RIGHT TO KNOW LAW,  if my Complaint against Rondeau is
before the Disrtict Attorney's  office,

        Did you hear me Amy, is the District Attorney investigating
Rondeau.

        Also,  does the Town Manager have the authority to have an
outside investigation done on Rondeau, by a unbiased agency,  where  the
police department is refusing to investigate and refusing to get an outside
investigation of  Rondeau, which is against the policy of the Internal
Affairs Section of the police department.

        The town Manager does not have discretion to ignore the law which
demands that an official has the Duty to INTERVENE AND PROTECT the citizens
of this town,  by TERMINATING RONDEAU.  For the violation of my civil rights
under 1983 and under Monell, where it is the CUSTOM of the town not to

*4/5/23*

*25*

## rt109@metrocast.net

| | |
|---|---|
| **From:** | "Amy Capone-Muccio" <tmsecretary@wolfeboronh.us> |
| **Date:** | Wednesday, April 05, 2023 12:41 PM |
| **To:** | "Steve Wood" <SWood@wolfeboropolice.org>; <rt109@metrocast.net> |
| **Subject:** | RE: Internal Affairs Investigation of Chief Rondeau |

Please see #2 below.

Executive Assistant/ Welfare Admin
Town of Wolfeboro
PO Box 629
Wolfeboro NH 03894
(603) 569-8161

-----Original Message-----
From: Steve Wood <SWood@wolfeboropolice.org>
Sent: Friday, March 10, 2023 9:12 AM
To: rt109@metrocast.net
Subject: Re: Internal Affairs Investigation of Chief Rondeau

CAUTION: This email originated from outside of the organization. Do not click links or open
attachments unless you recognize the sender and know the content is safe.

Ms Amatucci,

1. Do not threaten me.

2. We, the Commission will not discuss this matter, or any other old case any further. Your
dissatisfaction with the courts does not dictate any further action on our part. We will not be seeking an
outside investigation on Chief Rondeau as there is no basis, and termination can only occur with just
cause. There is none.      *DELIBERATE INDIFFERENCE*

3. The late Commissioner Goodgame, my friend and colleague, chose to not seek re-election for reasons
that I know, but that had absolutely nothing to do with you. You did not influence his choice at all.
Please let him rest in peace.

Stephen Wood, Chairman
Wolfeboro Police Commission

Sent from my iPad

> On Mar 8, 2023, at 4:07 PM, rt109@metrocast.net wrote:
>
> HELLOOOOOOOOOO
>           Mr. Wood the email I just sent you was in
> response to your  May 5, 2022 letter.
>           Now get it right Mr. Wood, I am mandating that you
> follow  the law and  get an OUTSIDE INVESTIGATION done on Dean Rondeau

6/17/2023

Case 1:24-cv-00284-SM-TSM   Document 10-1   Filed 12/05/24   Page 27 of 50

Section 37:6 Powers and Duties in Particular.                          Page 1 of 2

# TITLE III
# TOWNS, CITIES, VILLAGE DISTRICTS, AND UNINCORPORATED PLACES

## CHAPTER 37
## TOWN OR VILLAGE DISTRICT MANAGERS

### Section 37:6

**37:6 Powers and Duties in Particular. –**

The town manager shall have the power and it shall be his duty:

I. To organize, continue, or discontinue, from time to time, such departments as the selectmen may from time to time determine.

II. To appoint, upon merit and fitness alone, and to remove, all subordinate officers and employees under his control, and to fix their compensation.

III. To attend such regular or special meetings of the selectmen as they shall require.

IV. To keep full and complete records of the doings of his office, and to render to the selectmen an itemized monthly report in writing, showing in detail the receipts and disbursements for the preceding month; and annually, or oftener at the request of the selectmen, to make a synopsis of all reports for publication.

V. To keep the selectmen fully advised as to the needs of the town, within the scope of his duties, and to furnish them on or before the thirty-first day of January of each year a careful, detailed estimate in writing of the probable expenditures of the town government for the ensuing fiscal year, stating the amount required to meet the interest on maturing bonds and notes or other outstanding indebtedness of the town, and showing specifically the amount necessary to be provided for each fund and department; and to submit at the same time an estimate in writing of the amount of income from all sources of revenue, exclusive of taxes upon property, and of the probable amount required to be levied and raised by taxation to defray all expenses and liabilities of the town. For the purpose of enabling the town manager to make up the annual estimate of expenditures, all boards, officers, and committees of the town shall, upon his written request, furnish all information in their possession and submit to him in writing a detailed estimate of the appropriations required for the efficient and proper conduct of their respective departments during the fiscal year.

VI. To examine or cause to be examined, with or without notice, the affairs of any department under his control, or the conduct of any officer or employee thereof; and for that purpose he shall have access to all town books and papers, for the information necessary for the proper performance of his duties.

VII. To have charge, control, and supervision, subject to the direction of the selectmen and to the bylaws of the town, if any, of the following matters:

(a) The management of municipal water works, lighting, and power systems.

(b) The construction, maintenance, and repairing of all town buildings and of all town roads, highways, sidewalks, and bridges, except as otherwise specially voted by the town.

(c) The purchase of all supplies for the town.

(d) The police and fire departments of the town, if any.

*Deli Berate Indifference*

6/2/2024

*Evidence # 25*
*1 of 4 People*
*Exhibit C*

1.(j)  Without limitation, your blaming and/or suing James O'Brien, Jared Welman, Stuart Chase, Robert Houseman and others for reasonable actions that they took in response to your abusive, out-of-control and unlawful conduct. Your behavior includes but is not limited to: your erratic driving in August 2013, and your conduct on May 7, 2014.

*Prove I did anything unlawful.*

1.(k)  See prior answers to interrogatories describing the incident of May 7, 2014.

1.(l)  No, I was not in the Town Hall at the time of the disturbance on May 7, 2014.

Dave Owen (Town Manager)

STATE OF NEW HAMPSHIRE
COUNTY OF _Carroll_

Signed or attested before me on _13_ day of _November_ 2014 by _____

My Commission Expires _____

PATRICIA M. WATERMAN, Notary Public
My Commission Expires December 4, 2018

Signature of Justice of Peace/Notary

*Deliberate Indifference*

3/28/13

X

new feature during the week of July 29.

In addition to viewing and paying bills, residents will also have access to payment history and be able to submit work orders for utilities. Customers can also be sent email reminders of payments due.

There is no initial cost to the town for this capability, but the monthly fee is $50 plus 30 cents per bill. The cost per bill would be 26 cents less than the current paper bills, which include the cost of postage.

Customers would have to sign up for the electronic service. They can also continue to receive paper bills or switch back if they go paperless and decide they want the paper bills.

Selectmen approved unanimously proceeding with the new service.

Amatucci appeal

At both public comment periods and at one point during the meeting, resident Josephine Amatucci appealed to selectmen to investigate her complaint of police misconduct in 2003 when she was arrested. She claimed to have new evidence police knew that the warrant they were acting on was not valid.

Chair Linda Murray stated that since Wolfeboro has a police commission, a decision reaffirmed by voters in 2005, any complaints about police misconduct must be directed to the commission.

Amatucci complained that the commission refuses to listen to her and that she was really at the selectmen's meeting to bring the issue to the attention of viewers on WCTV Channel 25.

At the first public comment Murray polled the other four members of the board to see if they wanted to hear Amatucci's complaint. They all agreed it was a police commission matter and that the Board of Selectmen has no jurisdiction.

*DELIBERATE INDIFFERENCE*

During the meeting Amatucci attempted to interject a comment. Murray ruled her out of order and asked her to wait for the second public comment period.

At the second comment period Selectman Silk told Amatucci that she could meet with Town Manager Dave Owen between 8 a.m. and 4 p.m. any day of the week.

Amatucci said she has tried to meet with Owen, that he has not been responsive and has denied her Right to Know requests. Owen denied he has not been responsive and that he has responded to her requests as the law directs.

Amatucci claimed the police had committed a felony in arresting her without a valid warrant.

Murray closed the comment period, noting that Amatucci was pursuing her claims through the courts.

The following evening Amatucci filed a Right-to-Know request with the Police Commission "requesting a copy of any investigative report that was made in my 2002 and 2003 arrests. Or I would like to see the reports."

Last Friday Amatucci also provided this reporter with a copy of a suit (Case No. 2012-0417) she had filed last year in the state Supreme Court against James O'Brien and the Town of Wolfeboro.

Other business

Public Works Director Dave Ford reviewed issues with Lang Pond Road, what to do with the fire-damaged Public Works garage, and purchasing a new 10-wheel dump truck. See separate story on these topics.

Finance Director Peter Chamberlin presented his Monthly Expenditure and Revenue Report for February and year-to-date. He said there were some questions about water and sewer expense at Town Hall which he is looking into. Also, welfare expenses are high to date but Chamberlin noted that they normally are heavy during the winter.

Town Manager Dave Owen reported the town has received a franchise fee check from Metrocast for $110,773, up $20,000 over the last payment.

Owen also reported receiving notice that the town's Highway Block Grant for 2013 would be $150,078. In that connection he noted that the state is considering an increase in the gasoline tax, which is the source of funding for town highway grants.

# *Local resident files complaint against Wolfeboro Police*

BY ADAM COUGHLIN
Staff Writer

**WOLFEBORO** — Josephine Amatucci, a 12-year resident of Wolfeboro, has filed a complaint alleging that Wolfeboro Police Officers Charles Hamilton and James O'Brien have violated her Fourth and Fourteenth Amendment rights to due process by subjecting her to false arrest and detention.

"... I find that Josephine Amatucci has stated a claim upon which relief may be granted for false arrest and detention against defendants James O'Brien and Charles Hamilton," wrote James R. Muirhead, U.S. Magistrate Judge, in an Order dated Jan. 20. "Accordingly, I order that the complaint (document nos. 1,7,9 & 11) be served to those Defendants."

The allegations stem from two incidents.

According to the background information Amatucci filed with the U.S. District Court for the District of New Hampshire, "On Aug. 16, 2002, at 5 p.m., Amatucci noticed that Kelly Fitzgerald, a relative of one of her neighbors, parked her car in a manner that blocked Amatucci's driveway. Amatucci asked Fitzgerald to move her car, Fitzgerald refused. Amatucci called the police. A boy who was a member of Amatucci's neighbor's family, and who appeared to be too young to legally drive, then got into Fitzgerald's car and attempted to move it. In the process, the boy hit a cinder block that Amatucci had placed on the ground to protect people from an iron mailbox rod she placed in the ground but that did not yet have a mailbox on it. When the boy hit the cinder block, it shattered, resulting in a small piece of the block lodging itself in the

SEE **POLICE** PAGE A13

 

LARISSA MULKERN ■

**Suger rush**
Hmmm. The choice between the colorful candies at DeVylder's Community Market and the nice healthy apples in a nearby display was a tough one to make. Both displays were so full of texture, flavor and colors so bright, we just had to take a picture.

```
                                              PAYROLL HISTORY
                                                05/15/2013
```

| EMP NO | HOURS REC | OT | OTHER | EARNINGS REGULAR OVERTIME | OTHER | GROSS | TAXES FEDERAL | FICA | STATE | DEDUCTIONS MISC STANDARD | EXPENSES REIMB | NET PAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

JAMES R. O'BRIEN    P.O. BOX 1066    WOLFEBORO FALLS,    SS 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 EX· 8 M/S M TELE 603 569 6616

| 41802 | 56.00 | 2.00 | | 1034.79 | 54.33 | | 1089.12 | 173.31 | 15.79 | .00 | .00 | 900.02 | .00 | .00 |
PERIOD END DATE 11/30/2003 MONTH 12 PERIOD CODE 1 QUARTER CODE 4    CHECK NO 65907

| 41801 | 40.00 | | .00 | 745.83 | .00 | | 745.83 | 95.46 | 10.82 | .00 | .00 | 639.55 | .00 | .00 |
PERIOD END DATE 12/07/2003 MONTH 12 PERIOD CODE 1 QUARTER CODE 4    CHECK NO 66136

| 41801 | 40.00 | 4.00 | | 745.03 | 108.66 | | 853.69 | 119.92 | 12.38 | .00 | .00 | 721.39 | .00 | .00 |
PERIOD END DATE 12/14/2003 MONTH 12 PERIOD CODE 1 QUARTER CODE 4    CHECK NO 66247

| 41801 | 40.00 | 6.00 | | 745.03 | 171.50 | | 916.53 | 134.17 | 13.29 | .00 | .00 | 769.07 | .00 | .00 |
PERIOD END DATE 12/21/2003 MONTH 12 PERIOD CODE 1 QUARTER CODE 4    CHECK NO 66394

12/28/2003

| 41801 | 48.00 | 10.00 | | 891.22 | 271.66 | | 1162.88 | 190.03 | 16.86 | .00 | .00 | 955.99 | .00 | .00 |
PERIOD END DATE 12/28/2003 MONTH 1 PERIOD CODE 1 QUARTER CODE 1    CHECK NO 66515

| 41801 | 40.00 | | .00 | 746.34 | .00 | | 746.34 | 95.58 | 10.82 | .00 | .00 | 639.94 | .00 | .00 |
PERIOD END DATE 1/04/2004 MONTH 1 PERIOD CODE 1 QUARTER CODE 1    CHECK NO 66619

| 41801 | 80.00 | | .00 | 1448.80 | .00 | | 1448.80 | 254.86 | 21.01 | .00 | .00 | 1172.93 | .00 | .00 |
PERIOD END DATE 1/04/2004 MONTH 1 PERIOD CODE 1 QUARTER CODE 1    CHECK NO 66620

| TOTAL | 344.00 | 22.00 | .00 | 6357.04 | 686.15 | .00 | 6963.19 | 1063.33 | 100.97 | .00 | .00 | 5798.89 | .00 | .00 |

① Check # 66619 Represents 40 hours of pay, for pay period ending 1-4-2004,
1ST week of Employment They hold back

② Check # 66620 Represents 80 hours of Leave-time paid at the end of Employment.

Jeffrey a. Unquehart
H.R. Coordinator.

8-27-2013

Accusing me Falsely of violating a STALKING CRIMINAL that was a CIVIL CIVIL Restraint Order in Equity

Hello000 On the 29th when he Put me in Jail where he Put me On the 28th HE WAS NOT AN Employee of the Town. when he Took me To Arraignment

DATES CHECKS RECEIPT

## NH POLICE STANDARDS & TRAINING COUNCIL

### EMPLOYEE STATUS NOTIFICATION FORM "A"

DECEMBER 30

PLEASE PRINT OR TYPE

| 1. Social Security No. | 2. Last Name    First Name    Middle Initial | 3. Date of Birth |
|---|---|---|
| | O'Brien    James    R. | |

| 4. Department | 5. Department Address | 6. Effective Date of Employment |
|---|---|---|
| Moultonborough PD | P.O. Box 121 Moultonborough, NH 0325_ | 12-30-03 |

| 7. To Hold Position of: (Chief, Lieutenant, Officer, CO, etc.) | 8. Check One: Full-time [x] Part-Time [ ] |
|---|---|
| Police Officer | |

| 9. General Education: (Check One) | 10. College: (Check One) | 11. College Major: |
|---|---|---|
| High School [x] G.E.D. [ ] (Please submit copy) | Associates [ ] Masters [ ] Baccalaureate [x] Doctorate [ ] _____ Credit Hours (If no degree) | Criminal Justice |

| 12. Prior Law Enforcement Experience (Check One) | 13. We are requesting certification based on prior training and experience. (Check One) |
|---|---|
| Yes [x]    No [ ] | Yes [ ]    No [ ] |

14. Place an "x" after each of the following minimum requirements to indicate they have been complied with:

| | YES | NO |
|---|---|---|
| a. The officer attests to being a citizen of the United States. | XX | |
| b. The officer has been fingerprinted and the prints have been submitted to the NH State Police (Fingerprint Bureau) for criminal record checks. | XX | |
| c. The officer has been found not to have been convicted of a felony under state or federal law. | XX | |
| d. The officer's background has been investigated. | XX | |
| e. The officer has been examined by a licensed physician. | XX | |

The above-named officer satisfactorily meets the Council's minimum standards for employment as a police/ corrections officer and the hiring authority certifies that all items in Section 14. have been complied with. This form is signed subject to the provisions of RSA 641:3 (Unsworn Falsification).

Signature of Hiring Authority (no stamp) ___ Scott D. Kinmond ___ *Scott Kinmond*

Date: 12-30-03 ___ Title ___ Chief of Police ___

**NOTICE: A PHOTOCOPY OF THE APPLICANT FINGERPRINT CARD ON THIS OFFICER MUST BE ATTACHED TO THIS FORM "A" OR IT WILL BE REJECTED**

to a report of a fight (10-61) nearby.   Approximately 13 minutes later Officer Hamilton returned. At that point Officers Archambault and O'Brien also arrived.  You asked what the Officer's did. Officer Hamilton's report documents certain observations he made and summarizes statements obtained from various individuals.  I spoke to Sgt. Archambault.  He recalled bringing a camera and statement forms to the scene.  He noted that if he had played a more active roll, he likely would have submitted a report.

With regard to your question #5, it is not clear what incident you are referring to.  When you mention *"the extended Kasper family"* Officer Hamilton could not relate that to anything he is familiar with.  Perhaps if you could provide further identifying information, we may be able to offer a response.

Officer Hamilton reviewed the comments and questions contained in your letter dated October 31, 2005 which relates to the reported violation of a protective order in 2003.  Officer Hamilton indicated that incident report was taken by Officer O'Brien and his roll was limited to assisting him in executing the arrest warrant.  Once an arrest warrant is issued, any officer can execute it. At the time they took you into custody, Officer Hamilton recalled telling you to put your shoes on, and does not believe you left without them.  The best answer I can offer at this point as to why you were arrested is that it was because a warrant was obtained based on a complaint filed with the police department.  As to why you were taken to the jail, I am assuming it would have been because it is required under RSA 173-B:9 and that the officers had no choice.  Any time a person is arrested on a charge alleging a violation of a protective order, the defendant is required to be held until he or she can be arraigned.

I hope at least some of your questions have been answered.

Sincerely,

Brian R. Black
Chief of Police


Cc:    Wolfeboro Police Commission
       Officer Charles Hamilton
       file

NO _____

CARROLL, SS

To the Sheriff of any County in the State, or his deputy or any Police Officer of any City or Town within the State:

WHEREAS: James O'Brien of the Wolfeboro Police Department Wolfeboro, New Hampshire, in the County of Carroll has exhibited to me, Robert Varney _____ , a Justice of the District Court for Southern Carroll County in the County of Carroll, his complaint, upon oath charging the crime of Violation of Protective Order, 173: B-9 against Josephine S Amatucci, DOB: 09/27/1938 of 350 Gov Wentworth Hwy, Wolfeboro NH 03894 in the County of Carroll

WE COMMAND YOU to take Josephine S Amatucci, DOB: 09/27/1938 (if found to be in your precinct) and bring her before the District Court of Southern Carroll County.

Dated December 02, 2003

_____
Justice of the District Court for Southern Carroll County

CARROLL, SS  12/29/03  2003  *NOT AN EMPLOYEE OF WOLFEBORO - TERMINATED*

I have arrested ~~Josephine~~ S Amatucci, DOB: 09/27/1938 and now have her before the District Court of Southern Carroll County, as commanded.

*James O'Brien*
Name of Officer

*Patrolman*
Title of Officer

2003

WPD #03-453

*NO WARRANT*
*IMPERSONATING A POLICE OFFICER*
*PERJURY  ARREST  NO-CONTACT ORDER*
*UNLAWFUL  WAS NOT A STALKING ORDER*
*ORDER  CIVIL  NO-CONTACT ORDER  NO*
*BUT A  the Police HAVE NO*
*WHERE  AUTHORITY TO PROSECUTE*
*I WAS PROSECUTED*

RECEIVED

DEC 3 1 2003

DISTRICT COURT FOR
SOUTHERN CARROLL COUNTY

**Preti**Flaherty

Augusta, ME

Concord, NH

Boston, MA

Washington, DC

Bedminster, NJ

Salem, MA

Mark H. Puffer
mpuffer@preti.com
Direct Dial: 603.410.1545

July 2, 2013

Josephine Amatucci
PO Box 272
Wolfeboro Falls, NH  03896

     **RE:**   **Town of Wolfeboro – Right-to-Know Law**

Dear Ms. Amatucci:

     I am in receipt of a copy of a Petition for Information Under the RSA Chapter 91-A, New Hampshire Right-to-Know Law, signed by you June 26, 2013, and titled "Josephine Amatucci v. James O'Brien." My understanding is that any records you are now seeking have been provided to you.

     Your Petition for Information asks for disclosure of "specifically, any termination or resignation letter signed by O'Brien, pertaining to his termination of employment with the Wolfeboro Police Department in 2003." As you have been advised, there is no "termination or resignation letter signed by O'Brien." Rather, as is the standard practice, O'Brien signed a Personnel Action Request which indicated an effective date for his resignation of January 4, *FRAUD* 2004. Enclosed is a copy of that Personnel Action Request for your convenience, although you have previously been provided a copy of that document and indeed it was included along with the copy of your Petition for Information.

     Should you have any questions on any of the above, please contact me. If there is additional information that you are seeking, please contact me.

                    Sincerely,

                    Mark H. Puffer

MHP:lcs

Enclosure

cc: David Owen, Town Mgr.



Preti Flaherty
Beliveau & Pachios LLP
Attorneys at Law

**Shipping Address Only - No Mail Delivery:** 57 North Main Street, Concord, NH 03301
**Mailing Address:** PO Box 1318, Concord, NH 03302-1318  |  Tel 603.410.1500  |  www.preti.com          5464928.1



EXHIBIT

specifically alleges that because she had not received a written
order clarifying that she was not allowed to contact Bolduc at
the time she mailed him the November 13, 2003 letter, that a
truthful and complete recitation of the facts to the issuing
judge would have belied the fact that the state did not have
sufficient evidence of the *mens rea* for the crime of knowingly
violating a restraining order to support probable cause.
Matucci claims that the warrant affidavit, which was not
submitted with the complaint, must have omitted the fact that
Matucci had not yet received notice that contact with all of the
Maloneys' relatives was forbidden by the superior court order.
Matucci has thus stated the minimum facts necessary to
demonstrate a Fourth Amendment claim for false arrest and
detention against O'Brien and Hamilton for the December 2003
arrest.

In an Order issued simultaneously with this Report and
Recommendation, I will direct that the False Arrest and Detention
claim for the August 2002 arrest be served on Hamilton.  In that
order, I will also direct that a False Arrest and Detention claim
be served on both O'Brien and Hamilton for the December 2003
arrest.

15

18

77

**WOLFEBORO POLICE DEPARTMENT**
**Wolfeboro, New Hampshire**

Name _JOSEPHINE ANATUCCI_

Address _350 GOV WENTWORTH HWY WOLFEBORO N/H_

Lic. No. _____ Exp. _____ DOB _9-27-35_

Owner _____

Reg. No. _____ Make of Car _____ Year _____ Type _____ Color _____

Engine No. _____ Date _____ Place _____

Time _____ Violation _Simple assault 631:2-a_

_Criminal Mischief 634:2_

**SUMMONS**

You are hereby notified to appear before the District Court of Southern Carroll County in the State of New

Hampshire on the _4_ day of _December_ 20 _02_ at _12 30_
o'clock in the forenoon/afternoon to answer to a complaint for the above offense in violation of the laws of
the State of New Hampshire. Hereof fail not, as you will answer your default under the penalty of the law
in that behalf made and provided. (RSA 1959, c. 594:14)

Dated at _Wolfeb_

the _7_ day of _November_ 20 _02_ _____
**Police Officer**

9002 NO WARRANT
ASSAULT - Finger Print INt

testify at Amatucci's trial.  Amatucci also alleges that Judge
Robert Varney violated her constitutional rights by giving advice
to the Wolfeboro Police Department, an act which she claims lies
outside the judicial function.  Finally, Amatucci seeks to state
a claim against Wolfeboro Police Chief Brian Black, the Wolfeboro
Police Department, and the Town of Wolfeboro, for improperly
training and supervising the police officer defendants in this
case, directly resulting in a violation of Amatucci's rights by
those officers.  I will discuss and address these claims in turn.

1.    **False Arrest and Detention Claims Against O'Brien and
      Hamilton**

Presuming the proper issuance of a warrant by a judge in
this case, Amatucci's assertion is that the warrant was issued
based on the misleading impression left by defendants Hamilton
and O'Brien when they intentionally omitted material exculpatory
information from their warrant applications.  "[T]he intentional
or reckless omission of material exculpatory facts from
information presented to a magistrate may . . . amount to a
Fourth Amendment violation."  Burke v. Town of Walpole, 405 F.3d
66, 81 (1st Cir. 2005).  When evaluating allegedly material
omissions from a warrant application, "recklessness may be

13

*Description of the Deliberate Indifference*

· all records in his or its possession relating to Officer O'Brien's hours worked and
termination of employment with the Town at the end of 2003 and beginning of 2004.

3. In Paragraph 1 of Plaintiff's Motion, Defendant assumes that Plaintiff intended to state
that she was told that paychecks for Wolfeboro employees are issued one week after the
actual hours worked, not one month. Wolfeboro employees (and this was true in 2003-
04) are in fact paid one week in arrears.

4. Plaintiff has been provided with copies of Officer O'Brien's payroll history which
includes the pay period ending January 4, 2004 (by the Town Manager in 2011, by
Defendant in connection with this Right-to-Know case, and by the Court). In relevant
part, the payroll history indicates that Officer O'Brien was paid for "Period End Date
1/04/2004." This means what it says: that Officer O'Brien was paid for the period ending
January 4, 2004. It does not mean that he received payment on that date and therefore
must have terminated employment some time earlier.

5. The only reasonable inference, based upon all of the documentation that has been
produced, is that Officer O'Brien terminated employment with the Town of Wolfeboro
on January 4, 2004. *FRAUD* *NO*

6. It should be noted that Plaintiff is attempting to expand this case from a Right-to-Know
law case requesting information into something much greater. In Paragraph 6 of
Plaintiff's most recent Motion, Plaintiff asks this Court to determine that Officer O'Brien
is guilty of violating the Plaintiff's Fourth and Fourteenth Amendment Rights.

7. Defendant is aware that, due to Plaintiff's multitude of lawsuits against the Town of
Wolfeboro, Officer O'Brien and other Town employees and officials, this Court has
previously ordered that Plaintiff not file any further lawsuits based upon Plaintiff's

7. Why did you leave the Wolfeboro Police Department, and transfer to the Moultonborough Police Department. Were you fired, or did you just transfer. Please explain why?

**ANSWER:**

**Objection. This information is not relevant to the claim or defense of any party nor is it reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1). Without waiving the above objection, Officer O'Brien responds as follows.**

**I was not fired from the Wolfeboro Police Department. I transferred to Moultonborough Police Department in December 2003. I wanted to work with a K-9 Unit, and at the time the Wolfeboro Police Department did not have a K-9 unit and did not plan to implement one. I am currently a K-9 officer with the Moultonborough PD.**



Ref: **03-5-AR**

On Sunday, December 28, 2003, at approximately 1:50 p.m., Senior Patrolman Charles Hamilton and I went to 350 Governor Wentworth Highway to execute an arrest warrant on

JOSPEHINE AMATUCCI 9/27/1938
350GOVERNOR WENTWORTH HWY
WOLFEBORO, NH 03894
569-2429.   *NOT A STALKING ORDER*

The warrant was for a violation of a Protective Order pursuant to a final Stalking Order issued by Judge James O'Neil of the Carroll County Superior Court on November 12, 2003. The warrant was made effective December , 2003, by Judge Robert Varney.

At APPROXIMATELY 2:05 p.m., AMATUCCI was arrested without incident. I placed the handcuffs on her, double locked, and checked for tightness. AMATUCCI was then escorted to the police cruiser.

AMATUCCI was transported to the Carroll County House of Corrections and relased to staff. AMATUCCI asked HAMILTON and I to go back to her reseidence to unlock her residence as her son was coming from Massachusetts. HAMILTON unlcoked the door and left the key inside the residence as asked by AMATUCCI.

Case closed.

to cease contact with any member of the Maloney family." Id. Judge Varney signed the arrest

warrant on December 2, 2003. O'Brien Aff. at ¶ 15, Attachment 2.

On December 28, 2003, Officer O'Brien and Officer Hamilton went to Ms. Amatucci's

house to execute the arrest warrant. O'Brien Aff. at ¶16; Hamilton Aff. at ¶24. Because Ms.

Amatucci was accused of violating a stalking order issued pursuant to RSA 173-B, the officers

were required to arrest her and ensure that she was detained pending her arraignment. Hamilton

Aff. at ¶ 24. Officer O'Brien handcuffed her, and Officer Hamilton transported her to the Carroll

County House of Corrections. O'Brien Aff. at ¶17; Hamilton Aff. at ¶25. Officer O'Brien and

Officer Hamilton allowed Ms. Amatucci to put her shoes on before walking out to the police

cruiser. O'Brien Aff. at ¶18; Hamilton Aff. at ¶24. Ms. Amatucci asked Officer Hamilton to do

her a favor and go to her house after taking her to the house of corrections and unlock the door

for company that she was expecting. Hamilton Aff. at ¶26. Officer Hamilton accommodated

this request. Hamilton Aff. at ¶26.

### C.    Prior Encounters Between Ms. Amatucci and Officer Hamilton

In this lawsuit, Ms. Amatucci has alleged that Officer Hamilton was motivated to arrest

her in 2002 because of an incident that happened at some point before 2002. See Amended

Complaint. Officer Hamilton recollects that prior to Ms. Amatucci's 2002 arrest, Ms. Amatucci

was involved with a man named Robert "Bob" Bruce, and she had keys to his house. Hamilton

Aff. at ¶28. Mr. Bruce contacted Officer Hamilton because he wanted his keys back, and Ms.

Amatucci refused to give them to Mr. Bruce. Id. Officer Hamilton spoke with Mr. Bruce and

Ms. Amatucci to attempt to resolve the matter. Id. Ms. Amatucci refused to hand the keys over

to Mr. Bruce, but she handed them to Officer Hamilton. Id. In Officer Hamilton's presence, Ms.

Amatucci slapped Mr. Bruce on the face. Mr. Bruce did not want Ms. Amatucci criminally

TOWN OF MOULTONBOROUGH

APPOINTMENT

To James R. O'Brien of Moultonborough in the County of Carroll, State of New Hampshire.

Whereas, there is a vacancy of Police Officer in the Moultonborough Police Department, and whereas we, the subscribers, have confidence in your ability and integrity to perform the duties of said office, we do hereby appoint you, James R. O'Brien, a Police Officer for the Town of Moultonboro Police Department and upon your taking oath of office, and having this appointment and the certification of said oath of office recorded by the Town Clerk, you shall have the powers, perform the duties and be subject to the liabilities of such office until another person shall be chosen and qualified in your stead.

Given under our hands this 30th day of December, 2003.

Ernest E. Davis, Jr.          Karel A. Crawford          Russell C. Wakefield

MOULTONBOROUGH BOARD OF SELECTMEN

I, James R. O'Brien, swear that I will faithfully and impartially discharge and perform all the duties incumbent on me as a Police Officer for the Town of Moultonboro Police Department according to the best of my abilities, agreeably to the rules and regulations of the constitution and laws of the State of New Hampshire.

So Help Me God

State of New Hampshire

Carroll County, ss.

Personally appeared the above named James R. O'Brien, who took and subscribed the foregoing oath. Before me, Barbara E. Wakefield.

Date  1/7/04

Town Clerk, Barbara Wakefield

Assault alleged against former police chief | MassCops

*DescripTion of the N Deliberate Indifference*



Log in or Sign up

Search...

Forums     Members     Help     What's New?

**Search Forums**   **Recent Posts**



3-12x50 Klassik
VISUALLY STRIKING AND ROBUST RIFLESCOPE FOR
THE PURIST SEEKING THE UTMOST IN QUALITY

love
has
no
labels

Forums    Politics & News    Police News Articles    **Hot Topics**

## Assault alleged against former police chief

Discussion in 'Hot Topics' started by stm4710, Feb 4, 2005.

Thread Status: **Not open for further replies.**



**stm4710**
Subscribing Member

Assault alleged against former police chief
By Cathryn Keefe O'Hare/ cohare@cnc.com
Thursday, February 3, 2005

A Danvers woman filed charges in federal district court Tuesday alleging that former Police Chief Stuart Chase assaulted her in September 2003, when he first yelled at her, then grabbed her arm, then arrested her for trespassing, and then released her after fingerprinting and holding her in a cell for two hours.

The trespassing charge was dropped at her court appearance the next day, according to the complaint brought by Cynthia Kennedy of Rand Circle against Stuart M. Chase and the town of Danvers.

Kennedy sought treatment that evening at Beverly Hospital, according to the narrative provided in the complaint written by the plaintiff's law firm, Howard Friedman, P.C., 90 Canal St., Boston. The emergency room report is quoted as stating she had bruising under her arm and that she was "very upset, tearful and anxious."

Wolfeboro Police Chief Stuart Chase to retire in January

Page 1 of 3

## Welcome to Salmon Press

Home    About Us    Advertise    Classifieds    Subscribe    Archives    Photo Reprints    Facebook

Granite State News ⏵

# Wolfeboro Police Chief Stuart Chase to retire in January

by Elissa Paquette

*He WAS Terminated*

write the author

July 07, 2016

WOLFEBORO — From here on out, Chief Stuart Chase's work in Wolfeboro will take on a tinge of nostalgia, for he's served notice to the Wolfeboro Police Commissioners that he intends to retire as of Jan. 2, 2017.



Chase led the July 4th parade for the last time on Monday. The day was uneventful as far as police activity was concerned, a welcome sign of community stability. That's always been his goal. Good police work entails good relationships. "I judge success," says Chase "not on tickets or arrests but the partnerships we've created and the confidence and trust we've gained from most of the citizens."

WOLFEBORO POLICE CHIEF STUART CHASE has announced that he will be retiring from the department as of Jan. 2, 2017. (Elissa Paquette photo) (click for larger version)

It's Chase's second retirement. His first career was in Danvers, Mass., but he confides that Wolfeboro is where he's wanted to be since the age of 12. His family first started visiting Wolfeboro in 1955. Those summer time memories and the connection to the lake instilled that desire to make this his permanent home.

"The background in Massachusetts was just the foundation to come here. I felt that this was truly my home and where I was meant to be… I thought I would do this forever but just consider myself blessed to be able to come here 12 years ago.

"The department is almost like family to me here. It's a smaller department. The role of chief has been more democratic than in [his past experience]. It was a perfect fit for the time."

Police Commission Chair Steve Wood commented: "I can say with a great deal of certainty on behalf of our fellow commissioners that we are sad to lose a great leader. He's been a tremendous asset. He's dedicated his life to the field of law enforcement - now he can move on to spend more time with family." He praised the chief's efficiency, the trust he's fostered and his fair treatment of others.

"Personally, when I was asked to consider serving on the commission in 2013, he was the primary reason I ran. I had heard great things about him and was anxious to meet him. The culture created within this department is amazing and it has a good relationship with outside agencies."

In Chase's view, the department is "a social service agency - the only one open 24 hours a day. And we still make house calls," he says with a laugh. "Police work is altruism at its finest. There is always a segment of our population who rely on others for help. My mantra has always been, 'We are not the enemy here.'".

Wood said the commissioners just heard of the chief's decision, so have not yet developed a plan for succession. There is time. Meanwhile, the department is in good hands.

Thanks for visiting SalmonPress.com



Parker Village - Littleton

Desirable Location · Under New Management · Smoke Free
Accepting Applications for 1, 2 and 3 bedroom apartments



BodeFest MARCH 24th, 2018

CANNON    BodeFest

BodeFest Ski Challenge
ONLINE REGISTRATION IS OPEN

VISIT WWW.TURTLERIDGEFOUNDATION.ORG TO REGISTER!

$49 FIRST-COME / FIRST-SERVED
SPACE IS LIMITED

TURTLE RIDGE FOUNDATION

Recent Elissa Paquette
Wolfeboro seeks repayment of rescue expenses from Fay

relevant information, the party's resources, the importance of the discovery in resolving the issues, and whether the burden or the expense of the proposed discovery outweighs its likely benefit."

4. In determining whether or not personnel records, especially those of police officers, should be disclosed, this Court has used a balancing process. *See, Hoyt v. Connare, 202 F.R.D. 71 (D.N.H. 1996). See also, Greater Newport Clamshell Alliance, 838 F.2d 13 (1ˢᵗ Cir. 1988).*

5. Plaintiff's request for the personnel records and internal investigation files of Stuart Chase, Shane Emerson and James O'Brien is over-broad, and would necessarily include information that is both not relevant nor calculated to lead to relevant evidence. The records also contain confidential materials as well.

6. In an effort to determine whether or not there would be any potential discoverable material in the records requested by Plaintiff, counsel for the Defendants had the personnel records of each of the individuals named in Plaintiff's motion reviewed:

   Attorney General

   a. Chief Stuart Chase: A review of the police department records involving former Chief Stuart Chase revealed that no internal investigation was ever conducted by the Wolfeboro Police Department or any other law enforcement agency against former Chief Chase. Accordingly, there are no records to produce. Additionally, a review of the personnel file of former Chief Chase did not reveal that there were any records pertaining to the Plaintiff nor was there any disciplinary action taken against former Chief Chase for any infraction whatsoever. There are no records contained in the file regarding any issues involving possible malicious prosecution asserted against Chief Chase. Accordingly, as there are no records relevant to the matters at issue in this case, pursuant to the Federal Rules of Civil Procedure, Defendants object to the production of the personnel file of former Chief Chase.

   outside of A-6.

   Deliberate
   I Noifferance

   b. Officer Shane Emerson: Similarly, there was no internal investigation conducted against Officer Shane Emerson by the Wolfeboro Police Department or any other law enforcement agency. Accordingly, there are

From: James Scott Chase [mailto:Chase@effinghampolice.org]
Sent: Tuesday, May 27, 2014 9:45 AM
To: David Owen
Cc: Ron Goodgame; mbalboni@metrocast.net
Subject: Amatucci

Good morning, Dave:

FYI:

As you probably know, Amatucci has claimed that I threatened her, stole personal papers from her vehicle and tampered with a video; these allegations being related to her most recent arrest. After conferring with Attorney Garry Lane and the Commissioners, I notified the NH Attorney General's office of the Amatucci claims and asked for an outside investigation. Senior Assistant AG, Jane Young, has assigned Investigator Richard Tracy to this inquiry.

Amatucci will be seeing the video of the encounter between she, Lt. Rondeau and I that preceded her arrest on May 7th. The viewing is scheduled for Thursday, May 29th. Investigator Tracy will join us at that time. He will interview Amatucci after the video disc is reviewed.

smc

Richard Tracy called my son and told him to tell me that if I accuse Chase he will have my license to drive revoked. Where the Attorney General defends police misconduct.

2

Email Report Printed: 09/16/2004 @ 0002

ant 09/07/2004 @ 1603 By: Chief Richard Labell
ject: AMMATUCCI
  To: Sr. Patrolman Charles Hamilton

Chuck:

. Ammatucci is claiming you falsely arrested her back in 2002 for the
ple assault. I am refusing to do an investigation into this matter
ause I feel you did nothing wrong. Could you please locate the arrest
e and put it in my mailbox so I can review it again so when she calls I
 shut her down.

 is claiming you arrested her without a warrant, if my memory serves me
elieve there was eithier a warrant or you summonsed her. She is also
iming that she met you in a store in town recently where you told her
 lied in that investigation, again, this is what she is saying.

nks
ef.

*Chief*

*Information requested allahu*

*Chuck*

*9-15-04*



CHIEF OF POLICE
Richard A. Labell

Town of
Wolfeboro

September 16, 2004

Mrs. Josephine S. Amatucci
350 Gov. Wentworth Hwy.
Wolfeboro, New Hampshire 03894

Dear Mrs. Amatucci:

I am in receipt of your letter and I have reviewed it as well as both case files you
mentioned in your letter.

In both cases I found you were arrested on an arrest warrant that was sworn to and signed
by a Judge, with that said; I am at this time not opening any investigation into your
allegations. If you feel the need to pursue this matter, I suggest you contact the Attorney
Generals Office.

Sincerely:

Richard A. Labell
Chief of Police.



251 South Main Street    Post Office Box 1689    Wolfeboro, New Hampshire 03894

**WHILE YOU WERE AWAY**

FOR _Brian_ DATE _10/5_ TIME _3:00_ A.M.

M _Jim Lowney_

OF _509-2538 Ex. 8_     X PHONED

PHONE ☐ FAX ☐ MOBILE     RETURNED YOUR CALL

AREA CODE   NUMBER   EXTENSION   X PLEASE CALL

MESSAGE _Budget & Amatucci_     WILL CALL AGAIN

_Give him your direct #_     CAME TO SEE YOU

     WANTS TO SEE YOU

SIGNED _Trish_     TOPS FORM 4003

# Memorandu

**To:** CHIEF

**CC:**

**From:** TRISH CLOUTIER

**Date:** 9/27/2004

**Re:** JOSEPHINE AMATUCCI (03-5-AR)

I HAVE LOOKED EVERYWHERE THAT I CAN IMAGINE FOR THE AFFIDAVIT AND WARRANT, BUT I HAVE NOT FOUND THEM. ATTACHED ARE SOME DOCUMENTS THAT I CAME ACROSS IN MY SEARCH. JIM SUGGESTED THAT I CALL THE COURT – I DID, BUT THEY HAVE NOTHING ON THIS CASE.

IT IS AN UNDERSTATEMENT TO SAY THAT FILING IS …. I DON'T EVEN KNOW WHAT TO CALL IT, OTHER THAN SCARY.

TRISH:
PLEASE LOCATE THIS
FILE (03-5-AR) AND
COPY AFFIDAVIT AND
WARRANT FOR ME
TX
CHIEF

1