*FOR JESTICE*

*EXHIBIT C*

FILED - USDC -NH
2025 JAN 17 PM 2:43

1.(j)   Without limitation, your blaming and/or suing James O'Brien, Jared Welman, Stuart Chase, Robert Houseman and others for reasonable actions that they took in response to your abusive, out-of-control and unlawful conduct. Your behavior includes but is not limited to: your erratic driving in August 2013, and your conduct on May 7, 2014.

*Prove I did nothing Unlawful.*

1.(k)   See prior answers to interrogatories describing the incident of May 7, 2014.

1.(l)   No, I was not in the Town Hall at the time of the disturbance on May 7, 2014.

*Evidence*

Dave Owen (Town Manager)

STATE OF NEW HAMPSHIRE
COUNTY OF *Carroll*

Signed or attested before me on *13* day of *November* 2014 by _____

My Commission Expires _____

PATRICIA M. WATERMAN, Notary Public
My Commission Expires December 4, 2018

Signature of Justice of Peace/Notary

7G37971.1

# UNITED STATES DISTRICT COURT

Josephine Amatucci

v.

Stuart Chase, et al.

1:17-CV-00237-JL

FILED - USDC -NH
2025 JAN 17 PM2:44

# 2
Evidence

# UNDER SEAL
# FOR IN CAMERA REVIEW
# BY THE COURT ONLY –
# NOT FOR RELEASE TO THE PUBLIC

Documents provided by the Wolfeboro Town Manager's
Office, per Section 3(B) of Court's order dated 8/1/18

2

EXHIBIT C

1.(j)  Without limitation, your blaming and/or suing James O'Brien, Jared Welman, Stuart Chase, Robert Houseman and others for reasonable actions that they took in response to your abusive, out-of-control and unlawful conduct. Your behavior includes but is not limited to: your erratic driving in August 2013, and your conduct on May 7, 2014.

*Prove I did nothing unlawful.*

1.(k)  See prior answers to interrogatories describing the incident of May 7, 2014.

1.(l)  No, I was not in the Town Hall at the time of the disturbance on May 7, 2014.  *Evidence*

Dave Owen (Town Manager)

STATE OF NEW HAMPSHIRE
COUNTY OF _Carroll_

Signed or attested before me on _13_ day of _November_ 2014 by _____

My Commission Expires _____

PATRICIA M. WATERMAN, Notary Public
My Commission Expires December 4, 2018

Signature of Justice of Peace/Notary

# UNITED STATES DISTRICT COURT

Josephine Amatucci

v.

Stuart Chase, et al.

1:17-CV-00237-JL

#2
EVIDENCE

# UNDER SEAL
# FOR IN CAMERA REVIEW
# BY THE COURT ONLY –
# NOT FOR RELEASE TO THE PUBLIC

Documents provided by the Wolfeboro Town Manager's
Office, per Section 3(B) of Court's order dated 8/1/18

2

**A18** GRANITE STATE NEWS Thursday, November 9, 2006

*# 3*

*Evidence*

# JUSTICE: Amatucci seeks truth

FROM PAGE A13

plaints, besides one she had written, were in Hamilton's records.

"I wanted to see if there were any women who put in a complaint or allegation against him," said Amatucci.

Her subpoena was quashed, or defeated, after it was sent to court by a Wolfeboro town official before it was completed, according to Amatucci. She requested another subpoena, and the judge told her that there were no complaints in Hamilton's personnel file that had anything to do with the public, not even anything that Amatucci claimed to have written.

"Then I knew something was strange," said Amatucci.

Amatucci called Wolfeboro Police Commissioner Chair Ben Ladd and asked why the complaint she had written was not in Hamilton's file. She claims that Ladd told her that so many people complain about the police, he could write volumes and there is not enough room to put everything in the personnel files.

Amatucci reported that Ladd said her complaint "is in my personal files, and that's how it is."

Amatucci went on to say that the police commissioners are "protecting the police. They're hiding the complaints. People want to know, what are these guys doing? They're hiding true facts from the people."

In a recent interview with

Ladd, he stated there are no separate files.

"If there is one, I don't know about it," he said.

The complaints go through the chief of police and are dealt with internally, according to Ladd.

"You couldn't, as a citizen, make a complaint and put it in a personnel file," he said.

Fellow Police Commissioner Joe Melanson concurred with Ladd.

"There's no separate file that we have," he said.

Melanson said the personnel files are locked up in the chief's office and that everything, good and bad, is kept in those official files.

Amatucci stated that "something is going on with the police station."

Police Chief Stu Chase said that in the past year and a half, there have been no complaints filed against any of the officers.

"If there were a complaint, of course, it would be retained and reviewed," said Chase, who was a lieutenant before being named chief when Brian Black retired.

All complaints, and the decision of whether they are to be made public or not, are subject to the justice's orders.

"There are no files that we haven't revealed to her [Amatucci]," said Chase.

## Next step

Amatucci said she has tried every avenue to try to get people to believe her. She said she went to the community, the police commission-

ers and even the attorney general.

"Everyone was saying the police did nothing wrong," said Amatucci.

However, based on the Jan. 20 Order, Muirhead said the case could go forward against O'Brien and Hamilton.

"The judge said I was right; he said he [Hamilton] was guilty," said Amatucci.

In her October letter to the U.S. District Court for the District of New Hampshire, Amatucci wrote, "I know what I am doing when I am insisting to see if he has priors (previous complaints). I am putting his offenses in his personnel file where they belong, and not hidden in some internal file. This is exculpatory evidence for me or anyone else this may affect."

She explained that her next step would be to file "summary judgment," which means that a court makes a judgment without a full trial.

Amatucci followed up by saying that she has learned a great deal over the past few years and hopes that others will learn from her story as well.

*Michelle Giguere can be reached at 569-3126 or mgiguere@salmonpress.com.*

4

itzgerald, came into Amatucci's driveway and allegedly proceeded to kick and punch Amatucci and throw [s]tones at her.

"Amatucci got away from the individuals who were assaulting her and ran inside [h]er house to call the [W]olfeboro Police Department [f]or assistance," the testimony continued. "... The [W]olfeboro Police Department [s]ubsequently took the position that Amatucci was the [a]ggressor against her neighbors and sought to prosecute [h]er for damage to Fitzgerald's [c]ar and for assault. [Officer [C]harles] Hamilton obtained a [w]arrant to arrest Amatucci [o]n those charges and, on Nov. [_], 2002, Hamilton entered Amatucci's home and arrested [h]er on criminal mischief and [a]ssault charges pursuant to [t]hat warrant.

"Amatucci claims that [H]amilton must have failed to [p]resent exculpatory evidence [t]o the judge issuing the arrest [w]arrant, specifically, Amatucci's version of events and [t]he statement of an impartial [w]itness to the events of Aug. [1]6, 2002. Further, Amatucci [a]lleges that Hamilton falsely [o]btained the warrant by stating to the judge that a cinder [b]lock had been placed on the [w]heel well by Amatucci, damaging the car, when in fact he [h]ad simply seen a fragment [o]f cinder block inside the [w]heel well after the fact, as Hamilton later confirmed," [a]ccording to the background [i]nformation Amatucci filed [w]ith the U.S. District Court [f]or the District of New Hampshire.

The other incident involved another of Amatucci's neighbor.

Again, according to testimony provided by Amatucci to the U.S. District Court for the District of New Hamp-

going harassment from the Maloneys, Pauline and Robert, over the years, but the police have done nothing to protect Amatucci's right not to be harassed."

Pauline Maloney said she simply tries to ignore Amatucci. As for the complaint claims, she said she is in favor of the police.

"Chucky Hamilton was the only person who wasn't afraid to stand up to her [Amatucci] bullying," Pauline Maloney said.

"Finally, the police told Amatucci to go to court and attempt to obtain a 'stalking order' against the Maloneys, which Amatucci did," continued Amatucci's official court statement. "The Maloneys simultaneously sought a 'stalking order' against Amatucci."

Both parties appeared in the Carroll County Superior Court on Nov. 12, 2003, according to Amatucci's testimony, for a hearing on their mutual requests. Because both parties desired to have no contact with each other, the judge, from the bench, authorized orders restraining both parties from contacting or communicating with each other or each other's families.

"Prior to the Nov. 12 hearing, Amatucci had sought the assistance of legal counsel" to resolve an issue with Pauline Maloney's brother, reads Amatucci's testimony. "Because the lawyers had not yet acted on her behalf, Amatucci took it upon herself to write a letter" to Maloney's brother.

Amatucci brought the letter with her to court on Nov. 12, thinking Maloney's brother would appear. When he did not appear, Amatucci mailed the letter on Nov. 13, 2003, according to the report and recommendation signed by Judge Muirhead.

[Malon]er's relatives, Amatucci received this written Order on Nov. 15, 2003, two days after she had mailed the letter" to Maloney's brother, Amatucci's statement reads.

"On Nov. 18, 2003, Pauline Maloney and her brother took Amatucci's letter to the Wolfeboro Police Department seeking Amatucci's prosecution for violating the Superior Court's order.

"On Dec. 29, 2003, defendants O'Brien and Hamilton arrested Amatucci pursuant to an arrest warrant for violating the stalking order by writing to" Maloney's brother, according to information Amatucci filed with the U.S. District Court for the District of New Hampshire.

"Amatucci claims that O'Brien and Hamilton did not have facts supporting probable cause to arrest her to present to the issuing judge in support of the arrest warrant. Amatucci alleges that the officers failed to include all of the material facts to the issuing judge in support of their request for an arrest warrant," according to information Amatucci filed with the U.S. District Court for the District of New Hampshire and signed by Judge Muirhead.

Amatucci has also filed complaints against former Wolfeboro Police Prosecutor Dennis Davey, Judge Robert C. Varney, Police Chief Brian Black, the town of Wolfeboro, and the Wolfeboro Police Department. Judge Muirhead recommended that all of those claims be dismissed and they have now been passed on to U.S. District Court Chief Justice Steven McAuliffe, who is the presiding judge over this case, for his confirmation.

According to Cairns Amatucci is representing herself in the matter.

allegations, according to Roy. Roy said they could either file an answer, which would lead to a preliminary pre-trial conference or they could make a motion to dismiss.

Chief Black said there wasn't much he could say at this time regarding the complaints.

"We don't feel that there is any merit but I have to refer you to the law firm that is handling this," Black said.

That law firm is Ransmeier and Spellman based in Concord. The two lawyers representing the defendants are R. Matthew Cairns and Lisa M. Lee.

"The town and the police officers will be filing an answer where we will address each of Ms. Amatucci's allegations," Cairns said. "The town and the police officers as a whole disagree with Ms. Amatucci's accounting of the events and feel they engaged in no wrongful conduct toward her."

Cairns said he would be filing an answer on behalf of the town and police department on March 1 (It would not be available until after deadline), where he answers line by line the allegations in Amatucci's testimony. He said it was a long process because Amatucci had several mistakes in her account including dates.

"The town is standing behind its police officers," Cairns said. "They believe no wrongful conduct has been done toward Ms. Amatucci and they look forward to defending their reputation in court."

Cairns said a structuring conference will be scheduled in the next few weeks.

*Adam Coughlin can be reached at 569-3126 or acoughlin@salmonpress.com*

14

FILED - USDC -NH
2025 JAN 17 PM2:44



8b.    Denied.

8c.    Denied.

8d.    Denied.

9.    Denied. Admitted, however, that although the plaintiff was in fact exceeding the posted speed limit, the state trial court found that the prosecutor failed to prove that the excessive speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so and that she was, therefore, guilty of failing to stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response above to Paragraph 7.

10.    Denied except admitted that the plaintiff came to the Town Hall and was shouting at Anne Marble and made a disturbance. Admitted that Mr. Houseman was the Town Planner but that he was acting as Town Manager that day. Denied that Mr. Houseman called the police department. Nor did he order anyone else to call the police or even know at the time anyone was calling the police. He escorted plaintiff to an empty courtroom (without touching her) in order to try to calm down Ms. Amatucci and to protect Ms. Marble.

Admitted that when the plaintiff arrived at Town Hall she first spoke to Town employee Cathy Ferland and asked to speak to Anne Marble. Admitted Anne Marble is/was the Administrative Assistant for the Town Manager. Denied that Ms. Marble was "alone" as there were other employees around, including, for example, Cathy Ferland and Brenda LaPointe. Ms.

5

*12/29/14*

144

## THE STATE OF NEW HAMPSHIRE

SUPERIOR COURT                          CARROLL SS

State

v.

Josephine Amatucci                Case No. 464-2014-cr-00095

*2014-CV-00114*

### MOTION TO INCLUDE DISCOVERY

Please file the attached document in the files, as discovery.

Respectfully,

Josephine Amatucci

P. O. Box 272

Wolfeboro Falls, NH 03896

c. Attorney's Smith, Fredericks and Lane

Dec. 29, 2014

*Josephine Amatucci*

1

**Arrest Report**

**Arrest #: 14-84-AR**
**Call #: 14-14889**

| # | DEFENDANT(S) | | | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|---|

**[RIGHTS/BOOKING CHECKS]**

RIGHTS ADVISED BY: Patrolman Shane Emerson       DATE/TIME:   05/07/2014 @ 1300
            PHONE USED: N
      ARRESTEE SECURED: N

         FINGERPRINTED: N
          PHOTOGRAPHED: Y
         SUICIDE CHECK: Not Performed
               PERSONS: State&Federal
   NCIC VEHICLE CHECK: Not Performed
     INJURY OR ILLNESS: N

| # | OFFENSE(S) | | | ATTEMPTED | | TYPE | CLASS | |
|---|---|---|---|---|---|---|---|---|

LOCATION TYPE:  Other/Unknown          Zone: Downtown
TOWN HALL
84 SOUTH MAIN ST
WOLFEBORO NH 03894

| # | OFFENSE | | | ATTEMPTED | | TYPE | CLASS | |
|---|---|---|---|---|---|---|---|---|
| 1 | **DISOBEYING AN OFFICER** | 265 | 4 | N | B | Misdemeanor | B | |
| | OCCURRED: 05/07/2014   1248 | | | | | | | |
| | SUSPECTED OF USING: Not Applicable | | | | | | | |
| 2 | **FAILURE TO OBEY POLICE OFFICER(TRAFFIC)** | 265 | 3 | N | B | Misdemeanor | B | |
| | OCCURRED: 05/07/2014   1248 | | | | | | | |
| | SUSPECTED OF USING: Not Applicable | | | | | | | |
| 3 | **SPEED - BASIC RULE** | 265 | 60,I | N | | Violation | | |
| | OCCURRED: 05/07/2014   1248 | | | | | | | |
| | SUSPECTED OF USING: Not Applicable | | | | | | | |

| # | VEHICLE(S) | YEAR | MAKE | STYLE | COLOR1 | COLOR2 | REG | VALUE |
|---|---|---|---|---|---|---|---|---|
| 1 | **PT CRUISER** | 2006 | CHRY | 4H | BLU | | NH 2321610 | $1.00 |

        STATUS: Seized (Not Previously Stolen)              DATE: 05/08/2014
         OWNER: AMATUCCI, JOSEPHINE
           VIN: 3A4FX48B76T266136

| # | OTHER PROPERTIES | | | PROPERTY # | | STATUS | | |
|---|---|---|---|---|---|---|---|---|
| 1 | **RED, FLASH DRIVE/COPY ON CD** | | | 14-98-PR | | Evidence (Not Nibrs Reportable) | | |

     QUANTITY: 2              VALUE: $1.00
     SERIAL #: NOT AVAIL
         DATE: 05/21/2014
        OWNER: AMATUCCI, JOSEPHINE

*The Plaintiff's "Pursuit" By the Police started in the Town Hall and was Rebarbust*
*information from Employees of the Town Hall to Officer James O'Brien that she*
*was headed to the Sheriff's Office to complain about Chief Chase criminally*
*Threatening her in the Police Station minutes earlier.*

*Not Because she was Speeding*
*Expert Testimony will Show she could not have Been Speeding.*

**Carroll County Sheriff's Department**

Page: 1

NARRATIVE FOR SERGEANT TIMOTHY E THOMPSON

Ref: 1400-420-OF

| | |
|---|---|
| Entered: 05/08/2014 @ 1130 | Entry ID: 1312 |
| Modified: 05/08/2014 @ 1322 | Modified ID: 1312 |

On 05-07-2014 the Wolfeboro Police Department contacted the Sheriff's Office reporting that they had units in a pursuit on Center Street travelling toward Ossipee. Deputy Brian King and I left the Sheriff's Office and responded to the intersection of Route 28 and Pork Hill Road in Wolfeboro to assist in apprehension of the suspect. Further information provided to me was that the suspect was Josephine Amatucci, and that it was not a high speed pursuit rather she was not stopping her vehicle for the Wolfeboro cruisers. The initial request from Wolfeboro was to attempt to pull out in front of the suspect vehicle and slow to a stop in front of her, which I declined. I advised their dispatch that I could attempt to stop the vehicle by standing in the roadway and signalling her to stop or I could use spike strips to stop the vehicle. Before I was given a further request the suspect vehicle was approaching our position and Deputy King and I stepped out into the roadway and I used hand signals to order Amatucci to the side of the road and stop. She complied with my signal to stop and immediately asked if I was with the Sheriff's Office. I said that I was with the Sheriff's Office and directed her to turn off her vehicle and step out, which she did. The moment Amatucci got out of her car she said that she had been coming to find the Sheriff because she needed help.

Amatucci was then taken into custody by Officer Shane Emerson, Wolfeboro Police and I. She was initially uncooperative when told to let go of her purse so that she could be handcuffed. After the purse was removed she was then handcuffed and secured in the rear seat of a Wolfeboro cruiser. Amatucci was yelling and demanded to speak with me, at which point I had Officer Emerson roll down the window in his cruiser. Amatucci told me repeatedly that she had done nothing wrong, that she had been coming to the Sheriff's Office because she needed protection. She was very upset and took me a few minutes of conversation to get her calm enough to explain what she was talking about. Amatucci said that she had been at the Wolfeboro Police Station talking with the Chief of Police. That he threatened her and all I had to do was get the police station video to prove it. She then went on to say that she then left the police station and went to the Town hall to ask the selectmen for help. The selectmen were not in and so she left there and was coming to the Sheriff's Office for help when she saw the police cars trying to stop her. Amatucci said that because she was being threatened she did not stop for them, and she would have continued on to the Sheriff's Office if we hadn't stopped her. Amatucci demanded that she be released as she had done nothing wrong, I told her that she had been arrested for disobeying a police officer and that likely she would be taken to jail.

She then demanded to be taken before the court for an immediate hearing, and I told her that she hadn't been given the opportunity for bail yet and would have to go through the process at the jail before she could ask for her hearing. She argued with me about this telling me that she had a right to be taken right to court for a hearing and didn't need to be taken to jail first. At this point Officer Emerson said that he was ready to take Ammontucci to jail, so I stopped speaking with her. Officer Emerson transported her to the jail, Sergeant Moore and Chief Chase, Wolfeboro Police remained on scene with her vehicle awaiting a tow truck. I cleared and returned to the Sheriff's Office.

*Sheriff's office - Timothy E. Thompson*



221'          31'

o          o          o
3          2          1

utility Poles

Center St

Silverst

Most
Landing
Parking lot

① Length of Average Car    16" +/-

$$10 \frac{miles}{Hr} \times \frac{5,280'}{1 \, mile} \times \frac{1 \, Hr}{60 \, min} \times \frac{1 \, min}{60 \, sec} = 14.7 \frac{Ft}{sec} \text{ Per Sec} \left( \text{Closing Ratio} \right)$$

Assumption: ① Cars 1+2 @ 30 mPH and Car 3 @ 40 mPH

To close gap of 149 feet = 10.1 Seconds

149'          72'

Car 3          16+40+16 = 72          Car 2     Car 1

$V_{31}$          $V_2$          $V_1$

40 mPH          30 mPH

-o-

#1 Pole

58.8 Feet Per Sec

$$\frac{221}{-72}{149}$$

EXPERT TESTIMONY – IF I WAS SLEEPING IT COULD ONLY HAVE BEEN FOR 10.1 SECONDS AS THERE WERE 2 CARS IN FRONT OF MY CAR AS VERIFIED BY OFFICER SHANE WELMAN IN HIS STATEMENT.

Wolfeboro Police Department                                    Internal Affairs (6.2)

FILED - USDC -NH
2025 JAN 17 PM 2:44

## *WOLFEBORO POLICE DEPARTMENT*

### INTERNAL AFFAIRS INVESTIGATION
### CLASSIFICATION NOTIFICATION

DATE: _APRIL 22, 2014_

Name of Officer/Employee: _Lt. DEAN J. RONDEAU_

Alleged Incident:

_MS. ALATUCCI ALLEGES Lt. RONDEAU "CONSPIRED" WITH
A WAKEFIELD OFFICER ON 3/21/13 TO Accuse her OF A
"BOGUS" TRAFFIC ACCIDENT."_

_ONDITIONS REQUIRED VIA MEMO ON 4/17/14 From OFFICE OF TOWN
MANAGER_

An internal affairs investigation has been completed in regard to the allegations listed
above. Based on a thorough review of all evidence presented relative to this matter, the
investigation has been classified as:

| | |
|---|---|
| Unfounded | ✓ |
| Proper Conduct | ✓ |
| Improper Conduct | ___ |
| Policy or Procedure Failure | ___ |
| Insufficient Evidence | ___ |

_[signature]_

Stuart M. Chase
Chief of Police

# WOLFEBORO

FROM PAGE A14

on was not valid.

Chair Linda Murray stated that since Wolfeboro has a police commission, a decision reaffirmed by voters in 2005, any complaints about police misconduct must be directed to the commission.

Amatucci complained that the commission refuses to listen to her and that she was really at the selectmen's meeting to bring the issue to the attention of viewers on WCTV Channel 25.

At the first public comment Murray polled the other four members of the board to see if they wanted to hear Amatucci's complaint. They all agreed it was a police commission matter and that the Board of Selectmen has no jurisdiction.

During the meeting Amatucci attempted to interject a comment. Murray ruled her out of order and asked her to wait for the second public comment period.

At the second comment period Selectman Silk told Amatucci that she could meet with Town Manager Dave Owen between 8 a.m. and 4 p.m. any day of the week.

Amatucci said she has tried to meet with Owen, that he has not been responsive and has denied her Right to Know requests. Owen denied he has not been responsive and that he has responded to her requests as the law directs.

Amatucci claimed the police had committed a felony in arresting her without a valid warrant.

Murray closed the comment period, noting that Amatucci was pursuing her

The following evening Amatucci filed a Right-to-Know request with the Police Commission "requesting a copy of any investigative report that was made in my 2002 and 2003 arrests. Or I would like to see the reports."

Last Friday Amatucci also provided this reporter with a copy of a suit (Case No. 2012-0417) she had filed last year in the state Supreme Court against James O'Brien and the Town of Wolfeboro.

## Other business

Public Works Director Dave Ford reviewed issues with Lang Pond Road, what to do with the fire-damaged Public Works garage, and purchasing a new 10-wheel dump truck. See separate story on these topics.

Finance Director Peter Chamberlin presented his Monthly Expenditure and Revenue Report for February and year-to-date. He said there were some questions about water and sewer expense at Town Hall which he is looking into. Also, welfare expenses are high to date but Chamberlin noted that they normally are heavy during the winter.

Town Manager Dave Owen reported the town has received a franchise fee check from Metrocast for $110,773, up $20,000 over the last payment.

Owen also reported receiving notice that the town's Highway Block Grant for 2013 would be $150,078. In that connection he noted that the state is considering an increase in the gasoline tax, which is the source of funding for town highway grants.

Management Agency notified the town that the snowstorm of Feb. 8-10 was a "compensable emergency," eligible for reimbursement of overtime costs.

Owen told selectmen that Reverse 911 is ready to implement. The system can be used to notify residents of emergencies by phone and email. Selectmen agreed that Owen and Emergency Management Director Phil Morrill should be the town contacts for Reserve 911.

All sidewalk vendor locations for summer are now full. The latest will sell kielbasa, snacks, Italian ices and drinks at the corner of South Main Street and Wharf Avenue.

Back Bay Hockey sent the board a letter praising the extraordinary efforts of Parks and Recreation Department personnel Kathy Rankin and Rick LaPointe and Director Ethan Hipple to save the Pop Whalen rink and keep it open after an electrical fire on Nov. 30, 2012.

Silk announced that Tuftonboro has joined the Lakes Region Household Hazardous Product Facility and warned that the unwanted medicine takeback by police on April 27 may be the last due to procedural changes under consideration.

Wolfeboro Chamber of Commerce Executive Director Mary DeVries thanked the board for providing a selectmen's representative to the chamber board and supporting the chamber's economic development efforts.

The next meeting of the Wolfeboro Board of Selectmen will be on Wednesday, April 3, at 6:30 p.m. at the Wolfeboro Public Library

3/28/2013

FILED - USDC -NH
2025 JAN 17 PM 2:45



new feature during the week of July 29.

In addition to viewing and paying bills, residents will also have access to payment history and be able to submit work orders for utilities. Customers can also be sent email reminders of payments due.

There is no initial cost to the town for this capability, but the monthly fee is $50 plus 30 cents per bill. The cost per bill would be 26 cents less than the current paper bills, which include the cost of postage.

Customers would have to sign up for the electronic service. They can also continue to receive paper bills or switch back if they go paperless and decide they want the paper bills.

Selectmen approved unanimously proceeding with the new service.

Amatucci appeal

At both public comment periods and at one point during the meeting, resident Josephine Amatucci appealed to selectmen to investigate her complaint of police misconduct in 2003 when she was arrested. She claimed to have new evidence police knew that the warrant they were acting on was not valid.

Chair Linda Murray stated that since Wolfeboro has a police commission, a decision reaffirmed by voters in 2005, any complaints about police misconduct must be directed to the commission.

Amatucci complained that the commission refuses to listen to her and that she was really at the selectmen's meeting to bring the issue to the attention of viewers on WCTV Channel 25.

At the first public comment Murray polled the other four members of the board to see if they wanted to hear Amatucci's complaint. They all agreed it was a police commission matter and that the Board of Selectmen has no jurisdiction.

During the meeting Amatucci attempted to interject a comment. Murray ruled her out of order and asked her to wait for the second public comment period.

At the second comment period Selectman Silk told Amatucci that she could meet with Town Manager Dave Owen between 8 a.m. and 4 p.m. any day of the week.

Amatucci said she has tried to meet with Owen, that he has not been responsive and has denied her Right to Know requests. Owen denied he has not been responsive and that he has responded to her requests as the law directs.

Amatucci claimed the police had committed a felony in arresting her without a valid warrant.

Murray closed the comment period, noting that Amatucci was pursuing her claims through the courts.

The following evening Amatucci filed a Right-to-Know request with the Police Commission "requesting a copy of any investigative report that was made in my 2002 and 2003 arrests. Or I would like to see the reports."

Last Friday Amatucci also provided this reporter with a copy of a suit (Case No. 2012-0417) she had filed last year in the state Supreme Court against James O'Brien and the Town of Wolfeboro.

Other business

Public Works Director Dave Ford reviewed issues with Lang Pond Road, what to do with the fire-damaged Public Works garage, and purchasing a new 10-wheel dump truck. See separate story on these topics.

Finance Director Peter Chamberlin presented his Monthly Expenditure and Revenue Report for February and year-to-date. He said there were some questions about water and sewer expense at Town Hall which he is looking into. Also, welfare expenses are high to date but Chamberlin noted that they normally are heavy during the winter.

Town Manager Dave Owen reported the town has received a franchise fee check from Metrocast for $110,773, up $20,000 over the last payment.

Owen also reported receiving notice that the town's Highway Block Grant for 2013 would be $150,078. In that connection he noted that the state is considering an increase in the gasoline tax, which is the source of funding for town highway grants.

The Federal Emergency Management Agency notified the town that the snowstorm of Feb. 8-10 was a

Home    Contact Us    Subscribe    Archives    Classifieds    Facebook    Photo Reprints    Autos




$39^{95}$ HIGH SPEED INTERNET

For as low as · per month*

Granite State News >

# Silk new chairman of Wolfeboro Board of Selectmen

Anatucci makes new plea in her case against police

By Thomas Beeler
Editor of The Granite State News

write the author

March 28, 2013

WOLFEBORO — In their first meeting following the March 12 elections, the Wolfeboro Board of Selectmen welcomed newly elected Selectman Brad Harriman and chose Selectman Sarah Silk as board chairman for the coming year.

Outgoing Selectman Chair Linda Murray was elected vice chairman.

The board then reviewed committee assignments. While 13 or the 21 remained the same, Harriman took over the three assignments of former Selectman Chuck Storm as selectmen's representative to Friends of the Libby Museum, Planning Board and Wolfeboro Community Television. In addition Harriman will also serve with Silk on the Hazard Mitigation Committee.



WOLFEBORO SELECTMEN pose at the start of their meeting on March 20, the first meeting following the March 12 election (l-r): Selectman Dave Senecal, Sarah Silk, Linda Murray, Dave Bowers, and newly elected Selectman Brad Harriman. (Thomas Beeler photo) (click for larger version)

Selectman Dave Bowers will continue to serve as the board's representative to the Library Trustees and Economic Development Committee and as Planning Board alternate. Murray will continue as representative to the Capital Improvement Plan Committee, Master Plan Implementation Committee, the town Milfoil Committee and the Joint Milfoil Board that oversees harvest boat operations for Moultonborough, Tuftonboro and Wolfeboro. Murray will also be the Economic Development Committee alternate.

Selectman Dave Senecal will continue on the Budget Committee and Negotiations Committee and serve as liaison to the Wolfeboro Historical Society and Carroll County Transit. He will also be liaison to the Friends of Abenaki this year.

Silk will continue to represent the board to the Agricultural Commission, the Lakes Region Household Hazardous Product Facility, and Police Commission.

The board also readopted its Rules and Procedures for the coming year.

Online billing

Tax Collector Brenda LaPointe sought board approval for allowing residents to receive and view their property tax and utility bills online. Residents can already pay property tax bills online, and, according to LaPointe, more than 300 accounts have been paid via credit cards or electronic checks, yielding more than $650,000 in revenue since 2010.

Last year the Legislature passed a bill allowing electronic invoicing or "bill presentment" under RSA 76:11. This new law, coupled with a software update, will allow residents to receive and view their property tax bill and pay utility as well as property tax bills online, if selectmen approve.

LaPointe noted that the process of upgrading the software is now under way and her goal is to go live with the

---

Wolfeboro selectmen remove three warrant articles from 2015 ballot
2014-Dec-11

Wolfeboro electric users to enjoy another month at lower rates
2014-Dec-11

Brookfield 2014 property tax rate up 21.6%
2014-Dec-04

Carroll County 2014 property tax increases vary by town
2014-Dec-04

Wolfeboro selectmen remove stop signs after residents object
2014-Nov-26

Selectmen review 2015 warrant articles and focus on two of them
2014-Nov-26

More...

A-Wolf BOS Amatucci lawsuit threat (980) 062515

980 words

Amatucci threatens town with another lawsuit

FILED - USDC -NH
2025 JAN 17 PM2:45

BY THOMAS BEELER
Editor

WOLFEBORO — As has been her practice over several months, resident Josephine Amatucci asked to speak during the public comment period at the beginning of the June 17 Board of Selectmen meeting.

In past meetings she has asked for and then demanded that the selectmen undertake a criminal investigation of a series of incidents involving her at the Wolfeboro Public Safety Building and Town Hall on May 7, 2014. This time Amatucci threatened to sue the town to force it to hire an outside agency to conduct that investigation, based on her rights under the 14th Amendment, the "equal protection" amendment.

In the past selectmen have allowed her to speak, listening quietly but not responding despite her claims that Police Chief Stuart Chase, Captain Dean Rondeau, Town Manager Dave Owen and Town Planner Rob Housemen were "felons" who engaged in "criminal activities" in their treatment of her on that day in May 2014.

On Feb. 18, 2015, however, then Selectmen Chair Linda Murray read a written response to Amatucci's charges:

"In response to Ms. Amatucci's request I want to point out:

"That Ms. Amatucci has been filing lawsuits and bringing charges against the Town and its Police Department for over a decade;

"That all of her lawsuits have been dismissed as lacking any merit . . .;

"That she recently demanded that the New Hampshire Attorney General's Office prosecute members of the Wolfeboro Police Department and the Wakefield Police Department and that the Attorney General's Office reviewed the allegations and found that they did not create a reasonable suspicion of illegal conduct which warranted any further investigation;

"That the Selectmen have carefully considered all of the allegations and evidence submitted by Ms. Amatucci over the years, including the affadavit submitted by her on February 4, 2015 [concerning the events on May 7, 2014], and find no reasonable basis for concluding that Chief Chase or any other member of the Wolfeboro Police Department engaged in unlawful conduct; and

"That therefore the Selectmen decline to conduct any further investigation of Chief Chase or any other member of the Wolfeboro Police Department concenring Ms. Amatucci's allegations, and decline to ask an outside agency to do so."

### The May 7, 2014 incident

The sequence of events that took place that day is not in dispute; the disagreement is over how those events are interpreted.

Amatucci had made a Freedom of Information request of Wolfeboro Police Chief Stuart Chase for the paperwork submitted by Capt. Rondeau for a ticket he gave to Amatucci for parking and traffic violations in Wolfeboro. Chase gave her the requested document and according to a report written by him the afternoon of the incident, on May 7 at 12:30 p.m. Amatucci appeared at the Public Safety Building and "immediately demanded I change certain wording in the response I had provided. . . she would not listen to my explanation and angrily demanded to see the 'files.'" Amatucci began yelling and refused to leave despite three requests, so Chase escorted her to the door. In Amatucci's account Chase first threatened her and then pushed her out the door.

Amatucci then drove to the town offices to see Town Manager Owen to complain about her treatment at the police station. According to Town Manager Dave Owen, he was out of the office at a conference that day, but his assistant Anne Marble reported that Amatucci had come to complain about something and began yelling at Marble. Hearing the commotion, staff called the police, and Town Planner (and Acting Town Manager) Rob Houseman came over to escort Amatucci to the meeting room in the building. She tried to get past him to return to Owen's office but he blocked her. She then left the building, saying she was going to the county sheriff's office. Amatucci claims Houseman forcibly removed her, and she fled to avoid his restraint.

In the meantime police were called by town personnel to respond to the disturbance. According to Chief Chase, Officer Shane Emerson attempted to stop Amatucci as she drove away from Town Hall, but she ignored his flashing lights and drove out toward Ossipee on Center Street. At the Pork Hill Road intersection she was stopped by two Carroll County Sheriff deputies, who had to restrain her. Emerson took her to the county jail where she was booked "on speed and disobeying an officer charges," according to Chase. Amatucci has admitted she saw the officer following her but decided to continue, since stopping would prevent her from reaching her goal.

Amatucci has filed several suits in both Superior and federal court against the town to protest a 2003 arrest that was made by Officers Charles Hamilton and James O'Brien following complaints by a neighbor. As Murray noted in her statement all of those suits have been dismissed.

As a result of the May 7 incident the town wrote a "no tresspass" letter to Amatucci on May 14, 2014, barring her from the town offices. She filed a suit to remove the ban, but according to Presiding Justice Charles S. Temple, "plaintiff left courtroom prior to completion of [a pretrial conference]" on Feb. 11, 2015, and he dismissed the suit "with prejudice."

According to the latest information provided by the town, the 2014 Amatucci matter and resulting "no trespass dispute" had cost the town $24,283.27 in legal fees and expenses through May 12, 2015. Other costs relating to her arrest have amounted to $11,603.35 in legal costs and expenses through the same date, making a grand total of $35,886.62.

Not included in this total are legal costs from prior years relating to 2003 arrest, or any future legal costs if Amatucci follows through on her threat of a new suit based on the 14th Amendment.



**THE STATE OF NEW HAMPSHIRE**
*DEPARTMENT OF TRANSPORTATION*

*CAROL A. MURRAY, P.E.*
*COMMISSIONER*

FILED - USDC -NH
2025 JAN 17 PM2:46



PLAINTIFF'S
EXHIBIT

August 18, 2003

Josephine Amatucci
P.O. Box 272
Wolfeboro Falls, N.H. 03896

RE: Driveway Status
    Route 109 Wolfeboro

Dear Ms. Amatucci,

This letter is a follow up of our telephone conversations we have had in the past week. The main focus was whether or not you have a legal driveway.

You have a grand-fathered driveway for the land that you currently own and abuts Route 109. This driveway existed before the statutory authority RSA 236:13 became effective July 1, 1971. Your driveway is the access from Route 109 to your home and no one can block your driveway.

Hopefully this answers any questions you had.

Sincerely,

*Mark P. Morrill*

Mark P. Morrill, P.E.
District Engineer

cc: Wolfeboro PD
    Marty Bilafer
    Kenneth Kyle
    Stephen Gray
    William Lambert

FILED - USDC -NH
2025 JAN 17 PM2:46

June 16, 2005

This is to verify that I was present when Police Officer Keaton of the Wolfeboro
Police Department, came to Josephine Amatucci's house. I heard him tell
Mrs. Amatucci that from now on they will handle her complaints differently,
and because she has a letter from the department Of Transportation stating that
her driveway is legal and no one can block her driveway, and a letter from the
Selectmen of the Town of Wolfeboro, giving Mrs. Amatucci permission to place two "No
Parking Signs" on both sides of her driveway, the police will now be willing to help her
when she calls for help for any reason.

This occured after her arrest, and dismissal of her case.

Joe Melanson, police commissioner
Joe Melanson
Josephine Amatucci

## e Chairman of the
## ʼolice Commission

years, 2006 has been a very busy
: reaching several goals and objec-
are on going.  Every month brings

orocess early in the spring with a
r. one Dispatcher, two new Patrol
e Traffic/enforcement persons.  In
red after 26 years of service to the
was selected as the new Chief and
ɛ selected as the new Lieutenant,
Hamilton retired after 19 years of
ɛ Department suffered a great loss
g of Patrolman Ciro Sinagra.  We
ˈ November after the resignation of
ˈt was presented with a check for
GA & Milk Bone Company for the
ɘ dog.  Currently we are establish-
d have a K-9 and Handler in oper-
ˉhe selection of New Patrolmen is

. d like to thank all members of
Police Department for their dedi-
ˉunity.

s every 3ˉ Thursday, monthly. at
creciated.  We can be reached at



sion

118

# ANNUAL REPORT
# Police Department and
# Central Dispatch
# 2006

2006 was a year of transition for the Police Department.
Chief Brian Black retired after a long and distinguished
career as did Officer Charles "Chuck" Hamilton.  These vet-
eran officers served the community with pride and dignity
and we are a better place for their dedication.

The Town lost a true professional with the sudden death
of Officer Ciro Sinagra, who was fatally stricken while riding
his bicycle over the Labor Day weekend.  He was a man of
good will and generosity.  His style of "personal policing" will
long be missed.

The Police Commission made the following appointments
as a result of this reduction in personnel:  Lt. Stuart Chase
was promoted to Chief of Police; Sgt. Dean Rondeau to
Lieutenant and Senior Patrolman Scott Moore to Sergeant.
Officer Guy Maloney was appointed a patrol officer.
Attorney Tim Morgan filled a vacancy in the position of
Police Prosecutor.  At year's end, we remain under-staffed
by two at the patrol officer level and we seek to bring our
compliment back to full strength.

Personnel attended a variety of training courses through-
out the year to enhance officer safety and to assist in the
delivery of quality service to our citizens and visitors.  Our
front-line cruisers are now equipped with state of the art
electronics.  To enhance the reputation of the Department
and to promote accountability, we have entered into the self-
assessment stage of a recognition and accreditation
process.  To that end, we are restructuring our organization
based on line and staff functions.

By year's end, Wolfeboro Central Dispatch will have field-

119

*JUNE 25, 2015 GRANITE NEWS*

**WSUII**

FROM PAGE A1

he past selectmen allowed her to listening quietly ot responding de- ...er claims that Po- Chief Stuart Chase, otain Dean Rondeau, vn Manager Dave en and Town Plan- Rob Housemen were ons" who engaged in iminal activities" in ir treatment of her hat day in May 2014. On Feb. 18, 2015, how- r, then Selectmen ir Linda Murray i a written response .matucci's charges: In response to Ms. atucci's request I it to point out:

"That Ms. Amatucci has been filing lawsuits and bringing charges against the Town and its Police Department for over a decade;

"That all of her lawsuits have been dismissed as lacking any merit ...;

"That she recently demanded that the New Hampshire Attorney General's Office prosecute members of the Wolfeboro Police Department and the Wakefield Police Department and that the Attorney General's Office reviewed the allegations and found that they did not create a reasonable suspicion of illegal conduct which warranted any further investigation;

"That the Selectmen have carefully considered all of the allegations and evidence submitted by Ms. Amatucci over the years, including the affadavit submitted by her on February 4, 2015 [concerning the events on May 7, 2014], and find no reasonable basis for concluding that Chief Chase or any other member of the Wolfeboro Police Department engaged in unlawful conduct; and

"That therefore the Selectmen decline to conduct any further investigation of Chief Chase or any other member of the Wolfe-

boro Police Department concerning Ms. Amatucci's allegations, and decline to ask an outside agency to do so."

**The May 7, 2014 incident**

The sequence of events that took place that day is not in dispute; the disagreement is over how those events are interpreted.

Amatucci had made a Freedom of Information request of Wolfeboro Police Chief Stuart Chase for the paperwork submitted by Capt. Rondeau for a ticket he gave to Amatucci for parking and traffic violations in Wolfeboro. Chase gave her the requested document and according to a report written by him the afternoon of the incident, on May 7 at 12:30 p.m. Amatucci appeared at the Public Safety Building and "immediately demanded[] change certain wording in the response I had provided. . . she would not listen to my explanation and angrily demanded to see the 'files.'" Amatucci began yelling and refused to leave despite three requests, so Chase escorted her to the door. In Amatucci's account Chase first threatened her and then pushed her out the door,

the office at a conference that day, but his assistant Anne Marble reported that Amatucci had come to complain about something and began yelling at Marble. Hearing the commotion, staff called the police, and Town Planner (and Acting Town Manager) Rob Houseman came over to escort Amatucci to the meeting room in the building. She tried to get past him to return to Owen's office but he blocked her. She then left the building, saying she was going to the county sheriff's office. Amatucci claims Houseman forcibly removed her, and she fled to avoid his restraint.

In the meantime police were called by town personnel to respond to the disturbance. According to Chief Chase, Officer Shane Emerson attempted to stop Amatucci as she drove away from Town Hall, but she ignored his flashing lights and drove out toward Ossipee on Center Street. At the Pork Hill Road intersection she was stopped by two Carroll County Sheriff deputies, who had to restrain her. Emerson took her to the county jail where she was booked "on speed and disobeying an officer

Amatucci has filed several suits in both Superior and federal court against the town to protest a 2003 arrest that was made by Officers Charles Hamilton and James O'Brien following complaints by a neighbor. As Murray noted in her statement all of those suits have been dismissed.

As a result of the May 7 incident the town wrote a "no tresspass" letter to Amatucci on May 14, 2014, barring her from the town offices. She filed a suit to remove the ban, but according to Presiding Justice Charles S. Temple, "plaintiff left courtroom prior to completion of [a pretrial conference]" on Feb. 11, 2015, and he dismissed the suit "with prejudice."

According to the latest information provided by the town, the 2014 Amatucci matter and resulting "no trespass dispute" had cost the town $24,263.27 in legal fees and expenses through May 12, 2015. Other costs relating to her arrest have amounted to $11,003.35 in legal costs and expenses through the same date, making a grand total of $35,266.62.

Not included in this

---

**RE**

FROM PAGE A14

h fire that contin- for a week, burning cres. Numerous re- ces were required uell the blaze, in- ing Black Hawk opters. Two of the opters alone cost 00.

ompson noted the state will bear that cost, but the itude of the event ht him to question Tuftonboro would r a fire such as requiring multi-

While the truck was out of service, the issue with the broken baffles in the 2500 gallon water tank on Engine 4 was repaired at Lakes Region Fire Apparatus. Labor for tank removal and reinstallation came to $3,191. Thompson said two workers flew in from Indiana from APR Fabric Fabricating, Inc. and worked for two days. All was covered under the tank's life time warranty.

A corroded piece of aluminum diamond plate was replaced with

brought to his attention that there is review process to see if the town meets the criteria for a lower NH Cooperative member service charge. It currently pays $498.

On a lighter note, the Tuftonboro Police Department and the Fire Department participated in Bike Safety Day at Tuftonboro Central School on May 21. All the students' bikes were checked and minor repairs and adjustments were made to assure proper tire inflation, brakes, and tight seats.

Crescent Lake Avenue was deteriorating. To keep it together until the upgrade was ready, he decided to pave the road. His concern in writing the memo and recommending the stop signs was that the smoother road would encourage speeding. He also hoped the need to stop would discourage people from using the shortcut. He said Mildred Beach and Susan MacMartin, who lived on Crescent Lake Avenue, had complained about speeding.

As for the cost of the signs, Ford said they cost $75 each for three stop signs and two stop ahead signs: $375 total.

Selectman Dave Bowers says he has traveled the route and noted that you can't see the sign on Pine Street – it's too far in. Selectmen Chair Linda Murray agreed the signs are too far apart.

Ford said he could look into a fixed sign or trailer that would flash a driver's speed.

Selectman Brad Har-

Josephine Amatucci again addressed the board concerning incidents on May 7 that led to her being arrested. She asserted that since the police union contract is with the town, selectmen have authority over the police, and that just because she has filed a civil suit against the town on the matter, that does not stop selectmen from conducting a criminal investigation of Town Planner Rob Houseman (whom she has accused of false imprisonment when he escorted her out of the town offices) and the police department.

Murray said that because of the suit the board has been advised by town counsel not to discuss the matter.

Amatucci became angry and stated that she will not drop the matter "until my name is cleared."

Suzanne Ryan said she has been following the reports on progress on the Town Hall reno-

as well as the architects, contractor and clerk of

sale of two small parcels of town land adjacent to

hearings on the





**Avery's**

Wednesday: Wing night!!!

Thursdays: $5.99 Burger Night!

Sundays: Burger & Wing Night!!!

• Closed Mondays
• Open Tuesday through Saturday 4- close
• Sundays - Open at noon

Visit our website at: www.cjaverys.com
• or visit *us* at •
10 Railroad Ave., Laconia, NH
(603) 524-0823

**LOCAL EXPERIENCED SOCIAL SECURITY ATTORNEY**

Have you been denied Social Security Disability? Attorney Stanley Robinson has successfully handled disability cases for over 30 years.

603-286-2019 • shrlawoffice@gmail.com



**TUFTED BLACK LEATHER LIVING ROOM**
Rich Brown Leather

SAVE $500 on Sofa NOW $1099

SAVE $400 on Matching Love Seat NOW $999

**RECLINING SOFA**
One of The Most Popular Reclining Sofas of All Time!

save $400 NOW $899

Choice of 3 Colors. While They Last!



**Harris Family**
FURNITURE & MATTRESSE

Tuesday, incumbent Sheriff Domenic Richardi of Conway with 74 percent of the votes cast at press time easily defeated challenger Luke Freudenberg of Wolfeboro for the Republican nomination. Since there is no Democratic candidate for sheriff, Richardi is assured of re-election to a third term in the Nov. 8 general election.

In the race for the District 1 seat on the Executive Council incumbent Joe Kenney of Wakefield

# Amatucci files article mandat
# investigation of public offici
## 17 of her 29 claims against town dism

BY THOMAS BEELER
Editor

WOLFEBORO — On Friday, Sept. 2, Wolfeboro resident Josephine Amatucci filed a petition

warrant article signed by the required 25 voters with Wolfeboro Town Clerk Pat Waterman.

Under state law the article cannot be amend-

ed and will appear on the March 14, 2017, ballot as submitted.

The title of the petition article is "Community Crime Control" and

it reads as follows:

"To see if the Town will vote to establish a Policy, Ordinance or a

Charter, t
vide for a
nity. By
SEE AMA



# Transfer station costs running higher in Tuftonboro

BY ELISSA PAQUETTE
Contributing Writer

TUFTONBORO — Tuftonboro Transfer Station Manager Clay Gallagher shared his concern about the persistent trend toward increasing construction

and demolition (C/D) debris disposal costs with selectmen during the Primary Election day meeting of Sept. 13. He

said his budget lines for disposing municipal solid waste, C/D and plastic are all up and the three combined could amount

to a nearly $25,000 over budget.

He said he will take money from other un-
SEE COSTS PAGE A13

## Inside

Volume 157 • Number 37
36 Pages in 3 Sections

Tuftonboro News ....A1, A9
Wakefield News ....A7, A14
Wolfeboro News .....A1-A7,
.................................. A16
Arts & Entertainment .........
........................B9-B11, B13

# Granting building permits on
# Class VI roads again an issue

BY THOMAS BEELER
Editor

WOLFEBORO — At its Sept. 7 meeting Wolfeboro selectmen for a second time voted in favor of granting a building permit on a Class VI road.

This time, however, the circumstances were different and the board's criteria for granting a permit were reviewed in detail before a vote was taken.

The first permit grant-

ed by the board, for a new house on Stoneham Road, is being challenged by Suzanne Ryan and a number of North Wolfeboro residents as being improperly granted be-
SEE PERMITS PAGE A12

## A fond farewell for Ro
## Houseman

More than 75 friends and colleagues came
reception for departing Town Planning Bo

files from what the police department has. She said Chair Ben Ladd told her earlier this year that the commissioners had special files in which they kept complaints and other documents.

At the meeting, Ladd said he has his own file at home, but it only contains the commissioner handbook and anything that takes place at the meetings. Commissioner Joe Melanson agreed with Ladd saying he, too, had a file at home that contains any information he decides to keep from the meetings. Commissioner Curtis Pike said he did not have a separate file.

Amatucci asked Melanson if he knew what happened to the complaint she filed against a police officer. Melanson said he gave it to former Police Chief Brian Black and, as far as he knew, the chief wrote Amatucci a letter back.

Amatucci asked why her complaint was not put into the officer's personnel file, and Police Chief Stu Chase said complaints do not go into personnel files. Rather, they go into the internal affairs file.

"Your complaint is very well documented and in existence," said Chase.

He went on to inform Amatucci that complaints are in Lt. Dean Rondeau's office in the personnel records, not the personnel files; however, they are in the same room.

Chase said that he hand delivered the entire complaint and the officer's thick personnel file to the attorney in Concord who deals with all complaints. Amatucci said that the attorney told her there was only one item in the personnel file and asked how the file could be thick if there were only one item.

"I can't speak for counsel," said Chase.

Amatucci asked a few



Log in or Sign up

Search...

2 6

Forums     Members     Help     What's New?

**Search Forums     Recent Posts**



3-12x50 Klassik
VISUALLY STRIKING AND ROBUST RIFLESCOPE FOR
THE PURIST SEEKING THE UTMOST IN QUALITY



love
has
no
labels

Forums     Politics & News     Police News Articles     **Hot Topics**

## Assault alleged against former police chief

Discussion in 'Hot Topics' started by stm4710, Feb 4, 2005.

Thread Status: **Not open for further replies.**



**stm4710**
Subscribing Member

Assault alleged against former police chief
By Cathryn Keefe O'Hare/ cohare@cnc.com
Thursday, February 3, 2005

A Danvers woman filed charges in federal district court Tuesday alleging that former Police Chief Stuart Chase assaulted her in September 2003, when he first yelled at her, then grabbed her arm, then arrested her for trespassing, and then released her after fingerprinting and holding her in a cell for two hours.

The trespassing charge was dropped at her court appearance the next day, according to the complaint brought by Cynthia Kennedy of Rand Circle against Stuart M. Chase and the town of Danvers.

Kennedy sought treatment that evening at Beverly Hospital, according to the narrative provided in the complaint written by the plaintiff's law firm, Howard Friedman, P.C., 90 Canal St., Boston. The emergency room report is quoted as stating she had bruising under her arm and that she was "very upset, tearful and anxious."

As a result, the suit claims, she also sought help from a mental health specialist.



## Town of Wolfeboro

www.wolfeboronh.us

July 25, 2017

BOARD OF SELECTMEN
Luke Freudenberg, Chairman
Linda T. Murray, Vice Chairman
David A. Senecal
Brad Harriman
Q. David Bowers

TOWN MANAGER
David W. Owen

( 21 )

Josephine Amatucci
P.O. Box 272
Wolfeboro Falls, NH  03896

Dear Mrs. Amatucci:

This will respond to your letter dated July 24, 2017 and received that same date.  As you requested, copies of your letter were distributed to the members of the Board of Selectmen for their information.

As I attempted to explain to you in my May 11, 2017 letter to you, we do not live in West Virginia, but rather in the State of New Hampshire.  Accordingly, West Virginia state laws and West Virginia Supreme Court decisions do not apply to matters here in New Hampshire.  As I stated to you in my May 11, 2017 letter, the New Hampshire Right To Know Law, RSA 91-A, governs access to governmental records in New Hampshire.  Moreover, the New Hampshire Right To Know Law contains a specific exemption for records pertaining to internal personnel practices and confidential information.  Furthermore, the New Hampshire Supreme Court has specifically upheld this exemption in the case of the Union Leader Corp. v. Fenniman, as cited to you in my previous letter on this topic.  Therefore, your request for information from the personnel files of former Chief Chase, current Chief Rondeau, and former Police Officer O'Brien is again denied for the same reasons as the last time you made the same request.

I trust that this will be the last time that I need to answer this question for you.

*INTERNAL AFFAIRS Files CANNOT BECOME PUBLIC*

Sincerely,

David W. Owen
Town Manager

CC:  Board of Selectmen

WOLFEBORO
the Oldest
Summer Resort
in America
INCORPORATED 1770

1) (21)



*Town of Wolfeboro*
www.wolfeboronh.us

May 11, 2017

BOARD OF SELECTMEN
Luke Freudenberg, Chairman
Linda T. Murray, Vice Chairman
David A. Senecal
Brad Harriman
Q. David Bowers

TOWN MANAGER
David W. Owen

Josephine Amatucci
P.O. Box 272
Wolfeboro Falls, NH  03896

Subject:  Internal Investigations Information

Dear Mrs. Amatucci:

On behalf of the Wolfeboro Board of Selectmen, I am responding to your undated letter, which was received Monday (May 8, 2017), in which you requested information "of the internal investigations of the former Chief Stuart Chase, Rob Houseman and James O'Brien and Rondeau." Attached to your letter was a 2014 article about a West Virginia Supreme Court decision which concluded that police internal affairs documents are not confidential.

Please be advised that in New Hampshire, New Hampshire State law and State Courts prevail, not West Virginia law and courts.  In particular, the New Hampshire Right-to-Know Law, RSA 91-A, governs access to governmental records in New Hampshire. Moreover, the New Hampshire Right-to-Know Law contains a specific exemption for records pertaining to internal personnel practices and confidential information.  [RSA 91-A, IV: Union Leader Corporation v. Fenniman, 136 N.H. 624 (1993)]  Therefore, to the extent that there are any such internal investigation materials concerning the named Town employees, your request is denied on the basis of the exemption from disclosure for such materials as provided for in RSA 91-A.

Sincerely,

David W. Owen
Town Manager

CC:  Board of Selectmen
      Police Chief
      Town Counsel



Dom: They give them the option at time of retiring instead
of TERMINATING them OFFICIALLY
so they don't lose their Pension

23

# Wolfeboro Police Chief Stuart Chase to retire in January

7/7/2016

BY ELISSA PAQUETTE
Contributing Writer

WOLFEBORO — From here on out, Chief Stuart Chase's work in Wolfeboro will take on a tinge of nostalgia, for he's served notice to the Wolfeboro Police Commissioners that he intends to retire as of Jan. 2, 2017.

Chase led the July 4th parade for the last time on Monday. The day was uneventful as far as police activity was concerned, a welcome sign of community stability. That's always been his goal. Good police work entails good relationships. "I judge success," says Chase "not on tickets or arrests but the partnerships we've created and the confidence and trust we've gained from most of the citizens."

It's Chase's second retirement. His first career was in Danvers, Mass., but he confides that Wolfeboro is where he's wanted to be since the age of 12. His family first started visiting Wolfeboro in 1955. Those summer time memories and the connection to the lake instilled that desire to make this his permanent home.

"The background in Massachusetts was just the foundation to come here. I felt that this was truly my home and where I was meant to be... I thought I would do this forever but just consider myself blessed to be able to come here 12 years ago.

"The department is almost like family to me here. It's a smaller department. The role of chief has been more democratic than in [his past experience]. It was a perfect fit for the time."

Police Commission Chair Steve Wood commented: "I can say with a great deal of certainty on behalf of our fellow commissioners that we are sad to lose a great leader. He's been a tremendous asset. He's dedicated his life to the field of law en-

forcement – now he ca move on to spend mor time with family." H praised the chief's effi ciency, the trust he's fo tered and his fair trea ment of others.

"Personally, when was asked to conside serving on the commi sion in 2013, he was th primary reason I ran. had heard great thing about him and was an ious to meet him. Th culture created withi this department is ama ing and it has a good r lationship with outsic agencies."

In Chase's view, th

SEE CHASE PAGE A



ELISSA PAQUETTE

**WOLFEBORO POLICE CHIEF STUART CHASE** has announced that he will be retiring from the department as of Jan. 2, 2017.



JOSHUA SPAULDIN

## Final swings

Reese Clarke connects with a pitch during Kingswood Cal Ripken 12U action in the distri tournament. See the sports section for more on the final days of the tournament.

# SUIT

FROM PAGE A1

past selectmen lowed her to stening quietly responding de-claims that Po-ef Stuart Chase, Dean Rondeau, Manager Dave nd Town Plan-Housemen were who engaged in al activities" in eatment of her lay in May 2014. eb. 18, 2015, how-hen Selectmen Linda Murray vritten response ucci's charges: esponse to Ms. ci's request I point out:

"That Ms. Amatucci has been filing lawsuits and bringing charges against the Town and its Police Department for over a decade;

"That all of her lawsuits have been dismissed as lacking any merit . . .;

"That she recently demanded that the New Hampshire Attorney General's Office prosecute members of the Wolfeboro Police Department and the Wakefield Police Department and that the Attorney General's Office reviewed the allegations and found that they did not create a reasonable suspicion of illegal conduct which warranted

any further investigation;

"That the Selectmen have carefully considered all of the allegations and evidence submitted by Ms. Amatucci over the years, including the affadavit submitted by her on February 4, 2015 [concerning the events on May 7, 2014], and find no reasonable basis for concluding that Chief Chase or any other member of the Wolfeboro Police Department engaged in unlawful conduct; and

"That therefore the Selectmen decline to conduct any further investigation of Chief Chase or any other member of the Wolfe-

boro Police Department concenring Ms. Amatucci's allegations, and decline to ask an outside agency to do so."

### The May 7, 2014 incident

The sequence of events that took place that day is not in dispute; the disagreement is over how those events are interpreted.

Amatucci had made a Freedom of Information request of Wolfeboro Police Chief Stuart Chase for the paperwork submitted by Capt. Rondeau for a ticket he gave to Amatucci for parking and traffic violations in Wolfeboro. Chase gave her her requested document and according to a report written by him the afternoon of the incident, on May 7 at 12:30 p.m. Amatucci appeared at the Public Safety Building and "immediately demanded I change certain wording in the response I had provided. . . she would not listen to my explanation

the office at a conference that day, but his assistant Anne Marble reported that Amatucci had come to complain about something and began yelling at Marble. Hearing the commotion, staff called the police, and Town Planner (and Acting Town Manager) Rob Houseman came over to escort Amatucci to the meeting room in the building. She tried to get past him to return to Owen's office but he blocked her. She then left the building, saying she was going to the county sheriff's office. Amatucci claims Houseman forcibly removed her, and she fled to avoid his restraint.

In the meantime police were called by town personnel to respond to the disturbance. According to Chief Chase, Officer Shane Emerson attempted to stop Amatucci as she drove away from Town Hall, but she ignored his flashing lights and drove out toward Ossipee on Cen-

Amatucci has filed several suits in both Superior and federal court against the town to protest a 2003 arrest that was made by Officers Charles Hamilton and James O'Brien following complaints by a neighbor. As Murray noted in her statement all of those suits have been dismissed.

As a result of the May 7 incident the town wrote a "no tresspass" letter to Amatucci on May 14, 2014, barring her from the town offices. She filed a suit to remove the ban, but according to Presiding Justice Charles S. Temple, "plaintiff left courtroom prior to completion of [a pretrial conference]" on Feb. 11, 2015, and he dismissed the suit "with prejudice."

According to the latest information provided by the town, the 2014 Amatucci matter and resulting "no trespass dispute" had cost the town $24,283.27 in legal fees and expenses through

FROM PAGE A14

ire that contin-a week, burning es. Numerous re-were required l the blaze, in-Black Hawk ters. Two of the

While the truck was out of service, the issue with the broken baffles in the 2500 gallon water tank on Engine 4 was repaired at Lakes Region Fire Apparatus. Labor for tank removal and reinstallation came to $3,191. Thompson said

brought to his attention that there is review process to see if the town meets the criteria for a lower NH Cooperative member service charge. It currently pays $498.

On a lighter note, the Tuftonboro Police Department and the Fire

HUNTER'S shop 'n save SUPERMARKETS

10/10

64

THE STATE OF NEW HAMPSHIRE

COUNTY OF CARROLL          3RD CIRCUIT-DISTRICT DIVISION-OSSIPEE

State of New Hampshire v. Josephine Amatucci

Docket No.:464-2014-CR-00836

MOTION REQUESTING THE JUDGE TO CORRECT A MISTAKE

CORRECTING LOCKER #1 TO LOCKER #2

1.      In her Order of October 10, 2014 Judge Albee made a mistake when she requested that the Wolfeboro Police Department shall produce one of the three discs created for preservation ..............."which was placed in Evidence Storage LOCKER # 1"

2.      This should read......... "which was placed in Evidence Storage LOCKER #2."  As Chief Chase's  Report mentions that the disc is in LOCKER #1.

3.      This correction must be sent immediately as the disc must be produced by October 24, 2014 at 10:30.

 Respectfully,

Josephine Amatucci

P.O. Box 272

Wolfeboro Falls, NH 03896

c:  Wolfeboro Police Department

1

**Wolfeboro Police Department**                    Page: 2

NARRATIVE FOR CHIEF STUART M CHASE

Ref: **14-84-AR**

Ms. Amatucci was informed there would be no discussion about habitual offenders on the advise of counsel. This only served to further enrage her.

Chief Chase, in a final effort to be heard, loudly told Ms. Amatucci to leave the building or be arrested. With his left hand, he opened the front (left) door to the Pubic Safety building. Ms. Amatucci loudly proclaimed she, "was going to the Selectmen," walked out and drove off.

Several minutes later, Chief Chase, who was now in his office, was informed that staff at Town Hall had called Central Dispatch requesting an officer as Ms. Amatucci was there, creating a disturbance.

Chief Chase and Sgt. Moore responded from the Public Safety Builiding as the nearest patrol unit was out of position. While en route, Officer Shane Emerson, via police radio, broadcast that he had located Ms. Amatucci driving on Center Street at speeds greater than posted in the Wolfeboro Falls area.

Ms. Amatucci failed to stop her vehicle as directed by Officer Emerson and continued along Center Street toward North Wolfeboro. This, in spite of the fact that Officer Emerson's blue lights and siren were activated.

Under the direction of Sgt. Moore, the Carroll County Sheriff's Department was positioned on Center Street at the intersection of North Wolfeboro Road and Pork Hill. Sgt. Thompson of the Sheriff's Department, was able to stop the Amatucci vehicle and get it to the side of the road. Ms. Amatucci was taken into custody by Officer Emerson and transported to the county jail for processing.

Her vehicle was inventoried and subsequently towed by Crowell's of Ossipee.

On May 14, 2014, Todd Shannon of Knight Security responded to Central Dispatch by request, to preserve the video footage of the meet with Ms. Amatucci, Lt. Rondeau and Chief Chase on May 7, 2014. Neither Central Dispatch or the Police Department has the required software or equipment to complete this.

On May 20, 2014, Dispatcher Ken Paul hand carried a flash-drive containing the video to my office. The flash drive had been in the possesion of Central Dispatch Supervisor Lyons up to that date.

May 21, 2014: Chief Chase gave the flash drive to Supervisor Lyons who created three discs for preservation; returning the original drive and three discs to Chief Chase at approximately 12:45PM on May 21st.

The drive and one disc was secured per Department evidence/property procedure and place in Evidence Storage Locker #2.


Respectfully submitted,

Stuart M. Chase
Chief of Police

*10-10-14*

# The State of New Hampshire

### COUNTY OF CARROLL        3RD CIRCUIT–DISTRICT DIVISION–OSSIPEE

State of New Hampshire v. Josephine Amatucci
Docket No: 464-2014-CR-00836

### ORDER REGARDING FURTHER PRODUCTION OF EVIDENCE

Defendant, Josephine Amatucci, has produced a copy of a report written by Chief Chase in which he describes the steps taken on May 14, May 20, and May 21, 2014 "to preserve the video footage of the meet [sic] with Ms. Amatucci, Lt. Rondeau and Chief Chase on May 7, 2014." The court orders that the Wolfeboro Police Department shall produce for Ms. Amatucci's viewing at the court the one of the three discs created for preservation which was placed in Evidence Storage Locker #1. A copy of that disc shall also be produced for the court's record.

This disc shall be produced on October 24, 2014 at 10:30 a.m. in order that the undersigned may be present to view the disc at the same time.

October 10, 2014

PAMELA D. ALBEE, JUSTICE

*Municipal Resources - Meredith*

Thursday, February 6, 2014 • NEW HAMPSHIRE UNION LEADER • Page A3

# E. Kingston police chief quits as result of AG's investigation

**By JASON SCHREIBER**
Union Leader Correspondent

EAST KINGSTON — Police Chief Reid Simpson has resigned following a state investigation into concerns raised after an inmate left alone for hours broke into an evidence room at the police station.

The state Attorney General's Office announced Wednesday that Simpson had agreed to resign, effective immediately, but would not face criminal charges.

"After thoroughly investigating the inmate trustee issues and overall management of the police department, it has been determined that, while there was substantial mismanagement, lack of proper oversight and improper conduct on behalf of Chief Simpson, his conduct and his actions do not rise to the level of provable criminal conduct. Thus, criminal charges will not be initiated," the Attorney General's Office said in a statement.

Simpson agreed to step down and permanently relinquished his certification as a police officer. He also will not seek future employment as an officer.

The announcement came less than a week after East Kingston Selectman Mark Cook told the New Hampshire Union Leader the board was frustrated with the attorney general's handling of the case, the time it was taking to complete the investigation, and the lack of answers. The investigation was launched in July after the break-in last May.

The findings of the state's investigation into the incident and other possible mismanagement problems uncovered during the probe were not released.

Rockingham County jail inmate Jarred Brisbois was charged with breaking into the evidence room and stealing heroin that he later brought back to the jail.

The Rockingham County Attorney's Office claimed Brisbois had been left alone for several hours while performing maintenance work as a trusted inmate through the jail's trusty program.

Neither Simpson nor Cpl. Mark Iannuccillo were working on the day of the break-in, but they were placed on paid administrative leave last August. Iannuccillo resigned in September; Simpson remained on paid leave until Jan. 1 when the town stopped paying him.

Selectmen declined to release the report on its own internal investigation conducted by Municipal Resources Inc., but said changes were made after the police department's policies and procedures were examined.

"That incident (involving the inmate) certainly prompted a closer look at the department as a whole and I will say, regardless of that incident, Chief Simpson has done a great job in his position as chief for the town. He was well-respected by the residents and it is definitely a sad day and an unfortunate loss. The town is going to have to recoup and move on," Selectman Matthew Dworman said, adding that selectmen have discussed forming a committee to begin the search for a new chief.

*jschreiber@newstote.com*



A-Wolf BOS Amatucci lawsuit threat (980) 062515

980 words

Amatucci threatens town with another lawsuit

BY THOMAS BEELER
Editor

WOLFEBORO — As has been her practice over several months, resident Josephine Amatucci asked to speak during the public comment period at the beginning of the June 17 Board of Selectmen meeting.

In past meetings she has asked for and then demanded that the selectmen undertake a criminal investigation of a series of incidents involving her at the Wolfeboro Public Safety Building and Town Hall on May 7, 2014. This time Amatucci threatened to sue the town to force it to hire an outside agency to conduct that investigation, based on her rights under the 14th Amendment, the "equal protection" amendment.

In the past selectmen have allowed her to speak, listening quietly but not responding despite her claims that Police Chief Stuart Chase, Captain Dean Rondeau, Town Manager Dave Owen and Town Planner Rob Housemen were "felons" who engaged in "criminal activities" in their treatment of her on that day in May 2014.

On Feb. 18, 2015, however, then Selectmen Chair Linda Murray read a written response to Amatucci's charges:

"In response to Ms. Amatucci's request I want to point out:

"That Ms. Amatucci has been filing lawsuits and bringing charges against the Town and its Police Department for over a decade;

"That all of her lawsuits have been dismissed as lacking any merit . . .;

"That she recently demanded that the New Hampshire Attorney General's Office prosecute members of the Wolfeboro Police Department and the Wakefield Police Department and that the Attorney General's Office reviewed the allegations and found that they did not create a reasonable suspicion of illegal conduct which warranted any further investigation;

"That the Selectmen have carefully considered all of the allegations and evidence submitted by Ms. Amatucci over the years, including the affidavit submitted by her on February 4, 2015 [concerning the events on May 7, 2014], and find no reasonable basis for concluding that Chief Chase or any other member of the Wolfeboro Police Department engaged in unlawful conduct; and

"That therefore the Selectmen decline to conduct any further investigation of Chief Chase or any other member of the Wolfeboro Police Department concenring Ms. Amatucci's allegations, and decline to ask an outside agency to do so."

### The May 7, 2014 incident

The sequence of events that took place that day is not in dispute; the disagreement is over how those events are interpreted.

Amatucci had made a Freedom of Information request of Wolfeboro Police Chief Stuart Chase for the paperwork submitted by Capt. Rondeau for a ticket he gave to Amatucci for parking and traffic violations in Wolfeboro. Chase gave her the requested document and according to a report written by him the afternoon of the incident, on May 7 at 12:30 p.m. Amatucci appeared at the Public Safety Building and "immediately demanded I change certain wording in the response I had provided. . . she would not listen to my explanation and angrily demanded to see the 'files.'" Amatucci began yelling and refused to leave despite three requests, so Chase escorted her to the door. In Amatucci's account Chase first threatened her and then pushed her out the door.

corrupt."

The third reason is that Amatucci has at least four different lawsuits pending against the town, two in state courts and two in federal courts. "It would be highly unusual, if not irregular, to provide a litigant against the Town agenda time to pursue the same matters against the Town at a Selectmen's meeting."

The final reason given by Owen was that "you have already been provided ample opportunity to air your grievances to the Selectmen and public during the Public input portion of the Board of Selectmen's meeting agenda, where you are a frequent speaker."

**Police Commission**

As she promised, Amatucci appeared at the meeting of the Wolfeboro Police Commission the following afternoon to speak during that board's public comment period, as she has several times previously.

When Commissioner Ron Goodgame said there was no time for public input at that meeting, Amatucci let loose a stream of invective at the commissioners. As she left the meeting room, Commissioner Joe Balboni wished her a good afternoon. That comment provoked parting insults from Amatucci, concluding with "You shut up, you freak of nature!"

The town has filed a plea in Carroll County Superior Court asking that court determine that Amatucci is a "vexatious litigant," which is defined under RSA 507:15-a as "an individual who has been found by a judge to have filed 3 or more frivolous lawsuits which the judge finds, by clear and convincing evidence, were initiated for the primary purpose of harassment." If the court finds that Amatucci meets this definition, it may require a vexatious litigant to: "(a) Retain an attorney or other person of good character to represent him or her in all actions; or (b) Post a cash or surety bond sufficient to cover all attorney fees and anticipated damages."

According to the last report received, legal expenses incurred by the town for the May 7, 2014 Amatucci incident through May 12, 2015 amounted to $35,886.62. That total does not include the "vexatious litigant" case filing.

CUTLINE:
AJosephineAmatucciatPoliceCommission.jpg:

**ELISSA PAQUETTE**

JOSEPHINE AMATUCCI addresses the Wolfeboro Police Commission at their Aug. 20 meeting.



relevant information, the party's resources, the importance of the discovery in resolving the issues, and whether the burden or the expense of the proposed discovery outweighs its likely benefit."

4. In determining whether or not personnel records, especially those of police officers, should be disclosed, this Court has used a balancing process. *See, Hoyt v. Connare, 202 F.R.D. 71 (D.N.H. 1996). See also, Greater Newport Clamshell Alliance, 838 F.2d 13 (1st Cir. 1988).*

5. Plaintiff's request for the personnel records and internal investigation files of Stuart Chase, Shane Emerson and James O'Brien is over-broad, and would necessarily include information that is both not relevant nor calculated to lead to relevant evidence. The records also contain confidential materials as well.

6. In an effort to determine whether or not there would be any potential discoverable material in the records requested by Plaintiff, counsel for the Defendants had the personnel records of each of the individuals named in Plaintiff's motion reviewed:

   a. Chief Stuart Chase: A review of the police department records involving former Chief Stuart Chase revealed that no internal investigation was ever conducted by the Wolfeboro Police Department or any other law enforcement agency against former Chief Chase. Accordingly, there are no records to produce. Additionally, a review of the personnel file of former Chief Chase did not reveal that there were any records pertaining to the Plaintiff nor was there any disciplinary action taken against former Chief Chase for any infraction whatsoever. There are no records contained in the file regarding any issues involving possible malicious prosecution asserted against Chief Chase. Accordingly, as there are no records relevant to the matters at issue in this case, pursuant to the Federal Rules of Civil Procedure, Defendants object to the production of the personnel file of former Chief Chase.

   b. Officer Shane Emerson: Similarly, there was no internal investigation conducted against Officer Shane Emerson by the Wolfeboro Police Department or any other law enforcement agency. Accordingly, there are

2 F

THE GRANITE STATE NEWS, Thursday, March 2, 2017   A5

# Police commission votes against Community Crime Control article

ISSA PAQUETTE
uting Writer

/OLFEBORO — The feboro Police Comsion voted at its ting on Feb. 16 to ially recommend a ' vote on petition Ar-28, titled "Commu-Crime Control." he article, brought forward by petition, was read by Josephine Amatucci at the Deliberative Session.

It attempts to mandate investigations of public officials "for their criminal and civil rights violations filed by the public" by means of a "policy, ordinance or a charter." Amatucci has engaged in disputes with members of the police department since 2002 and in recent years, has added suits against a number of town officials to a list that has grown to at least 27 cases, involving 12 judges over that time.

Amatucci is currently appealing a ruling that names her as a "vexatious litigant" and requires her to acquire counsel for any further suits.

Article 28 includes "a policy that would remove any and all discretion by the town officials whether to investigate or not to investigate...and an investigation by an outside unbiased agency that would have the ability to recommend termination."

Town Counsel Mark Puffer stated at the town Deliberative Session that if passed, it would be advisory only, for state statues grant authority to investigate alleged wrongdoing by public officials to specific public bodies.

In the discussion at the commission meeting, Chairman Steve Wood commented that it is illegal and improper to usurp the commission's authority, Chief Dean Rondeau said, in his view, the intent of the article is unclear, and in his opinion, an investigation by an ouside agency would be duplicative, for already the Attorney General investigates as well as the State Police and the Sheriff's Office.

For Amatucci's comments on this warrant article, please see her letter on page A10.

## New Sugar Detox Program starting in March



14




.com

Subi

3 0

Arrest Warrant Records

Tue, Feb 03 | **Today's Deal**

» Contests » UL Job Network
» Auctions » Movie Times

| Entertainment | Events | Food | Lifestyle | News | Outdoors | People | Travel | NH Business | Contests |

Welcome guest, you have 3 views left. | Register | Sign In

SUPPORT YOUR NEIGHBORS. BUY LOCAL.

GOSHOPNH.COM
Buy Local

## Home » NH Angle

October 23, 2014 1:02PM

## Woman demands Wolfeboro selectmen investigate allegation she was assaulted by by town planner

Source: http://goo.gl/mC0h6l

Josephine Amatucci submitted a copy of a letter to the board demanding an investigation of an incident at Town Hall on May 7 where she claimed that Town Planner Rob Houseman assaulted her and was guilty of "false imprisonment."

CLICK TO VIEW THE SOURCE MATERIAL.


LOOKING FOR GREAT FOOD?
Check out the FULL menus from many area restaurants.
CLICK NOW!

## Comments

To improve the chance of seeing your comment posted here or published in the New Hampshire Union Leader:

- Identify yourself. Accounts using fake or incomplete names are suspended regardless of the quality of posts.
- Say something new, stay on topic, keep it short.
- Links to outside URLs are discouraged, if used they should be on topic.
- Avoid comments in bad taste, write well, avoid using all capital letters
- Don't cite facts about individuals or businesses without providing a means to verify the claim
- If you see an objectionable comment please click the "Report Abuse" button and be sure to tell us why.

**Note:** Comments are the opinion of the respective poster and not of the publisher.

Be the first to comment.

You must sign in before you can post comments. If you are experiencing issues with your account please e-mail abuse@unionleader.com.


Injured?
You May be Entitled to a
Cash Settlement
Free Case Review

LATEST NEW HAMPSHIRE ANGLE

An aggregation of NH information by the staff and audience of the New Hampshire Union Leader, The Goffstown News, The Bedford Bulletin, The Hooksett Banner and The Salem Observer. Share a news link or start a discussion.

**Courts/Oversight**



**General News**

New Hampshire Events Calendar
search [            ] All categories ▾

> SHARE EVENTS FOR PUBLICATION, IT'S FREE!

A&E    Family    Outdoors    More

**Arts and Entertainment**

Mainstage Auditions for Peacock Players' upcoming production of The Wizard of Oz

Voice: If Music be the Food of Love

Thursday Night Live

One-Act Play Festival

Anthony D'Amato and Michaela Anne

Use it, Hear it, Wear it, Read it - Art in 3D show

Symphony NH Fanfare '15 Gala

The Mystery of the Suspicious Superhero dinner show

Nana's Naughty Knickers Dinner Theatre

Guys and Dolls

**SUBMIT AN EVENT**





Ms. Josephine Amatucci
PO Box 272
Wolfeboro Fls., NH 03896-0272

 **UNITED STATES POSTAL SERVICE.**    *Retail*

**G**    US POSTAGE PAID
**$6.10**    Origin: 03896
01/15/25
3299300896-13

## USPS GROUND ADVANTAGE®

0 Lb 8.00 Oz
**RDC 01**

C011

SHIP TO:    55 PLEASANT ST
CONCORD NH 03301-3954



**USPS TRACKING® #**



9500 1153 7887 5015 5614 98

United States District Court
District of New Hampshire
Office of The Clerk
55 Pleasant Street
Room 110
Concord, New Hampshire 03301