

FILED - USDC -NH
2025 MAR 12 PM2:24
9238

# THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci

v.

Town of Wolfeboro, officially,

Selectmen, Murray, Town Manager, individually

Town Planner Rob Houseman                          Case: 24-fp-284  Sm-TSM

### DELIBERATE INDIFFERENCE

1.       This Court, this Magistrate, will Trespassor the law of the land, if they

ignore/ deny, the Plaintiff's rights allowed under the FEDERAL CONSTITUION, that

if the Court denies the Plaintiff's FEDERAL CONSTITUIONAL CLAIM OF DELIBERATE

INDIFFERENCE against the Town, by deliberately ignoring, not ruling on her Federal

Constitutional claims of DELIBERATE INDIFFERENCE by the defendants, they have

violated her Federal Constitutional Rights under DELIBERATE INDIFFERENCE.

2.       WITH the following Evidence before the Court, of Deliberate Indifference Acts

by the Town, when the Town hired two criminals police chiefs which is the basis for

a Deliberate Indifference claim.   A municipal liability where there is a causal connection

between the hiring of criminals for Police Chief's and the Plaintiff's federally protected

rights, of the obvious consequences of their BAD ACTS of hiring, in DELIBERATE

INDIFFERENCE in RECKLESS DISREGARD of the consequences of one's acts or omissions.

A conscience choice to disregard the consequences, of a perceived risk that Stuart Chase

1

and Dean Rondeau's actions will violated the Plaintiff's rights.

3.       Where also in a continuing conduct of Magistrate Judge's as that of Talesha Saint-Marc is acting in DELIBERATE INDIFFERENCE herself by refusing to make an opinion on the facts before her, for the simple reason to deny the Plaintiff a right to appeal her decision. In a continuing course of conduct of MISREPRESENTATION of a Plaintiff's federal constitutional claims, by Magistrate Judges.

4.       That the Magistrate can talk until the cows come home, but she cannot deny that the Town, defendants, in Deliberate Indifference, hired two criminal police chiefs in a row to be the Towns Police Chiefs,

5.       She cannot deny that the Town officials filed a lawsuit against the Plaintiff calling her a FRIVOLOUS LITIGATOR, and in doing so denied that police officer Charles Hamilton, James O'Brien, Police Chief Stuart Chase, Police Chief Dean Rondeau, the Town Manager's and Selectmen were causually connected to the hiring of criminals, in a hiring policy, or practice, that were guilty of the consequences of their bad hiring, a municipal liability as stated in the case of Pembaur, regarding the authority of the defendants, as policymaking officials of Municipal practices.

6.       That besides the bad hiring, the FORMER FORMER FORMER Town Planner Rob Houseman unlawfully incarcering me in a room in the Town Hall, when he declined to address my claims against the Police Chief Stuart Chase, in a Deliberate Indifference and in ignoring my Federal Constitutional Rights.

7.       In the continuing conduct of evidence before the Court of the Town Manager and defendants, refusing to investigate, who denied, the unlawful acts of the police in Deliberate Indifference.

8.       When they knew that the FORMER FORMER FORMER police officer Charles Hamilton falsely accused me of criminal mischief and assault in 2002, did not have a warrant for my

2

arrest, and where the case was eventually dismissed, when his fraudulent witnesses failed to appear for the trial.

9.        When they knew that the FORMER FORMER FORMER Police Officer James O'Brien falsly accused me of violating a STALKING ORDER, when the Order issued by Judge O'Neill was NOT A STALKING ORDER, but a Civil Restraining Order in Equity, where the police have no authority to arrest. And with this Deliberate Indifference, I was put in jail, I WAS UNLAWFULLY JAILED OVERNIGHT.  BESIDES the fact that although the defendants refused to give me a copy of the EMPLOYMENT RECORD of O'Brien, under the right to know, when I was able to get hold of the employment record, the record confirmed that police officer James O'Brien was NOT AN EMPLOYEE OF THE TOWN, when he came to the jailhouse where he put me, on December 29th dressed in a police uniform, and took me to an Arraignment, where he was accusing me of violating a Stalking Order, when the Order was in fact a CIVIL Restraining Order in Equity.

10.        Then theres the case of the FORMER FORMER FORMER Police Chief Stuart Chase, who maiciously prosecuted me for speeding, when speeding is NO A CRIME IN NEW HAMPSHIRE, and where I was found NOT GUILTY OF SPEEDING by the judge. Also, where Chase violated my rights under the Sixth Amendment when he held a trial long after the time alotted to have a trial, and where Chase unlawfully went inside my car while I was in jail where he put me, and stole my evidence proving that the FORMER FORMER FORMER police officer Dean Rondeau fraudulently contacted the DMV and accused me of a traffic violation that I proved I could not commit, as I was not in Wolfeboro that day and proved I was in Massachusetts from a deposit slip showing a deposit I made in a Massachusetts bank the day I was suppose according to Rondeau to be driving erratically in Wolfeboro.

11.        Then I was put on notice that I was being maliciously prosecuted for committing an Assault with Bodily Injury, by THE FORMER FORMER FORMER Police Chief Dean Rondeau I

ran to the District Attorney's office for help, to prove that i never touched the alleged victim, as I didn't know who to go to for help, where he was the police chief, and instead of assisting me the prosecutor of the district attorney's office who never came outside to accept my evidence of my innocence instead called the county sheriff's dept to have me removed from the office. And as it turns out deputy Sheriff Young attacked me with excessive force and cause me serious injury, where I ended up in the hospital.

12.        Police Chief Dean Rondeau, had me prosecuted by the Belnap Sheriff's Dept. for a crime he knew, they all knew I never committed, for the crime of .......ASSAULT WITH BODILY INJURY, where the evidence in the record provided a statement by the alleged victim, stating that he had......" NO INJURY". Also, although the alleged victim stated he had NO INJURY, he did falsely accuse me of pushing him down a few steps when I was entering the office at the dump, .....while he was standing in the doorway.... when it was proven at the trial, by a witness, at the trial, that he was NEVER STANDING IN THE DOORWAY, that I never pushed him.

13.        Also, Judge Greenhalghn, who presided at the trial regarding the Dump case, violated my Federal Constitutional rights to Due Process, when he unlawfully refused to allow me my right to a court hearing, to present my evdence that there was NO ASSAULT WITH BODILY INJURY, before the arraignment and before the trial. And where he found me guilty, of what he would not specify, as there was no evidence that I was guilty of an Assault with Bodily Injury, as at the trial a witness to the event at the dump, stood up and revealed to the Court that I never pushed the victim down the steps, as I was being accused, yet, Judge Greenhalgh found me guilty, of what crime, he wouldn't say, because he had no reason to find me guilty, as the witness at the dump, and the victim himself proved that there was no bodily injury, where the alleged victim, it was proven was never standing in the doorway when the Plaintiff entered the office at the dump, as the alleged victim falsely

4

claimed.

WHEREFORE:  Under  federal constitutional law this Court will move this case to  a jury of my
peers without further delay, as required due to my age of 86 years old,  a requirement  under
the Sixth Amendment .  As there is no dispute that the Town is guilty of DELIBERATE
INDIFFERNCE in reckless disregard,  in denial,  of the Plaintiff's  Federal Contitutional Rights.  in
violation of  Due Process of the Federal Constitutional law.

Respectfully,

Josephine Amatucci

March 9, 2025

c.  Town of Wolfeboro

*Josephine Amatucci*

claimed.

WHEREFORE:  Under  federal constitutional law this Court will move this case to  a jury of my peers without further delay, as required due to my age of 86 years old,  a requirement  under the Sixth Amendment . As there is no dispute that the Town is guilty of DELIBERATE INDIFFERNCE in reckless disregard, in denial,  of the Plaintiff's  Federal Contitutional Rights. in violation of  Due Process of the Federal Constitutional law.

Respectfully,

Josephine Amatucci

March 9, 2025

c. Town of Wolfeboro

*Josephine Amatucci*

*C /2/*

THE STATE OF NEW HAMPSHIRE

*7/10/03*

CARROLL, SS.                                  SUPERIOR COURT

Josephine Amatucci

v.

Pauline Maloney

03-E-081                          *Evidence*

and

Pauline Maloney

v.

Josephine Amattuci

03-E-080

## ORDER

Hearing held on the two (2) pending Stalking Petitions submitted by the respective parties in the District Court which were transferred without Rulings to the Court by Order (dated 7/10/03-Varney-J.).  Subsequent to offers of proof by the parties, representing themselves pro se, the Court renders the following determination(s).

*No*      At the agreement of the parties (see record), the following provision is directed:

1)  That the parties are enjoined from having any contact or communication with the other respective party by any means or with that parties' relatives or members of that parties' household.  This Order shall remain in effect pending *Not a Stalking Order* further Order of the Court.


EXHIBIT
05-FF-259



# DISTRICT COURT FOR SOUTHERN CARROLL COUNTY
## 96 WATER VILLAGE ROAD #2
## OSSIPEE, NH 03864
## 603-539-4561

**ROBERT C. VARNEY, PRESIDING JUSTICE**
**PAMELA D. ALBEE, JUSTICE**
**JAMES R. PATTEN, SPECIAL JUSTICE**

**JEAN M. FLAYHAN, CLERK**
**PRISCILLA C. KEATON CA III**
**ERIN DASCOULIAS CA II**
**SALLY A. DOMINISH, CA II**

September 22, 2004

Dear Ms Amatucci:

At the present time we are unable to locate a warrant that was signed on October 30, 2002 by Judge Robert C. Varney for your arrest. I have researched any cases that you have had in this Court and am not able to locate this warrant.

Sincerely,

Erin Dascoulias

No WARRANT
HAMILTON,
CASE

# The State of New Hampshire

11/1/12

## 3rd Circuit District Division Ossipee
## 96 WATER VILLAGE ROAD  #2
## OSSIPEE, NH  03864
## 603-539-4561

**ROBERT C. VARNEY**
**JUSTICE**

**ELAINE J. LOWE**
**CLERK**

**ANN MARIE TRENCH**
**DEPUTY CLERK**

November 1, 2012

Josephine Amatucci
PO Box 272
Wolfeboro Falls, NH  03896

Re:  Request for Warrant
Docket No. 464-2003-CR-2708

Dear Ms. Amatucci:

Upon your request received by the Court on October 25, 2012 and review of your file, 464-2003-CR-2708, the Court does not locate an arrest warrant or a copy of an arrest warrant within that file.

If you have any further questions, please feel free to contact the Court.

Thank you,

Ann Marie Trench
Deputy Clerk

*James O'Brien NEVER had an arrest warrant. He fabricated one. As a warrant does not issue for an alleged violation of a CIVIL RESTRAINING ORDER IN EQUITY REGARDING PROPERTY RIGHTS BETWEEN TWO NEIGHBORS. The police have no authority to prosecute civil EQUITY MATTERS.*

23.    I had no involvement in the criminal investigation or the application for the arrest warrant.

24.    Officer O'Brien and I arrived at Ms. Amatucci's house at approximately 1:50 p.m. on December 28, 2003 to execute the warrant. Because she had violated an order issued pursuant to RSA 173-B, we were required to arrest her and ensure that she was detained until her arraignment. See 173-B:9, I(a). Officer O'Brien told her she was under arrest, and in response Ms. Amatucci said "no." Officer O'Brien then handcuffed her. I remember that Ms. Amatucci did not have shoes on when we arrived, and that I had to ask her to put her shoes on so that she could walk outside with us to the police cruiser.

*BRAVO*
*NOT A*
*STALKING*
*ORDER*
*No WARRANT*

25.    I transported Ms. Amatucci to the Carroll County House of Corrections.

26.    Ms. Amatucci asked me if I could take her keys back to her house and unlock her house because she was expecting visitors from out of town. I did as Ms. Amatucci asked and left the keys inside the house after I unlocked it. This concluded my involvement in this case.

27.    I am aware that Ms. Amatucci alleges that I saw her at local market, covered my face with my jacket, and admitted that I wrongfully arrested her. This event did not occur.

28.    I am aware that Ms. Amatucci claims that I arrested her in 2002 because years earlier, I witnessed her slap a man in the face. See Amended Complaint. I recollect that at some point prior to Ms. Amatucci's 2002 arrest, Ms. Amatucci was involved with or friends with a man named Robert "Bob" Bruce, and she had keys to his house. Mr. Bruce contacted me because he wanted his keys back, and Ms. Amatucci refused to

7

*11/28/2006* (handwritten)

to cease contact with any member of the Maloney family." Id. Judge Varney signed the arrest

warrant on December 2, 2003. O'Brien Aff. at ¶ 15, Attachment 2.

On December 28, 2003, Officer O'Brien and Officer Hamilton went to Ms. Amatucci's

house to execute the arrest warrant. O'Brien Aff. at ¶16; Hamilton Aff. at ¶24. Because Ms.

Amatucci was accused of violating a stalking order issued pursuant to RSA 173-B, the officers

were required to arrest her and ensure that she was detained pending her arraignment. Hamilton

Aff. at ¶ 24. Officer O'Brien handcuffed her, and Officer Hamilton transported her to the Carroll

County House of Corrections. O'Brien Aff. at ¶17; Hamilton Aff. at ¶25. Officer O'Brien and

Officer Hamilton allowed Ms. Amatucci to put her shoes on before walking out to the police

cruiser. O'Brien Aff. at ¶18; Hamilton Aff. at ¶24. Ms. Amatucci asked Officer Hamilton to do

her a favor and go to her house after taking her to the house of corrections and unlock the door

for company that she was expecting. Hamilton Aff. at ¶26. Officer Hamilton accommodated

this request. Hamilton Aff. at ¶26.

*(handwritten annotations:)*

*NOT A criminal*

*Accused Not violated*

*Police Lawyr Lisa Lee Liar*

*She was "ACCUSED" But DID "NOT" "VIOLATE" A STALKING ORDER, AS the ORDER WAS "NOT" A STALKING ORDER. NOT GUILTY.*

CARROLL, SS                              SUPERIOR COURT

STATE OF NEW HAMPSHIRE

212-2003-EQ-0080-0081

Pauline Maloney

Vs

Josephine Amatucci

*NOT CR FOR CRIMINAL*

ORDER

Order in reference to the Respondent's Motion For Clarification (filed 7/26/11) in the Carroll County Superior Court. Upon review of the prior Orders in this matter, clarification is not deemed necessary. Specifically, the prior Orders were directed to remain "in full force and effect pending further Order of the Court" rather than for the finite term of Stalking Orders (see NHRSA 633:3-a, and NHRSA 173-B). The Orders are therefore by definition Restraining Orders in Equity, which was the intent of the Court.

*NOT A STALKING ORDER*

DATE: 8/17/11

Hon. James D. O'Neill

*I should Never Have Been Arrested And Incarcerated*

*8/29/12*

review of the prior Orders in this matter, clarification is not deemed necessary. Specifically, the prior Orders were directed to remain "in full force and effect pending further Order of the Court" rather than for the finite term of Stalking Orders (see NHRSA 633:3-a, and NHRSA 173-B). The Orders are therefore by definition Restraining Orders in Equity, which was the intent of the Court."

WHEREFORE:  Plaintiff is asking that this Court set aside and void the judgment issued in 2003 by Judge Robert Varney.

Respectfully,

*Josephine Amatucci*

Josephine Amatucci
P. O. Box 272
Wolfeboro Falls, N.H. 03896
603-569-2429
*13*
August 14, 2012
C.   Attorney

*8.29.12 The undersigned rendered no "judgement" in this matter. This motion is accordingly denied.*

On November 15, 2003, Mr. Bolduc received a letter from
Amatucci referencing their ongoing property dispute and demanding
that he pay her $1,000 or she would bring suit against him.
Believing that Amatucci had violated the court's order, Mr.
Bolduc and his sister, Mrs. Maloney, went to the police station
to file a complaint.  There, they spoke with Officer James
O'Brien.  After reviewing the relevant evidence, O'Brien
determined there was probable cause to believe that, by sending
the letter to Bolduc, Amatucci had violated the court's

*No* protective order — that is to say, she knowingly and
intentionally initiated contact with a member of Maloney's family
(i.e., her brother).  Accordingly, he prepared and submitted an
affidavit in support of a warrant for Amatucci's arrest.  That
warrant issued on December 2, 2003.

Shortly thereafter, Officers O'Brien and Hamilton went to
Mrs. Amatucci's home to serve the warrant.  Because she was
*No WARRANT*
accused of having violated a protective order, state law required
the officers to take her into custody, which they did.  See
*Not A Protective Order*
generally N.H. Rev. Stat. Ann. 173-B:9 I(a).  She asked the
officers to unlock the door to her house so the guests she was
expecting could let themselves in.  The officers complied and
then transported her to the Carroll County House of Corrections
*False Imprisonment*

8

On November 17, 2003, at approximately 12:04 p.m., I spoke with

NORMAN BOLDUC (1-21-1932)
61 Lawrence Street
Danvers, MA 01923
978-774-2833

and his sister

PAULINE MALONEY 04-10-1935)
P.O. Box 622
Wolfeboro Falls, NH 03896
569-6272

in the lobby of the Wolfeboro Police Department in regards to a violation of a
Stalking order by

JOSEPHINE AMATUCCI (9-27-1938)
350 Governor Wentworth Highway
Wolfeboro, NH 03894
569-2429.

MALONEY told me that on November 12, 2003, she and AMATUCCI went before
JUDGE JAMES O'NEIL at the Superior Court in Ossipee in regards to a hearing
on a Stalking Order. The order that was effective on November 12, 2003, stated
in paragraph 1 the following:

"That the parties are enjoined from having <u>any</u> contact or communication
with the other respective party by <u>any</u> means **or with that· parties'
relatives or members of that parties' household**. <u>This Order remains
in effect pending further Order of the Court.</u>" (Please see order.)

*Not A Protective Order*

BOLDUC received a certified mail letter and an uncertified mail letter addressed
to him from AMATUCCI on November 15, 2003 at approximately 3:00 p.m. Both
letters are the same exact letter. Apparently AMATUCCI was making sure the
letter reached him. The letter is a clear violation of the order in that Bolduc is a
"relative" of MALONEY, being the brother of MALONEY. BOLDUC owns the
property directly behind the property of AMATUCCI. The reason for her writing
the letter is to demand that BOLDUC pay her the sum of $1000 for two
outhouses that were on his property. The outhouses were destroyed by
BOLDUC on the recommendation of his homeowner's insurance company
because of the fact they were on wetlands and they were unsafe.

James O'Brien

11/22/03
Date

*Chief Chase Case*

speed was unreasonable for the conditions and therefore, under NH statute, the state had failed to prove she was speeding. However, the court also found that she had an obligation to stop for the police, that she failed to do so for over 4 miles and that she was, therefore, guilty of failing to stop for the police. Admitted that plaintiff was validly arrested and prosecuted for speeding and failure to stop. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of whether the plaintiff was truly headed to the sheriff's office for any purpose, *AND* but it would not have mattered to them, and therefore deny those allegations. Defendants deny all the remaining allegations of paragraph 9. Also see the response, above, to Paragraph 7. Defendant O'Brien further specifically denies all the allegations against him. His involvement in this matter, contrary to the plaintiff's false and groundless allegations, was extremely limited. Mr. O'Brien responded, as he was legally required to do, to a call from police dispatch that Ms. Amatucci was causing a disturbance at the Town offices. By the time Ofc. O'Brien arrived at the Town offices, Ms. Amatucci had already left. Mr. O'Brien's sole involvement after that was to make a radio call back to police dispatch confirming that Ms. Amatucci was no longer at Town Hall. O'Brien did not make a phone call to Ofc. Emerson, did not call the Sheriff's Department and did not request anyone to chase or stop or arrest Ms. Amatucci. He was not in any way involved in the pursuit of Ms. Amatucci and was not present when she was pursued, stopped or arrested. After Ms. Amatucci was arrested and taken away, Officer O'Brien went to the location of Ms. Amatucci's car to relieve Chief Chase so that Chief Chase did not have to wait for the tow truck to arrive. As to the statement in the police log about Ofc. Emerson trying to stop "her," that was not a quote of Ofc. Emerson's police call to dispatch, but rather a conflation in the log prepared by the dispatcher, William Riley, of Emerson's statement that he was turning around to chase a speeding car (which he did not know was Ms. Amatucci), Officer

This verifies my entire First Amendment
Claim – I was Unlawfully Arrested
For Speeding. N.H. – A Malicious Prosecution
Speeding is Not A Crime in

·································································································································································

### FIRST EVENT..........2002 .

On August 16, 2002 I was concerned that my neighbor Kelly Fitzgeral had again parked her car in a way as to block my driveway, while she went to the beach which is located directly across from my property.

I asked her to move the car, but she refused to do so, I told her that if she didn't move it I was going to call the police. A boy, a member of her family who appeared too young to legally operate a motor vehicle, got into the car and attempted move the car, and in doing so he struck a cement block that I had placed over a broken metal post that was in the ground, so that the public would not get injured. In his effort to move the car he crashed into the cement block and pieces of the broken cement block wedged into the car's wheel well, rendering it in-operable, despite the boy's efforts to move it forward. When this happened I

₁ 𝑎

began to laugh.

Ms. Fitzgerald, the owner of the car, and her friends/family members, of whom had arrived with her in her car, confronted me, when I started to laugh, they blamed me for the damage to the front fender of the car, and they came on my driveway, formed a circle around me, and began assaulting me .

I was able to get away from them and I ran inside the house and called the police. Police Chief Brian Black answered the call and I asked him to send an officer as I was being assaulted.

Police Officer Charles Hamilton responded to my call, and when he arrived he immediately stated to me, "who do you think you are, you think you own the beach". He was referring to my efforts to have the State block access to the beach by the public, to close the beach, due to the fact that the public were using my driveway to park their car, and the police would do nothing to help the situation.

The State had agreed , and were going to put up boulders to block the beach, but before they did so they wanted the approval by the Town Selectmen. The Selectmen refused to give their approval, however, they did agree to my putting two NO PARKING SIGNS in front of my driveway.

Hamilton's statement made me aware that he had his own agenda against me, and it was evident that he was not going to support my version of events.

After I explained to Hamilton how Ms. Fitzgerald's car was blocking my legal driveway Hamilton informed me that the car was actually on the State's right-of-way, adjacent to the road. He took measurements to confirm his belief that Ms. Fitzgerald's car was legally parked. While doing so he noticed that pieces of a broken cement block were lodged on top of the car's wheel well, and he would eventually accuse me of placing a ....."cinder bock"........ on top of the wheel of the car, an offense of criminal mischief.

Hamilton interviewed and obtained statements form the witnesses to the incident.

On Novermber 7, 2002 Hamilton came to my house and told me I was under arrest, for the crimes of criminal mischief and assault, he claimed that I was the one who assaulted Ms. Fitzgerald, he had no warrant, he said it was at the police station, and he brought me to the police station to be booked. At the police sttion I asked to see a warrant and he instead handed me a SUMMONS to appear in court. He did not have a warrant, as I confimed with the NCIC who confirmed that no warrant ever issued. I also have documents where I asked the police chief to show me the warrant and he could not find the warrant. When he consulted Hamilton about the warrant, Hamilton came up with a fabricated warrant.

2 *a*

I eventually contacted the State NCIC Data Base and they confimed that no warrant was ever issued in 2002.

A Court hearing was held and Hamilton told the judge that all of the witnesses to the event essentially told the same story, when however the truth was that there was one witness who repeated my version of events, that I had placed a cinder block on the ground a couple of days earlier to cover a broken iron rod.

The Judge ignored my version of events and stated that it was Ms. Fitzgerald, not her minor son, who attempted to move the car, and when she did, it was damaged and ironically he stated it was damaged ...."when the car struck the cinder block". A contradiction of the version of events in Hamiltons Complaint Affidavit, where he stated that I had placed a cinder block on top of the wheel well of the car.

The judge further misrepresented the event by stating, "Plainly, those witnesses' observations (IF TRUE) suggests that Amatucci deliberately "PLACED THE BLOCK ON TOP OF THE CAR'S TIRE", or directly in the car's path ....shortly... before asking the owner to move the car."

The judge reporting what Officer Hamilton stated in his Incidetnt Report, that "Ms. Fitzgerald told him that when she parked the car, there was no cement block on the ground near the vehicle" and the Judge further stated "based on Hamilton's observations and given the witness accounts, it was Ms. Amatucci who was the agressor and kicked a woman who was present during the event, so Officer Hamilton concluded that Amatucci had committed a simple assault and criminal mischief. Subsequently, he sought a warrant for Amatucci's arrest on those charges." The Judge further stated "that had the vehicle struck the concrete block as Ms. Amatucci has stated, it would not have been LODGED ON TOP OF THE VEHICLE'S TIRE". There was no cinder block on top of the tire.

I presented evidence of the damage to the car by the company that fixed the damages, and the total damage was to the front fender, which verifies that the car did srrike the cinder block, and that I did not place a cinder block on top of the tire.

Later, Hamilton would admit tht it was not a cinder block that he saw on top of the tire, but only pieces of a cinder block inside the wheel well of the tire.

Subsequently, when the subpoened witnesses failed to appear for trial, the court dismissed the charges.

..................................................................................................................................

SECOND  EVENT...2003

CIVIL NUMBER 05-cv-259-SM ORDER

3 &

OPINION NO. 2007-DNH 080

OPINION NO. 05-cv-259-SM

OPINION No. 2007-DNH 126

SUPERIOR COURT HEARING ORDER

03-E-081 and 03-E-080

NOVEMBER 12, 2003

On December 28, 2003 Officer James O'Brien came to my house, accused me of violating a Stalking Order, handcuffed me, and took me to the Carroll County Hosue of Corrections..... WITHOUT A WARRANT. I was not allowed to bail out.

I was able to verify from the DOS NCIC data base that no warrnt was ever issued in the 2003 arrest. The Dept. stated, "Searched the NCIC database on 4/7/2021 at 1:41PM and NO warrants were found " regarding the 2002 and 2003 warrants.

The next day Officer O'Brien came to the House of Corrections to take me to an arraignment, for the offense of violating a "STALKING ORDER".

The story goes that I had gone to court to get a restraining order on my next door neighbor Pauline Maloney, for her parking her car inside my driveway, while she went to the beach which was directly in front of my house. Pauline Maloney lived next door to me and could easily have walked to the beach. I ad called the police about her actions but they told me to go to court and get a restraining order on her, which I did.

A hearing was held in the Superior Court with Judge James O. O'Neill presiding. . At the hearing Maloney told the judge that she had a grandfather right to park in the driveway because the property use to be a store, which allowed people to park on the property, and therefore she had a grandfathered right to park there. At the court hearing I produced a sign that Maloney had put on my house stating, "BITCH PARKING ONLY".

Maloney had also called the Town Health Dept. and complained about my septic system on September of 2003, but they found nohing wrong.

Judge O'Neill heard our complaints and placed a restrainng Order on both of us, stating, " that we have no communication with each other or ......." FAMIILY MEMBERS" .
It is to be noted he ....did not.... include RELATIVES in this verbal Order. This is the verbal order and the final written order was not received until 3 days later, which included RELATIVES .

The next day before the final order of court was received which included no communication with RELATIES, with the advise of my lawyer, I contacted Maloney's brother

4 ℛ

Norman Bolduc, who lived in the back of my house, and I ordered him to pay me for my two outhouses that he destroyed . Bolduc did not live with Maloney so I believed he was not included in the restraining order. .Relatives is far more specific than the word Family.

Several days later we received in the mail the Courts FINAL WRITTEN ORDER, on the restraining orders, which added....."RELATIVES".... to the ORDER.

When Maloney and her broher received the FINAL WRITTEN ORDER, they immediately went to the police station on Novemer 17, 2003 and In their Complaint to the police department they stated:

"Amatucci violated a Protective Order issued by Judge James O'Neill on November 12, 2003 by writing a letter to Norman Bolduc on November 13, 2003, knowing she was enjoined from having any contact by any means to ......ALL MEMBERS OF THE MALONEY FAMILY, which Bolduc is a member".

Note that they never mentioned to the police that RELATIVES was only added in the Final Written Order, and not at the time when I contacted Bolduc.

The Verbal Order at the hearing in court the Judge stated:

"That Ms. Amatucci not have any contact or communcation with you whatsever , or the members of your "FAMILY" . In turn you would be enjoined from having any communication with her or her "FAMILY".

The Written Final Order received 3 days later stated the following:

"They are prohibited from contacting each other or each others ...RELATIVES, or FAMILIES."

Later, I would file a Petition to the judge asking that the word "RELATIVES" be removed from the Restrainig Order and the judge granted my petition, on June 2, 2004.

Police officer O'Brien arrested me in accordance with a Complaint he filed, stating:

" A violation of a Protective Order under RSA 173:B-9, that the defendant did "knowingly violate a ...."STALKING" .... order issued by Judge James O'Neill on November 12, 2003, by writing a letter to Norman Bolduc on November 13, 2003, knowing she was enjoined from having any contact by any means to ALL MEMBERS OF THE MALONEY FAMILY, which Bolduc is a member."

Officer O'Brien had the Final Written Order before him, yet he never mentioned the word ......"RELATIVE " in his Complaint, as he had a malicious INTENT to prosecute me for a crime I never committed. Besides I will prove that it was not a STALKING ORDER, but a civil restraining

5 $\alpha$

order in equty, where the police have no authority to arrest a civil order. Where if here is a violation of the Superior Court's Order, the person is given a Summons to appear in the court to show cause. Therefore the arrest, incarceration and proecution were an unlawful seizure under the Fourth Amendment, besides the fact that when I contacted Bolduc, the Order of the Court included only "FAMILY MEMBERS" and not 'RELATIVES". And to make matters worse, evidence received later will find that Officer James O'Brien was not a police officer when he came to the jailhouse on December 29, 2003 where he put me there on December 28th, to take me to an arraignment, as payroll evidence will show that O'Brien had terminated his employment with the Wolfeboro Town on December 28, 2003.

Due to the confusion on the meaning of the Order of the Superior Court at the Hearing, which was under Docket 03-E-081 and 03-E-080 under Equity whether it was a Hearing on a Restraining Order in "Equity" and not under CR for a STALKING ORDER, instead of a Civil Restraining Order in EQUITY. On July 26, 2011 I filed a Motion asking Judge O'Neill to clarify his final Written Order, and on August 17, 2011 Judge O'Neill responded by stating the following:

"Order in reference to the Respondent's Motion For Clarification filed 7/26/11) in the Carroll County Superior Court. Upon review of the prior Orders in this matter, clarification is not deemed necessary. Specifically, the Orders were directed to remain "in full force and effect pending futrher Order of the Court" rather than for the finite term of Stalking Orders (see NHRSA 633:3-a, and NHRSA 173-B). The Orders are therefore by definition Restraining Orders in Equity, which was the intent of the court."

It is to be noted that the police do not have legal authority to prosecute maters in equity, which is under civil law, that when there is a violation of a civil law in equity issued by the Superior Court the procedure is a ....Contempt of Court..... where the person goes before the Superior Court judge to show cause. Therefore, the arrest, incarceration and prosecution by Police Officer James O'Brien was an unlawful seizure under the Fourth Amendment.

O'BRIEN ....IMPERSONATING A POLICE OFFICER

The Moultonboro Police Department's Employment Record shows the ....EFFECTIVE DATE OF EMPLOYMENT of James O'Brien as 12/30/03. I checked the Town of Wolfeboro payroll records and discovered that Officer O'Brien was not a police officer on 12/29/2003 the day he came to get me at the Carroll County jail to take me to my Arraignment, as he had retired from the Wolfeboro Police Department a day earlier on December 28, 2003 based on the last day he received a pay check.

Therefore when O'Brien came to get me at the jail, in a police cruiser, in a police uniform and armed with a gun, he was in fact.......IMPERSONATING A POLICE OFFICER.

The case was eventually dismissed by the Court, when it was proven that the

6 a

Restraining Order was not a Stalking Order, and that I contacted Norman Bolduc before the FINAL WRITTEN ORDER of the court was received by both Bolduc and I. Which included "relatives" to the original order of the Court.

The judge reviewed the payroll evidence and FRAUDULENTLY MISINTERPRETED it, when he did not agree with the facts before him on the employment sheet that stated that O'Brien's terminated the Town of Wolfeboro by ignoring the evidence that although O'Brien's last paycheck was one week after December 28, 2003 his last day of employment, the judge refused to accept the evidence before him, that the Town holds back the first paycheck at the initial first week of employment, until the end of the employment when the first weeks paycheck that was withheld is issued.

I filed a lawsuit against O'Brien for an unlawful seizure, and in his Report and Recommendation Magistrate Muirhead found that where O'Brien had no warrant for my arrest and incarceration the Magistrate recommended that my claims move forward for damages under 1983. However, and shockingly, Judge Steven McAuliffe denied Muirhead's recommendation, and in FRAUDULENTLY found that O'Brien had probable cause to believe that the Order of the Court was a Stalking Order, and where Amatucci was accused of violating a stalking order pursuant to RSA 179-B, the officers were required to arrest her and ensure that she was detained pending her arraignment.

### O'BRIEN'S PAYROLL RECORDS

I presented evidence Officers O'Brien's payroll history that stated that he was paid to the "Period End Date 1/04/2004). And where the procdure of the Town is to withhold paying the first week of employment, until the end of employment, this meant O'Brien terminated the week before, which was December 28, 2003. The day before he came to the Carroll County Jail and took me to my arraignment. That on December 29, 2003 he was            NOT A POLICE OFFICER, when he arrived in a police cruiser, dressed in a police uniform, and armed with a gun. And although the judge was informed of the payroll procedure that the first week of employment is held back until termination, the judge gave the date of termination of O'Brien as 1/04/2004. This is called FRAUD ON/UPON THE COURT.

On 10/19/16 The United States District Court litigated my Complaints and again isnored the main issue in the case of the unlawful prosecution for speeding, SO THERE COULD BE NO APPEAL ON THE UNLAWFUL PROSECUTION FOR SPEEDING,   and stating the issues as follows:

When I tried several times to re-open my lawsuit based on the evidence of the payroll records, the last judge sua sponte dismissed the case stating no orders of notice shall issue, that the 2003 event is now barred. The judge stating that either I do not appreciate or that I am ignoring that my litigation over the 2003 events are over, as the courts have explained in

several orders and decisions, that further proceedings concerning the 2002 and 2003 events are now barred. They knew that I would have a calim against th Town, the police chief and that O'Brien could go to jail, the judges were never going to let my claims be admitted. However, it is to be noted that O'Brien's supervisor Police officer Charles Hamilton was terminated and the Police Chief Brien Black was terminated. On            April 11, 2014 I went back to court regading the 2002 and 2003 unlawful arrests, and the presiding judge David A. Garfunkel dismissed my claims stating "Ms. Amatucci appears either not to appreciate or to ignore that her litigation over the 2002 and 2003 events is over, and that, as explained in several of the orders and decisions incorporated by the courts further proceedings concerning these events are now BARRED.

## PUBLIC DEFENDER

I was given a Pulic Defender a Jesse Friedman to defend me in this case, and like all Public Defenders he did not defend me. He knew all along that the Order of the Court was NOT A STALKING ORDER, he had before him Judge O'Neill's Affidavit, he knew that Bolduc was not a Family member but a Relative, and that the Final Written Order adding Relative to the restraining order arrived after I sent the letter to Boldu, yet being corrupt like all public defenders he never defended me in this manner, and instead when the accusers did not show up for the trial, he finally petitioned the court with the evidence and the case was dismissed . That if the witnesses appeared at the trial he was going to let me go to jail, before he would find the police guilty.

## THE REPORT AND RECOMMENDATION BY THE MAGISTRATE

## DATED JANUARY 20, 2006

Before a judge makes a decision and ruling in a case, filed by a pro-se litigant, a person without a lawyer, the Magistrate Judge who in this case was Magisgtragte James Muirhead, reviews and reports to the Judge his decision on the merits of the lawsuit, and then files a Report and Recommendation, which in this case was filed on January 20, 2006. The Magistrate Judge reported the following:

"In an Order issued simultaneously with this Report and Recommendation, I will direct that the False Arrest and Detention claim for the August 2002 arrest be served on Hamilton. In that Order I will also direct that a False Arrest and Detention claim be served on both O'Brien and Hamilton for the December 2003 arrest"

Stating the THIRD 2003 EVENT as addressed below.

## THE ORDER OF JUDGE STEVEN MCAULIFFE

8  &

DATED JUNE 25, 2007

"Pro se plaintiff Josephine Amatucci claims defendants violated her Fourth Amendment rights where, in order to obtain warrants for her arrest in 2002 and 2003 they withheld exculpatory information from the issuing judge.   Pending before the court are the parties ' cross -motions for summary judgment, defendants motion is granted and plaintif's motion is denied. Given the UNDISPUTED facts of record, both  Officer Hamilton and Officer O'Brien are entitled to judgment as a matter of law as to Amatucci's Fourth Amendment claims. When Officer Hamilton sought a warrant for Amatucci's arrest in 2002, he submited to the issuing magistrate not only a description of what he observed at the scene and the conclusions he drew from the evidence, but also the written witness statements from each of the eyewitnesses and a statement summarizing Mrs. Amatucci's version of events. He was not required to do anything more."

"With regards to Amatucci's arrest in 2003, officer O'Brien was not obligated to adopt Amatucci's  overly narrow interpretation of the phrase "family members"  and reasonably concluded that she had violated the court's PROTECTIVE ORDER by initiating contact with a member of Mrs. Maloney's ......"Family"-that is her brother , Mr. Bolduc.  Even if Amatucci had not yet received a copy of the court's  written PROTECTIVE ORDER when she sent the letter to Bolduc, the court orally informed her at the hearing she was enjoined from contacting Mrs. Maloney and ......ANY MEMBER OF HER FAMILY.  Plainly, Officer O'Brien had probable cause to believe Amatucci violated that PROTECTIVE ORDER."

"Amatucci's malicious prosecution caim fails as a matter of law because,  among other things, defedants had ......PROBABLE CAUSE..... to believe that she had engaged in the CRIMINAL CONDUCT with which she was charged in 2002 and again in 2003"

FRAUD ON THE COURT

Although the Magistrate Judge found Hamilton and O'Brien GUILTY , Judge McAuliffe FRAUDULENTLY found  defendant Hamilton not guilty based on the fact that he claimed Hamilton had a warrant,  ignoring the false description at the scene  by Hamilton when Hamilton stated that I placed a cinder block on top of the wheel of the car, and that he saw a cinder block on top of the wheel,  when later he would admit he only saw pieces of a blcok on the wheel of the car.  Ignoring that there was one witnessed whose version of events coincided with the Plaintiff's version of events,  that she had placed a cinder block over a iron rod on the ground and the young boy slammed the car into the cinder block, which caused damages to the fender of the car,  and pieces of the block fell into the wheel well of the car.  Material and exculpatory omissions made by Hamilton to obtain a warrant for her December 2003 arrest. Misrepresentated the nature of the cinder block to obtain a warrant.  Where the Magistrate Judge Muirhead stated that I stated the minimum facts necessary to state a claim for a Fourth Amendment violation as it relates to the November 7, 2002 arrest based on an improperly

obtained warrant. And the Magistrate judge Muirhead stated that both O'Brien and Hamilton in the 2003 case ommitted that Amatucci had not yet received notice that contact wih ALL o the Maloney's RELATIVES was forbidden by the superior court order. A false arrest and detention for the December 2003 arrest.

defendants Hamilton and O'Brien NOT GUILTY by ignoring that Judge O'Neill added the word …. "RELATIVES"…. to the verbal Order that was given at the Hearing, which included an Order only addressing………. FAMILY MEMBERS.

..................................................................................................................................................

### THIRD EVENT -…2013

In an effort to have police officer James O'Brien terminated I went inside the police station to file a complaint against O'Brien to the Police Chief Stuart Chase, it is noted that Lt. Dean Rondeau was present when I presented my Complaint to Chase. Chief Chase became outraged and refused to accept the Complaint, stating that he was not involved in the case that occured long before he became the Town's Police Chief.

..................................................................................................................................................

### FOURTH EVENT……2013

In RETALIATION for my filing the Ccomplaint against O'Brien, and causing Police Chief Chase to be upset, shortly afterwards, on August 21, 2013, Lt. Rondeau falsely accused me of a volation of erratic driving in Wolfeboro, and contacted the Department of Safety, asking that I be re-examined, which would eventually led to my license to be revoked, as there is no way they would make me pass any re-examination . Rondeau stated the following to the Department of Safety:

"Citizen complaint from the Wolfeboro area motoring public and officer inititated motor vechicle stops regarding erratic operation and driving infrictions committed by Ms. Josephine Amatucci….. over the last few years. The concern at this point is the safety of Ms. Amatucci and the motoring public". ….."ELDERLY"…. female driver tailgating to pass on a DOUBLE YELLOW, on 109 East…passing the state park."

This never happened and I would never never be able to defend myself if it wasn't for the grace of God, that I was in Seabrook, N.H. at the time and better still in TD Bank where a camera in the bank could verify I was in the bank at the time that I was suppose to be driving erratically in Wolfeboro. Also I had as evidence withdrawal slip from my account where I was withdrawing $20.00 from my account at the bank. I presented this evidence to the

Department of Safety and I did not have to be re-examined .

Based on this incident of Fraud by Rondeau, I filed a lawsuit in the court for damages, but the Court dismissed the case stating that the complaint was a criminal matter and not a civil matter , and the court did not have jurisdiction in criminal matters.

......................................................................................................................................

### FIFTH EVENT.. ....2014

At 12:30 on May 7, 2014 I went to the Wolfeboro Police Department to lodge a complaint against Lt. Rondeau, for the traffic violation citation issued by Rondeau terminated for accusing me of a crime I never committed. Lt. Rondeau saw me entering the station, knew why I was there, and he asked me to step outside with him. I stepped outside with him, where he told me that he liked me very much, asking me not to mention the incident to the Police Chief Chase.

I went right back inside the police station and asked to speak with Chase, and presented my Complaint against Rondeau to the Chief. Chase refused to accept my complaint and instead he pointed his finger in my face and threatened me stating          if I ever accuse any WPD officer of misconduct he will ....'get me' and arrest me 'on the spot'........ Chase then pushed me out the door, but before I left I told Chase I was going    to the Town Hall to tell the Selectmen about Rondeau and his assault and threat against me.

......................................................................................................................................

### SIXTH EVENT........2014

At the Town Hall I spoke to the Town Manager's secretary Anne Marble, and I told her my story,   she informed me that the Selectmen and the Town Manager were at the Court in Concord, and were not available. At the time an employee of the town who was sitting at his desk across from Anne Marble heard my complaint, and got up and went to tell the Town Planner Rob Housman what was going on. While I was leaving Anne Marble's office, the Town Planner, suddenly appeared and he grabbed me by the arm and took me into a room across the hall and closed the door. He then had one of the employee's call the police to come to the Town Hall becasue I was causing a disturbance. I was able to get away before the police arrived,   but before I left I mentioned that I was going to the Sheriff's office for help. It is to be noted that an article appeared in the local newspaper, on May 29, 2014 , on the FRONT PAGE stating: "AMATUCCI ARRESTED AFTER DISTURBANCES AT POLICE STATION AND TOWN HALL".

......................................................................................................................................

11 &

### SEVENTH   EVENT........2014

I found out later that after I left the Town Hall,   Anne Marble  called Chief Chase to warn him that I was there  accusing him of an Assault, and mentioned to him  that I was headed to the Sheriff's Office.  Police officer James O'Brien arrived at the Town Hall, and when O'Brien heard from Rob Houseman that I was headed to the Sheriff's office, O'Brien  called the Sheriff's office and asked that they stop my car,  stating  that it was not a high speed pursuit but that the police just wanted to speak to me.  While on my way  to the Sheriff's Office when according to evidence, Police Oofficer Emerson who was heading to the Town Hall  at the time, was informed by dispatch to look out for my car and to stop me.  In response,   Emerson put on his lights and siren,   and chased me,  besides Chief Chase followed with his Siren and lights. Deputy Sheriff Sargeant Timothy Thompson stopped my car right before i was heading inside the Sheriff's  office, and Emerson handcuffed me,  accussed  me of speeding and disobeying a police officer when I did not stop for his siren and lights,  and eventually Emerson put me in the back seat of his cruiser with Chase looking on. As Deputy Sheriff Thomson would state, in an Affidavit UNDER OATH,  it was Emerson, Chase and I  who arrested her.  I did not stop for the police  because  I knew that Police Chief Chase  who was also pursuing me,  would arrest me on the spot,  as he threatened to do so in the police station.  But, before Emerson took me to the Carroll County jail I was able to tell Sargeant Timothy  Thompson my story,  that I was on my way to the Sheriff's office, and why.   Sargeant  Thompson showed great interest and listened to me  intensively.  Then I was taken to the jail and Chief Chase went to my car stole my evidence against Rondeau and had my car towed.    At the jail I was fingerprinted and placed in a holding cell, and  eventually was bailed out.

### EIGHTH EVENT

There was a trial,   I was prosecuted for speeding,  and disobeying a police officer,  a Misdemenor A in violation of RSA 265:4,  Docket 464-2014-CR 836. by prosecutor Timothy Morgan,  a policymaking official.

Under the Speedy Trial Clause of the Sixth Amendment the  police had 70-to-90 days to hold a trial after an arrest/ seizure of a person.  The trial for my proecution was a violation of the Speedy Trial Clause,  as a  trial wasn't  held until one year and 3 weeks after my arrest/seizure,  Therefore, the trial was unlawful under the Sixth amendment  and the rulings of the judge,  at the trial were VOID OF NO LEGAL FORCE,  under the law.

The trial court judge found me NOT GUILTY  for  speeding,  and the Judge also determined from the evidence before him,  that my pursuit was a set up by the police to stop me from reaching the sheriff's  office.  The judge stated:

"The evidence presented through the offier's  testimony shows that Emerson was traveling toward the downtown area of Wolfeboro on Center Street,  and was advised by

dispatch, as shown by dispatch log, that the officer had been advised of description of the defendant's car. Althoug he testified that he was not on the LOOK-OUT for her , it is reasonable to infer that HE WAS INDEED ON THE LOOK-OUT for the defendant. The dispatch log appears to support this inference.  The officer advised dispatch that he was "attempting to stop her on Center Street and gives dispatch the defendant's license plate number. Clearly the implication of this exchange is that the officer knew that the vehicle he observed was the defendant and he was going to try and stop her. In his testimony, it also appeared that the officer was saying that he was also communicating with dispatch via his CELL PHONE about who he SHOULD BE PURSUING. The defendant continued to travel northbound on Center Street, Rout 28, ALBEIT APPRENTLY NOT SPEEDING along the way, for approximatly four miles , beore she was pulled over in response to a Carroll County Sheriff's Depatment standing in the road and signaling her to stop"

The trial court judge found me  GUILTY of  Disobeying a Police officer and I was convicted.    In his Sentencing Order  the judge suspended any monetary fine for one year conditioned upon good behavior,  as well as a susended driver's license and a suspended motor vehicle registration.   Citing both suspensions bein held in abeyance for one year conditioned on good behavior.   The sentence did not include any period of incarceration.

....................................................................................................................................................

### NINETH  EVENT -

Following the event  at the Town,  where  I was falsely accused of causing a disturbance in the town,  the  Town Manager  placed a "No trespassing Order " on me on May 21, 2014,  stating that if I  needed to either enter the Town Hall or the Public Safety Building for an legitimate reason I may make a request in writing to the Town Manager,  who will determine whether the  purpose for entering those buildings was  legitimate and whether I will be able to make an appointment to see a Town official or employee for that purpose.  And furher,  to stop me from filing a lawsuit of the event,  the Town filed a lawsuit against me accusing me of being a Frivolous Litigant,  to stop me from filing any lawsuits unless I had the right to do so by the judge.

....................................................................................................................................................

### TENTH  EVENT

I went ahead and filed  a lawsui accusing  Police Chief  Stuart  Chase,  and the Town of Wolfeboro  for a violation of the Fourth Amendment for an unlawful detention of my liberty rights,  when I was obligated to defend myself at the trial for the prosecution for speeding, when speeding was not a crime in New Hampshire.   Besides the fact that I was found NOT GUILTY  of speeding by the trial court judge.  I also filed a Monell claim against the Town where under the law under Monell if my civil rights were violated by a policymaking official such as

13  &

WPD prosecutor Morgan, the Town is liable for damages under 1983.

...........................................................................................................................................

## ELEVENTH EVENT

Evidence will show that the Chief Chase contacted Attorney Lane who was an employee of the Attorney Generals office before he represented Primex the insurance Company for the Town of Woleboro, and Attorney Lane contacted the Attorney General's office for help, and they sent investigator Richard Tracey to investigate the matter. I was interviewed by Tracey, and investigator Tracey eventually called my son and gave my son the message to tell me to leave Chase alone, or he will have my license to drive revoked. The attorney general's office would deny they allowed Tracey to investigate the matter.

...........................................................................................................................................

## TWELVETH EVENT

This is the motherload of lying, distortion, and other intellectual dishonesty, that is endemic among judges.

My lawsuit was based on damages under 1983 for an unlawful prosecution for speeding when speeding was not a crime in New Hampshire, was held in the l United States District Court, in violation of my Federal Civil Rights. Judge Joseph Laplante presided, and Attorney Mullen of the firm of Ransmeier & Spellman represented the defendants.

There was a hearing for cross summary judgments and at the hearing Judge Laplant displayed egregioius abuse of the facts and law. Like all judges, Laplante distorted the true meaning of my claims and the law, and by doing so instead of litigating my claim of an unlawful malicious prosecuton for speeding, Laplante did what all judges do, in police misconduct cases, he based the case under an ...." ARREST"..... with probable cause, based on the Disobeying a Police Officer and the right for the .....STOP....for speeding. Completing ignoring the claim of an unlawful malicious prosecution for speeding, and insisting that the proecution was only for the disobeying a police officer offense. In a Conspiracy with the defendants attorney Mullen. They also insisted that there was NO EVIDENCE in the record that I was arrested or prosecuted for speeding, when in Mullen's motion for summary judgment Mullen himself mentions an arrest for speeding, and most important in the record in the case files, there was an Affidavit UNDER OATH by Police Chief Stuart Chase admitting that I was.......ARRESTED AND PROSECUTED FOR SPEEDING. This evidence was ignored by Laplante. Based on the FRAUD ON/UPON the court, Laplante allowed the police probable cause to STOP STOP STOP my car . Which had nothng to do with my claim of an unlawful PROSECUTION and DETENTION for speeding, where speeding is not a crime in New Hampshire.

**FRAUD ON/UPON THE COURT**

Judge Laplante allowed the defendants Summary Judgment and denied my Motion for Summary Judgment by stating:

"A traffic ...."STOP"  supported by probable cause does not violate the Fourth Amendment regardless of the officer's actual motivations. "

Here Laplante allowed the defendants motion for summary judgment based on probable cause to ......STOP......my car, and NOT BASED ON THE UNLAWFUL PROSECUTION, DETAINMENT FOR SPEEDING, "deprivation of my liberty" which was my claim before the court. Therefore Judge Laplante FRAUDULENT MISREPRESENTED the facts in order to allow the defendants their motion for summary judgment.

SEE  PAGE  13, 42, 43, 44, 45, OF THE JUDGE'S ORDER DATED 12/27/18

The Judge fraudulently states the  following:

"In order for Mrs. Amatucci to prove her case, for a malkcious prosecution for speeding, she must show that the defendants are liable for a malicious prosecution ....."AS TO THE  ....."SPEEDING"..... RESULTING IN ACQUITTAL , as opposed to the disobeying an officer charge of which she was convicted. As the court rules, SHE CANNOT PROVE THAT CLAIM. Even if she was ...."ARRESTED OR DETAINED FOR SPEEDING,  THAT CHARGE WAS SUPPORTED BY PROBABLE CAUSE".......

**THE FRAUD**

Here the judge bases the detainment on the arrest, not on the PROSECUTION, where my liberty rights were denied when I had to defend myself at a trial for speeding, where speeding is not a crime, and I should never have been prosecuted for speeding.  Especially where I was found NOT GULTY by the trial court judge .

Where  under the violation of  my  Federal Civil Rights , there is no probable under 1983 it is  ....CLEARLY ESTABLISHED ......there is no probable cause to violate one's civil rights. he found through evidence of the dispatch log, that my pursuit by the police was a SET UP, to stop me from reaching the Sheriff's office where they knew I was going to the Sheriff's office to file a Complaint against  Chief Stuart Chase and Officer Dean Rondea, and they were going to stop me.

**LAWSUIT**

After I was found NOT GUILTY of speeding, I filed a lawsuit against Laplante and Mullen as INDIVIDUALS,  the lawsuit named  Laplante as an individual as he lost jurisdiction when he denied me my right to damges  under 1983  for the unlwful Malicious Prosecution for

15 𝓛

speeding.. When speeding is not a crime in New Hampshire.

The case is still active in the court.

### A CORRUPTION IN THE PROCESS IN THE COURTS

My claim was not about the .....unlawful "STOP" or the "ARREST" as stated by Laplante, it was all about the fact that there was NO PROBABLE CAUSE to prosecute me for speeding.

This case proves the corruption in the Justice System. Proves that the judges ignore the arguments presented, distorte the records, of a unrealistic assessment of your issues in the case, and in doing so dismiss the case, by lying, distortion and other forms of dishonesty. Which is epidemic.

We are at the mercy of the prejudices, priorities, and personal agenda's of the courts and judges. That justice only belongs in the hands of the jury, when anything discretionary beomes self-serving. In a CORRUPTION IN THE PROCESS IN THE COURTS. Where logic has nothing to do with logic, when they mortify, petrify and stupify you.

### JUDGE LAPLANTE'S FRAUD ON/UPON THE COURT

On page 11 of his.. Order.. dated December 26, 2018 on the mutual summary judgments, Laplante stated that the police had probable cause to....." STOP" her for speeding. My claim was not about the... "STOP"... but about the unlawful PROSECUTION for speeding., as speeding is not a crime in New Hampshire, in a Fourth Amendment unlawful seizure, A fEDERAL VIOALTION of my Civil Rights.

And where I also accused the Town under a Monell claim for the violation of my civil rights by the policymaking officials of the Town s, such as Police Chief Chase and the Town Prosecutor, even for one occasion, Laplante kept on insisting there has to be a "policy or custom" that I had to prove for a Monell claim, which was FRAUD. As under Monell it can happen just one time for a Monell claim. See the case of Pembaur v. City of Cincinnati. Laplante stated the following:

"There is..... NO EVIDENCE..... in the record, in the files, that I was ......"ARRESTED".... for speeding. he continues to state "To the contrary she was ......"ARRESTED" for disobeying an officer and was found guilty of that charge at trial. Everything in this case regarding her "ARREST", "DETENTION" AND "BAIL" all stemmed from her failure to ......."STOP".....and failure to .....obey a police officer". It did not stem from the ......"STOP"..... for speeding. Because there is.....NO CONSTITUIONAL .... tort in this action, there can be no MONELL claim against the Town of Wofeboro. Furthermore there is absolutely NO EVIDENCE that there was a policy by the Town that interferred with Ms. Amatucci's

16  *a*

constitutional rights. Claims that they failed to investigate police misconduct. That the "moving force" behind the violation of her Fourth Amendment rights was a town "policy or custom made by the lawmakers or those said to represent official policy, no MONELL CLAIM. To prove her Fourth Amendment malicious prosecution claims the plaintiff must demonstrate that there was NO PROBABLE CAUSE to.......CHARGE HER WITH "SPEEDING"........ on May 7, 2014".   "In order for her to prove her case she must show that the defendants are liable for a malicious prosecution as to the ........SPEEDING CHARGE.......resulting in an acquital.... as opposed to the disobeying an officer charge of which she was convicted.  ........."SHE CANNOT PROVE THAT CLAIM".....Even if she had been ........ARRESTED......or .........DETAINED.....for speeding, however, that charge was supported by probable cause".

In the record, in the files, there is an Affidavit signed UNDER OATH by Chief Chase that admits that I was ARRESTED AND PROSECUTED FOR... BOTH... SPEEDING AND DISOBEYING.

### IMMUNITY

Laplante allowed ...."IMMUNITY".... to Officer Emerson and Chief Chase by declaring that the..... "ARREST"...... for speeding was proper , not wanton or reckless. " Ignoring that the claim was not about the arrest for speeding, but for the unlawful prosecution for speeding, where there NO PROBABLE CAUSE, when a persons is unlawfully detained, when her liberty rights are denied under the Federal Civil Rights Law..

Ignoring the Affidavvit under Oath of Chase in the record and files Lalante further fraudulently states:

"She cannot support or submit any evidentiary quality that I was actually ......."arrested"......for speeding as opposed to simply cited. Significantly, every item of record evidence and admissible testimony connects Mrs. Amatucci's ARREST to the disobeying charge..

"Accordingly, Mrs. Amatucci has failed to demonstrate that there is any DISPUTED FACT as to that essential element of her malicious prosecution claims, and on that basis, the defendants are entitled to summary judgment as to the claims in this action as a matter of fact.

..............................................................................................................................

### THIRTEENTH  EVENT ....

### THE CONTINUING RETALIATION OF  RONDEAU

### THE  DUMP CASE

It is to be noted that Police Chief Stuart Chase was TERMNATED, and  Offcier  Dean  Rondeau

17 *a*

became the new Police Chief of the Wolfeboro Police Department.

On August 6, 2018.... I went inside the office at the Town Dump to advise that someone was throwing his trash on the ground, instead of inside the bins. The Supervisor told me, in a mean manner, tht he had already addressed the situation. I left the office. However, wondering why the Supervisor answered me in such a mean manner, I went back inside the office, to find out why the Supervisor appeared disturbed about my complaint.

It is to be noted that the Robert Maloney son of my neighbor Mrs. Maloney of whom I had a restraining order, in the 2003 incident as described above, he worked at the dump, and he was present when I went inside the office. This man would eventually accuse me of pushing him down the few steps in the office at the dump when I appeared the second time. As he fraudulently stated that he was standing in the doorway and I pushed him aside to get inside the office. Maloney did state, however, that he had NO INJURY. Police Chief Dean Rondeau was contacted regarding the fraudulent incident, and Rondeau accused me of ASSAULTING Robert Maloney. Chief Rondeau eventually asked the Belnap Sheriff's Dept. to investigate and he specifically stated that his prosecutor Morgan would do the...... PROSECUTION.

### DEPUTY SHERIFF YOUNG

When I became aware of Rondeau accusing me of an Assault with Bodily Injury at the dump, I immediately went to see the District Attorney Mikaela Andruzzi. I rang the bell in her office and asked to submit a Complaint to her against Rondeau. I was told I had to write for an appointment to see the County Attorney Ms. Andruzzi. I rang the bell and told them I couldn't wait I feared for my safety. I wouldn't leave until they came out and accepted my Complaint.

All of a sudden Deputy Sheriff Ricahard Young and Sgt. Bedley appeared they had been called to remove me from the office. I was sitting down when they arrived and when I saw Young I got up and rang the bell and told the Attorney General to get Young away from me. I sat down and called the office again from my cell phone when Young approached me and attacked me with excessive force and almost broke my arm, he twisted my arm and squeezed and squeezed it, iit started to bleed. I was then forced out of the office by Young, while Bedley just watched and did nothing. It is to be noted that the Young had no remorse to attack me with excessive force with the District Attorney looking on, and he knew there was a video camera recording his excessive force on me, Proving that he knew that the Attorney General does not accuse the police of misconduct, they defend police misconduct in the courts.

I went home and was in such horrify pain I immediately went to see my primary care doctor, and when he looked at the bruise on my arm he immediately told the nurse to rush me to the Immergency ward of the hospital. In the Immergency ward the doctor was

convinced a bone was broken and ordered an x-ray of my arm.   I was given a sling and medicine for the pain and sent home.

## LAWSUIT

I filed a lawsuit against Young, Bedley and the Sheriff's Dept.  in the United States District Court accussing him   of excessive force.   The case is still active in the courts FIVE YEARS,  FIVE YEARS,  even though there was video  evidence of the Assault,  the courts are determined not to accuse the police of misconduct.   They put your case in purgatory.   The defendants  fraudulently stated that it occurred in the BUILDING where the Deputy Sheriff's office is located,  and they showed pictures from a video camera in the BUILDING showing that no Excessive Force occurred.  All along they are denying that Young attacked me and to get away with it when I asked for a copy of the photo's  that were taken from the video camera in the county attorney's waiting room,  where it occurred,  they sent me some pictures but none that showed Young attacking me.  And they refused to summons  a witness to the event,  who worked inside the office and had the pictures on her I phone.

The judge kept saying that the Sheriff's  Dept. could not be sued,  however, I found evidenc under a State Statute that the Sheriff can be held liable for the acts of his men.  Still nothing.

## THE DUMP CONTINUED

Deputy Wright  who did the investigation  found that there was not enough evidence for a prosecution,  however,  Rondeau ORDERED   the Belnap Sheriff's Dept.        to PROSECUTE me for causing an ......'ASSAULT WITH BODILY INJURY."

Deputy Wright obtained  an Arrest Warrant by fraudulently accusing me of causing an "Assault with Bodily Injury"  and prosecutor Estes of the Belnap sheriff's Dept.  filed a Complaint in the Ossipee District Court,  accusing me of ..."AN ASSUALT WITH BODILY INJURY".  A Misdemeanor A.

I immediately filed a Motion to Dismiss to the judge Greenhalghn,  producing evidence that Maloney stated that ........HE HAD NO INJURY.

Judge Greenhalghn ignored my Motion to Dismiss,  refused to rule on it and continued with a trial on a complaint for an Assault with Bodily Injury.

At the trial,  in  my right to confront my accuser Mr. Maloney,  Iasked Maloney to tell the court if he had accused me of causing him bodily injury,  and before Maloney could respond,   Judge Greenhalghn shouted to Maloney and told him , "don't answer that ".

i reprimanded the Judge, I said I'm out of here and I  left the courtroom and sat outside the courtroom,  figuring out my next move.  The judge told the police to hold me while

he took my public defender and the Belnap prosecutor in a conference in his office.

Eventually I was taken back inside the courtroom by the police. I was given the right to confront the Supervisor of the Dump, who witnessed the event, and the Supervisor stated before the Court that Maloney was...... NEVER STANDING IN THE DOORWAY, he did not fall down the steps, and there was no injury. You would think with this evidence that the judge would dismiss the case, however, the corrupt judge ignored this evidence and found me GUILTY, but he would not answer my question when I asked him what am I guilty of your honor, what are you accusing me of, but he e refused to answer, even though I told him if he did not make it clear what I was being accused of, I could not appeal. He ignored me and left the courtroom. He did not litigate the claim of an Assault with Bodily Injury so that I could not appeal what was not litigated or addressed by the judge.

Greenhalghn accused me of causing an Assault with Bodily Injury to the Department of Safety.

## THE LAWSUIT

I filed a lawsuit against Greenhalghn, AS AN INDIVIDUAL, not as a Judge as Judges have IMMUNITY. i accused Greenhalghn of losing jurisdiction as a judge in the case, when he he did not dismiss the case, with the exculpatory evidence I presented to him at the beginning of the case, in a Motion to Dismiss, Maloney's statement that he had no injury. and in doing so, he was denying me my civil rights to collect damages under 1983 for the unlawful Malicious Prosecution . And when he lost jurisdiction his rulings were VOID OF NO LEGAL FORCE.

It is to be noted that Robert Maloney was TERMINATED by the Town of Wolfeboro.

Greenhalgh did not make me go to jail, did not make me pay a fine, and put me on probation.

## LAWSUIT .

I also filed a lawsuit against the Belnap sheriff Dept. against Sheriff Wright who filed the Complaint in the court , Prosecutor Estes , and Police Chief Dean Rondeau, and the Town of Wolfeboro. For the unlawful Malicious Prosecution accusing me of an Assault with Bodily Injury. The case is pending in the court.

## CORRUPT PUBLIC DEFENDERS

I was given a Public Defender in this case, I also filed a separate lawsuit against

20 <em>a</em>

# Deliberate Indifference in Police Supervision: Andrews v. Fowler

Date: Oct 24, 1996



Deliberate Indifference in Police Supervision: *Andrews v. Fowler*

## Introduction

Andrews v. Fowler is a pivotal case decided by the United States Court of Appeals for the Eighth Circuit on October 23, 1996. The case revolves around Kristi D. Andrews, who filed a civil rights lawsuit against Randy Alan Fowler, a former police officer, and several officials of the City of North Sioux City, including the Chief of Police and the Mayor. Andrews alleged that Fowler sexually assaulted her and that the city officials were negligent in hiring, training, supervising, and investigating Fowler's misconduct,

Josephine Amatucci
PO Box 272
Wolfeboro Falls, NH 03896

Retail


UNITED STATES
POSTAL SERVICE®


03301

U.S. POSTAGE PAID
USPS Ground Advtg
WOLFEBORO FALLS
NH 03896
MAR 10, 2025
$6.00

RDC 01        0 Lb 6.60 Oz        S2324K500786-13

United States District Court
District of New Hampshire
Office of the Clerk
55 Pleasant St.
Room 110
Concord, N.H. 03301

USPS TRACKING® #

9500 1153 7887 5069 5672 31